IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAWTON ALLEN, AND | § | |
| JOHN ALLEN JR., *Individually, and as a* | § | |
| *representative of th*e THE ESTATE OF | § | |
| JOHN ALLEN, SR., | § | CIVIL ACTION NO. 4:18-CV-00171 |
| Plaintiffs | § | JURY DEMANDED |
| | § | |
| VS. | § | |
| | § | |
| JUSTIN THOMAS HAYES, individually, | § | |
| TYLER SALINA, individually and | § | |
| CITY OF HOUSTON. | § | |
| Defendants | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs' John Allen Jr. sons individually, and as representative of the Estate

of John Allen, Sr. and Lawon Allen files this First Amended Complaint as a

matter of course pursuant to Fed R. Civ. Pro. Rule 15 complaining of  Justin

Thomas Hayes, Tyler Salina and City of Houston, Texas and will show the

Court the following:

## I.   JURISDICTION AND VENUE

This Court has Jurisdiction over the federal claims, under the Civil Rights

Act of 1871, commonly referred as 28 U.S.C. Sections 1983 and 1988 pursuant

to 28 U.S.C. 1331 and 28 U.S.C 1343 because the actions arises under a federal

statute.

This Court has supplemental Jurisdiction over the state law claims under the court's supplemental jurisdiction under 28 U.S.C. Section 1367 because they arise out of the same case or controversy.

Venue is proper under 28 U.S.C. Section 1391(b) in the Houston Division of the Southern District of Texas since Plaintiffs' claims, including asserted federal claims occurred in Harris County, Texas and one or more of the Defendants reside in Harris County, Texas and/or principally located in Harris County, Texas.

## II. <u>PARTIES AND SERVICE</u>

1. Plaintiff, John Allen Jr., the son of decedent, John Allen Sr. and representative of the Estate of John Allen, is a resident of Houston, Harris County, Texas.

2. Plaintiff, Lawon Allen the sons of decedent, John Allen Sr., is a resident of Houston, Harris County, Texas.

3. Plaintiff, The Estate of John Allen is the is the estate of John Allen, Sr., who died intestate.

4. Defendant, Justin Thomas Hayes, is an individual employed by the City of Houston, Houston Police as a duly appointed Police Officer for the City of Houston, Harris County, Texas. Hayes is sued in his individual capacity, while acting under color of law. He is a "person" under 42 U.S.C 1983 and at all times relevant to this case acted under color of law. Defendant has

been served. but has failed to file an answer.

5. Defendant, Tyler Salina is an individual employed by the City of Houston, Houston Police, as a Police officer. Salina is sued in his individual capacity and acting under color of law. He is a "person" under 42 U.S. C. 1983 and at all times relevant to this case acted under color of law. Defendant may be personally served with process at Houston Police at 1200 Travis Street, Houston, Texas 77002. Service on Defendant is hereby requested.

6. Defendant, City of Houston is a local governmental entity organized and existing under the laws of the State of Texas sued in its official capacity and subjected to monetary damage claims under 42 U.S.C. 1983 because its official policy or custom caused John Allen, Sr., to be deprived of state and federally-protected right. *Monell v. Dept. of Social Service*s, 436 U.S. 658, 694 (1978). Defendant has been served but has failed to file an answer.

## II.  NATURE OF THE CASE

7. This case arises out of a November 4, 2015,  an alleged equipment stop where John Allen was shot five times and killed during a twenty-three seconds routine traffic stop for an alleged broken tail light and running a stop sign.

8. John Allen, Sr., suffered from Post-Traumatic Stress Disorder planned to move into his father's home.

9. John Allen was the driver of a Ford F-150 truck with his female companion, Shanell Atterberry.

10. Defendant, Tyler Salina did not fire any gunshots or tasers on John Allen.

11. Officer Alton Baker observed Defendants, Salina and Hayes conducting the traffic stop, he also was unable to see any weapons. It was ultimately determined that Mr. Allen did not have a gun in his pocket, nor in his reach.

12. John Allen Jr., et. al. sues for denial of life, liberty and the unreasonable seizure of his person by apprehending him with deadly force at a traffic stop, whey the officers used objectively unreasonable force in restraining John Allen's liberty, causing Allen severe personal injuries and death. with the officers application of five gun shot wounds to John Allen's person, the deprivation of John Allen's life ( shooting) and liberty (hand- cuffing after the shooting) and the integrity of his person under the Fourth Amendment, the excessive and unreasonable use of deadly force by firing five gunshots to his person during a basic traffic stop of an unarmed citizen, Texas wrongful death and survival action under Texas Civil Practices and Remedies Code, the deprivation of his life and liberty under the Texas Constitution, Article

1, Sec. 19, Deprivation of Life and Article 1, Sec. 7, Searches and Seizure, the denial of adequate medical care during the stop, and under Texas Wrongful Death Statute and Texas survivorship statute-- 42 U.S.C. 1983, 1985 and 1988 for violations of the Fourth amendment to the constitutionally- protected rights of John Allen, Sr., Deceased.

13.    *Monell* claims against the City of Houston for the failure to properly train and to provide specialized training in basic traffic stops of the mentally ill, de-escalation trainings, crisis intervention training, High risk traffic stops, training in the Seven Basic Commands of a traffic stop and Appropriate approach and assessment during the traffic stop, racial profiling of African-Americans at traffic stop and the Officers' limits on the use of deadly force. City of Houston is liable under the two forms of *Monell* Claims for the: (1) Pattern, custom and practice and the  single incident approach in light of City of Houston awareness and knowledge of John Allen Sr. well documented mental illness.

14.    Defendants violated John Allen's rights under the Texas Constitution and the U.S. Constitution to be secure in his person and be free of unreasonable, unjustified, and excessive use of force and the United States Constitutions 4th and 14th Amendment rights to life and liberty and due process by shooting him at a basic traffic stop.

### III.  <u>NOTICE OF CLAIM</u>

15.    All prerequisites for filing suit have been satisfied. Defendants received actual notice and written notice of this claim prior to the filing of this lawsuit.

### IV.  <u>FACTUAL BACKGROUND</u>

16. John Edward Allen has a well-documented history of mental health issues due to the many previous contacts with the City of Houston's Police Department, and was documented as a "mental health consumer."

17. As a mental health consumer, he was placed on "Premises History" which listed his address.

18. On March 7, 2014, HPD officers Pena, Jackson and Brown were summoned to Mr. Allen's home because the was having a mental health crisis. Mr. Allen announced to officers that his son, who was alive and well, was dead in the home and the officers needed to remove the body from inside of the house.

19. The officer attempted to get Mr. Allen to go with the medics, but Mr. Allen fought the officers instead. The officers recognized the mental crisis and were able to restrain him by strapping him to a gurney. Mr. Allen's home was documented as "Premises History" by  HPD mental health officer, Moulton.

20. On September 17, 2014, HPD officers responded to mental health investigation, as Mr. Allen was in Red 1999 Ford F-150 with license plates reading , the same truck Mr. Allen was in the night he was killed, by Officer Hayes.

21. The Officer in the September 2014 incident had similar issues with Mr. Allen's compliance, and believed that use of force was necessary, due to Mr. Allen inability to follow the officer's commands; however, that officer chose a different approach.

22. Officer Gibson identified that Mr. Allen was having a mental health crisis. He disengaged contact with Mr. Allen, called a K-9 unit and was able to get Mr. Allen into custody, and to the hospital for a mental health check up. He acted reasonable under the circumstances without causing harm to Mr. Allen or allow harm to others.

23. On November 4, 2015, John Allen Jr. was again driving his 1999, Ford F-150 truck at 12:42 am in the 3200 block of Drew Street.

24. Shanell Arterberry was riding as a passenger inside the truck with Mr. Allen.

25. John Allen was stopped by Defendant, City of Houston police officers, Justin Hayes and Tyler Salina acting under color of law, wearing Houston Police officers issued uniforms for an alleged broken tail light and running either a red light or stop sign.

26. John Allen pulled over and came to a complete stop of his vehicle in a safe place.

27. Aterberry had just entered Mr. Allen's truck no more than a minute or so before the stop.

28. Defendant, Justin Hayes did not state the reason for the traffic stop.

29. This was a basic traffic stop for allegedly running a red-light or stop sign and a busted tail-light.

30. Although it is abundantly apparent that Mr. Allen's truck did not have a busted taillight, based on the bodycam footage of Hayes, and his partner Salina. The reports conflict as to whether Mr. Allen ran a red-light or stop sign.

31. In any event, Both Defendants, Justin Hayes and Tyler Salina initiated the traffic stop for a Class C misdemeanor, traffic violation.

32. The Defendants, Justin Hayes got out of their patrol vehicle and approached the pickup truck on the passenger and driver side with service issued City of Houston firearms in the low pointed at the driver, John Allen.

33. Justin Hayes did not identify himself, ask for Allen's name, state the reason for the stop or communicate in a manner to de-escalate the traffic stop. Rather, in a The traffic stop was inconsistent with their Texas Commission on Law Enforcement training and Basic Traffic Stops.

34. Defendants, Justin Hayes and Tyler Salina approached the passenger and driver side of John Allen's truck, as mentioned with pointed guns.

35. Defendants Justin Hayes and Tyler Salina were not acting within the scope of their discretionary authority while on the beat.

36. At the time he was shot and killed John Allen did not point a gun at Hayes or anyone else or threaten him in any manner.

37. Defendant Justin Hayes falsely accused John Allen of pulling a gun out of his pocket and pointing a gun at him.

38. The video and bodycam indicates otherwise. No gun is ever pulled out or pointed at Defendant Justin Hayes.

39. Defendant Tyler Salina asked John Allen to roll down his window, but his power window would not roll down because was broken.

40. Defendant Justin Hayes approached the truck on the passenger side after it came to a complete stop.

41. The passenger side window was completely rolled down, as it was the only functioning window.

42. John Allen attempted to give the officer his identification from his wallet.

43. Defendant Hayes responded to John Allen's question in an agitated manner using cursive words and demanded that Allen put the window down. He then instructed Allen to stop moving and get his foot off the gas.

44. Hayes proclaimed what Mr. Allen was taking from his pocket was not a wallet, when in fact it was a wallet.

45. Mr. Allen insisted that he was giving the officer his wallet.

46. Defendant Hayes gave confusing commands, one command to stop reaching and another command to get his hands out of his pocket.

47. When Mr. Allen complied with his commands to get his hand out of his pocket, and stop reaching, he was shot.

48. Ms. Arterberry saw Hayes raise his gun at Mr. Allen, so she pleaded for him not to shoot.

49. Twenty-three seconds into the stop, Defendant Hayes fired six gun-shots from his City of Houston, Houston Police's service issued Smith & Wesson revolver at Mr. Allen striking him five times.

50. Three in the abdomen chest area, one in the hand, and another in the elbow, without explanation.

51. Defendant Hayes' partner on the scene, Salina, did not have an explanation for the shooting either, as indicated on his call to report the shooting, it was not until almost a full minute before salina was aware of why Mr. Allen was shot.

52. Salina hesitated and was unable to explain to the dispatch officer why the shots were fired. It was only after, Hayes chimed in that he was able to complete the report of the shooting to dispatch.

53. During the dispatch report was the very first mention of Mr. Allen having a gun throughout the encounter.

54. Knowing that Mr. Allen needed medical attention, as stated in the Internal Affairs Investigator's report; the dispatching officer requested a minute after the shooting for a vehicle license plate check first, not EMS, then a report of the shooting but no request for EMS.

55. Officer Baker arrived on the scene with other officers, Hurban, Diego Morelli, Alton Baker, available to cover any officer willing to medically assist Mr. Allen in the event he may threaten harm to anyone.

56. Since the driver's door was locked and the power window would not roll down, Officer Baker chose to break the driver door window glass, instead of unlocking the door from the passenger's side or using the keys from the ignition in a safe manner.

57. Once the driver's side door was unlocked and door opened, and Mr. Allen could be observed with blood on his shirt, moving his head, and breathing.

58. Officer Morelli pulled Mr. Allen to the ground on his face, causing additional injuries including contusions and lacerations to his face and chin, without rendering any medical aid at all.

59. According to officers on the scene, the defendants placed Mr. Allen in handcuffs, after he was pulled to the ground, since he was still alive and according to officers still posed a continuing threat.

60. A blood smeared black wallet containing his Department of Veteran's Affairs identification alone with a Chase Bank Debit card and (not a gun) was found on John Allen's person.

61. Allen lost control over the vehicle, after 5 gunshot wounds, and the truck lunged forward slammed into a tree.

62. Noteworthy, Defendant Tyler Salina who was in closer proximity to John Allen, on the driver side never saw a gun, or found the need to fired one gunshot or a taser at the compliant, John Allen.

63. A blood smeared wallet and (not a gun) was found on John Allen's person.

64. Defendant Hayes falsely told HPD investigator that Mr. Allen tried to pull a gun out of his right pocket, that he was able to see that it was a white handled.

65. If an officer approached with one of his weapons drawn he was about 87 percent likely to use that unholstered weapon in the event of a life-threatening situation.

66. The video recordings, including the bodycam does not show that John Allen ever pulled a gun out on officer, Justin Hayes or Tyler Salina or anyone.

67. The video recordings does not show that John Allen posed a viable threat of harm to Defendants Justin Hayes, Tyler Salina or Shanell Arterberry.

68. After the shooting, officers Justin Hayes, Tyler Salina, Alton Baker and J. Zimmerman and M. Hurban arrived and approached the truck.

69. John Allen's body was grabbed and pulled out of the vehicle, causing him to fall to the ground filled with the shattered glass, by the officers with blatant disregard for his health and medical needs.

70. John Allen was handcuffed next.

71. Officer Alton Baker who arrived at the scene was also unable to see any weapons.

72. Officer Matthew J. Hurban noted that he observed the suspect's hands to be clear of any weapons and his hands to be on his lap.

73. The truck was also cleared of any weapons while on the scene.

74. Officer Hurban observed John Allen to still be breathing at this time, and transitioned to the driver's side of the vehicle.

75. Over four and a half minutes lapsed before the fire department was called, it is unclear why ambulance were not called.

76. There was a hunt for the alleged weapon that went on for the duration of the length of the body cam video footage before it filming discontinued, 6:15 (Hayes-Body cam); and 7:31(Salina Body cam), but no weapon was ever found.

77. In response to the inquiry of the weapon location. Directed at Defendant Hayes, he indicated the last place he saw it was while Mr. Allen tried to pull a gun out of his right pocket, meaning he never actually pulled the gun out of his pocket, rather attempted.

78. The only place the gun could be would be where it was last seen, in his pocket.

79. Once Mr. Allen was on the ground he was searched but no gun was found on his person.

80. The City of Houston Police Department Homicide Division initiated an investigation.

81. The investigation included taking witness statements and collecting evidence.

82. While in custody of Houston Police Department overnight, Shanell Arterberry made statements in agreement with Hayes. She saw a gun.

83. After Shanell Arterberry was released from police custody she quickly recanted stated that John Allen DID NOT have a gun or pull a gun on the officer.

84. A few days later she was arrested by HPD, and jailed for felony possession of a controlled substance less than one gram.

85. Devon Anderson's district attorney office began to investigate the Allen Shooting and recommended the case to the grand jury.

86. Grand Jury proceedings commenced against Justin Hayes based on the Harris County District Attorney's reasonable suspicion that Justin Hayes committed a crime related to the shooting.

87. Hayes was no-billed and released from custody on August 19, 2016.

88. On February 8, 2018 City of Internal Affairs concluded its investigation.

89. The shooting is not reported by HPD to the FBI as a justified shooting.

**Body Camera Footage**

90. The body cam footage:

91. Contrary to reports that Mr. Allen truck had working tail lights on his truck.

92. Contrary to reports that the officers approached the vehicle with their weapons drawn,

93. Omitted in reports that The passenger begged Hayes not to shoot Mr. Allen,

94. Reveals that there was no mention of any weapon was made until over one and half minutes after after Mr. Allen was shot five times.

95. Shows that Defendant Salina was initially unable to articulate facts, as to why Mr. Allen had been shot five times by Hayes.

96. Demonstrates that no call for emergency medical services was made to assist Mr. Allen after he was shot.

97. Confirms that an inquiry was made about whether HFD had been called or not after nearly five minutes had passed since Mr. Allen was shot five times by Hayes.

98.   Proves that No medical attention nor life saving measures were provided to Mr. Allen by any of the officers on the scene.

99.   Provides evidence that no gun was found in Mr. Allen's pocket nor in the truck, both were cleared of weapons.

100.   Disputes that Mr. Allen ever took his hand out of his pocket holding a gun.

101.   Repudiates what Mr. Allen was taking out of his pocket was "not a wallet."

102.   Denies that Mr. Allen was being aggressive or threatening.

103.   Rejects the fact  that Mr. Allen was a continuing threat or a threat at all.

104.   Failed to show Defendant Hayes explain why he shot Mr. Allen to his partner, prior to Salina's report of the shooting to dispatch.

105.   Rejects the fact that there was a weapon in Mr. Allen's hand, pocket, or truck cab.

106.   Contradicts the fact that Defendant Hayes acted reasonably under the circumstances, by shooting Mr. Allen 23 minutes into the encounter for something he did not believe was a wallet. Since the other HPD officer encounters with Mr. Allen ended with the officers getting Mr. Allen mental health assistance, in a overwhelming peaceful manner.

**Autopsy Results**

107. An autopsy was performed by Roger Milton Jr. MD, and Reviewed by Dwayne A Wolf, MD PHD the report was completed on February 1, 2016.

108. The autopsy revealed that Mr. Allen was struck by bullets in five different locations of his body.

109. One bullet struck him on his elbow on the back to front, right to left, downward.

110. A bullet struck him on his left hand, on the outside of last finger, back to front, right to left, downward.

111. A bullet struck him on his upper right side of his chest, and abdomen. The bullet direction was front to back, right to left, downward.

112. A bullet struck him on the right side of his lower chest/upper abdomen. The bullet direction was front to back, right to left, downward.

113. A bullet struck him on his lower abdomen. The bullet direction was front to back, right to left, downward.

114. Mr. Allen also had a 1 inch laceration on his chin.

115. He had a contusion on his nose, forehead, and many abrasions to his face.

**Justin Thomas Hayes**

116.  Plaintiffs incorporate the preceding paragraphs as if fully set forth herein. Plaintiffs bring a claim against Defendant Houston Police Department Officer Justin T Hayes, in his individual capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.  At all material times, Defendant Hayes was acting under color of state law as an agent and employee of Defendant, the City of Houston ("City").

117.  Defendant was wearing his official Houston Police Department uniform, and was acting in the course and scope of his duties as a Houston Police Officer at the time that he shot Mr. Allen five times, and failed to render aid causing Mr. Allen's death.

118.  **Tyler Salina**

119.  Plaintiffs incorporate the preceding paragraphs as if fully set forth herein. Plaintiffs bring a claim against Defendant Houston Police Department Officer Tyler Salina, in his individual capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.  At all material times, Defendant Salina was acting under color of state law as an agent and employee of Defendant, the City of Houston ("City").

120.  Defendant, Salina, was wearing his official Houston Police Department uniform, and was acting in the course and scope of his duties as a Houston Police Officer at the time he failed to render medical

aid to John Allen, after Defendant Hayes fired bullets and struck Mr. Allen 5 times leaving him severely wounded.

**City of Houston**

121.  Plaintiffs incorporate the preceding paragraphs as if fully set forth herein. The City of Houston HPD has a widespread pattern of officers using obvious excessive force, and denial, delay, and inadequate medical care. City of Houston ratified the conduct of Hayes, the delay in medical care and shooting, as being in alignment with state law and HPD policies, and awarded Hayes and  received a certificate for his misconduct on November 4, 2015 in shooting and killing unarmed citizen, John Allen.

## V.   <u>TEXAS WRONGFUL DEATH  AND SURVIVORSHIP   UNDER  42 U.S.C.  1983</u>

122.  Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

123.  By reason of Defendants Justin Hayes and Tyler Salina wrongful conduct of killing Allen without the threat of imminent death or serious bodily harm, Defendants are liable for damages.

124.  Defendants Hayes and Salina's  conduct that cased Allen's death was a producing and proximate case of injuries, which resulted in the following damages loss of companionship, love, support, services,

emotional pain and suffering and for their acts and infliction of emotional distress caused by the wrongful killing of Allen.

125. Plaintiff seeks unliquidated damages on behalf of the statutory beneficiary including, John Allen Jr., Lawon Allen, Sherman Allen, Marthatha Vaughan Washington , as set forth more specifically in the section of this Complaint entitled damages.

## VI. VII. VIOLATION OF THE THE FOURTH AND FOURTEENTH AMENDMENT'S PROHIBITION AGAINST THE USE OF EXCESSIVE FORCE

126. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

127. The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" U.S.Const. Amend IV.

128. Defendant, Officer Hayes violated Mr. Allen's and the plaintiffs' Fourth Amendment and Fourteenth Amendments rights, at least, when he shot and killed Allen when Officer Hayes was not in objective reasonable fear of his life or serious bodily injury or that of another.

129. Fourth Amendment violation are actionable under 42 U.S.C. Section 1983.

130. While acting under color of state law Defendants, Justin Hayes, Tyler Salina was personally involved in the shooting death of an unarmed John Allen (pre-trial detainee) and the deprivation of his right to be free from an illegal seizure.

131. 6. Plaintiffs allege that Defendants, jointly and/or severally, deprived Plaintiff's' Decedent of his Fourth Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment. Defendants specifically violated Decedent's rights in the following ways:

    (A)    By using excessive and deadly force in the course of Defendant Hayes's attempt to seize the Decedent, in violation of the Fourth Amendment and its reasonableness standard. Plaintiffs plead that Decedent was unlawfully shot and killed. This action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively and subjectively unreasonable;

    (B)    By failing to provide medical attention, where it was clearly necessary and required by law; and

    (C)    By failing to provide supervision and/or proper training to

prevent such incidents of excessive force.

132. Defendants' violations of John Allen's constitutional rights resulted in Mr. Allen's pain and suffering and death and were a direct cause of Plaintiff's' and Mr. Allen's injuries.

## VII. **VIOLATION OF TEXAS CONSTITUTION**

133. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

## VIII. **MONELL CLAIMS, POLICY, PRACTICES, CUSTOM AND PROCEDURE /RATIFICATION**

134. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

135. The City has a variety of policies, customs, practices, and procedures which individually or in concert caused the Constitutional rights complained of herein including but not limited to, failure to train, failure to discipline, failure to supervise, failure to fire or reassign officer, a pattern of improper police shootings and excessive force, a code of silence, and HPD investigating HPD to name a few.

136. 16. As a result of the City of Houston's policies and practices, and the unjustified and unreasonable conduct of the Defendant Hayes, and Salina, Plaintiff has suffered physical injuries, pain and suffering, inadequate medical

care, death, mental anguish, and severe emotional distress.

137.   17. The misconduct by the defendants described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience."

138.   18. Over FOUR HUNDRED (400) HPD officers have been involved in the killing or wounding of civilians since January 1, 2004 yet only one HPD officer, Jason Loosmore1, has been indicted when HPD Homicide Division collected evidence and conclusions were presented to a Harris County Grand Jury.

139.   19. Furthermore, there is no evidence that since January 1, 2004 a single HPD officer, including Loosmore, has been disciplined for a City policy violation due to shooting a civilian after the HPD Internal Affairs Department investigation into the shooting. About 25% of these shootings involved citizens with no weapons.

140.   20. In December, 2016 new Houston Police Chief Acevedo stated he was creating a special HPD unit apart from homicide to investigate situations such as shootings of civilians.

141.   21. On October 1, 1998, HPD Officers Anthony M. Ruggeroli and Brian T. Mitchell shot at suspects in a stopped car when they did nothing more than not respond immediately to verbal commands. Officer Ruggeroli merely shouted a

few commands then left cover and went to the passenger window and shot at the unarmed driver. Officer Mitchell than ran up to the passenger window and smashed it and grabbed the passenger. The officers were not disciplined for using excessive force nor retrained in use of force or the proper high risk vehicle approach tactics, indicating ratification and acceptance of patterns, practices, customs and/or procedures of the excessive use of force.

142.   22. In 1999, HPD Sgt. Glover's gun went off and struck a suspect when he used it to bash in passenger side window. Officer Shockley then discharged his weapon striking the other suspect in the vehicle. Despite using excessive force on both suspects and failure to use safe high risk vehicle approaches and full IAD investigation, there was no discipline or retraining as a result of this incident, indicating ratification and acceptance of HPD's excessive use of force and dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, and customs.

143.   23. In 1999, Jason Arboleda was shot and killed by HPD Officer R. A. Williams. Jason had left a bar with his friend Franky Aguirre, who was a passenger. On the way out from the area he struck, but did not seriously injure, Officer R. A. Williams. Officer Williams then chased after Mr. Arboleda on foot and stopped him at a traffic light as Jason tried to flee in his vehicle. Officer Williams ordered Mr. Arboleda out of the car and on to the ground to which Mr.

Arboleda complied. At that point, Officer Williams did not handcuff or otherwise secure Mr. Arboleda, who then jumped back in his car. The officer ran to the front of the car instead of obtaining cover. As Mr. Arboleda drove forward, Officer Williams shot and killed Jason. Officer Williams was not hit by the car and even felt safe enough to shoot rather to spend time getting out of the way. Despite IAD investigation, Officer Williams was not disciplined or retrained in the use of excessive force or high risk vehicle approach. The City determined it was a justified shooting and it never addressed Officer Williams' failure to follow either the written HRVA policy or any safe HRVA method. Further, the City did not order any training, indicating ratification and acceptance of HPD's dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, customs and/or procedures and use of force.

144. 24. In 2000, HPD Officer R. C. Headley stopped a vehicle and determined it was stolen. Officer Headley then shot Mr. Langston (driver) and Mr. Plumbar (passenger) when there was no reason to do so. Neither person was armed. Despite IAD investigation, there was no discipline nor training ordered.

145. 25. In 2000, Officer Selvyn J. Ellis, who had 47 sustained complaints against him, received a suspension instead of firing, despite the fact he refused to answer questions during an IAD inquiry into improper conduct, including allegations of assault. He had previously been suspended for injuring a bar

patron while working an extra job and not reporting the use of force.

146. 26. In 2002, Officer Ted A. Adams, who has 41 sustained complaints against him, received a one day suspension instead of firing for not reporting the use of force after injuring a female after knocking her to the pavement with a leg sweep.

147. 27. In 2003, Houston Police Lieutenant Hillman was involved in a faulty high-risk vehicle approach and used excessive force against unarmed Kevin Lunsford. When Hillman got near Lunsford he claimed that Lunsford moved and then Lt. Hillman shot and killed Lunsford. Despite IAD investigation, there was no discipline for excessive use of force or any training required.

148. 28. On October 31, 2003, HPD Officer Butler was working at a large AMC movie theater in west Houston when 15 year old Jose Vargas was purportedly playing his radio too loud in his vehicle on his way to see a movie with his three teenage friends. Officer Butler went to investigate and the kids left. Officer Butler claimed the kids did not obey his commands to stop so Butler then gave pursuit. Vargas was scared and drove off.

149. 29. Officer Butler rushed up to the vehicle on foot when it was stopped in traffic with his gun drawn and not under any cover. This startled the 15 year old unarmed Vargas and the vehicle lurched forward with Officer Butler at the side of the driver's window. Officer Butler then shot and killed Vargas. Vargas had no

criminal history. Despite the obvious excessive use of force and IAD investigation, Officer Butler was not disciplined nor retrained in the use of force.

150.  30. In 2003, Mr. Juan Lozano was killed because HPD Officer R. L. Plotner used faulty high risk vehicle approach techniques by approaching a vehicle and failing to get under cover and give verbal commands to Lozano in a vehicle after  a pursuit. Without being in fear of his life or serious bodily injury, Plotner shot and killed Juan. This officer was not disciplined or retrained in proper high risk vehicle approach tactics nor excessive use of force, indicating ratification and acceptance of HPD's dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, customs and/or procedures similar to those that killed Roland.

151.  31. In 2003, HPD Officer Rivera made a stop of a felony suspect in a van. Instead of gaining cover and shouting verbal commands, Officer Rivera left cover and approached the van exposed. Officer Rivera shot the van driver when he was not frightened for his life. Officer River, however, should have maintained cover and a position of advantage. Officer Rivera was not disciplined or retrained for use of excessive force despite IAD investigation.

152.  32. In 2004, HPD Officer C. Pena Jr. shot and seriously wounded an unarmed 16 year-old girl who was under a vehicle. Officer Pena gave verbal commands to LaDonna Banks and then shot her. Officer Pena received no

discipline and no training in gaining cover when dealing with suspects and his use of excessive force.

153.  33. In 2005 HPD Officer Thompson used faulty high-risk vehicle approach techniques and excessive force resulting in the shooting of an unarmed suspect, Timothy M. Thomas, who was driving when Officer Thompson pulled him over. Officer Thompson became suspicious because the driver was black and he had heard of a black felony burglary suspect. At first, Officer Thompson was behind cover and using his bullhorn. This only lasted a few minutes and then the officer left his cover and approached the vehicle with his gun drawn. Mr. Thomas started to get out of the car and when he did, he was shot by Officer Thompson who said he was in fear of his life due to Mr. Thomas' innocent movements. Thomas had no gun. Officer Thompson obviously used excessive force and faulty high risk vehicle approach. Officer Thompson was not disciplined and there was no training despite a full HPD IAD investigation.

154.  34. August 14, 2007, a 17 year old unarmed girl was seriously wounded because of faulty high risk vehicle approach. Brittanee King, 17, was a littering suspect who had fled in a car for a short distance and was pursued by HPD Officer Carraway approached her with gun drawn. When Brittanee stopped the vehicle to comply with the officer, Officer Carraway failed to use safe HRVA methods and left cover and exposed himself in full view of the young unarmed

girl in the car. When the unarmed Brittanee made an innocent movement, Officer Carraway claimed he feared for his life because he was not behind cover and in a position of advantage and shot Brittanee, wounding her. Officer Carraway claimed he saw a shiny object-Brittanee was wearing shiny bracelets. Despite the admission of unsafe HRVA approach methods and use of excessive force, no discipline or training was administered despite an IAD investigation

155. 35. In 2008 Charles Chukwu was arrested and taken to the City of Houston jail at Mykawa Road where he was beaten by at least one City of Houston jailer without any reason. After the beating, Mr. Chukwu was purposefully released before he could get the names of the jail inmate witnesses. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Chukwu, nor did the Houston jailers report another Houston jailer for the obvious excessive force. The jailers refused to take Mr. Chukwu to the jail clinic or hospital where the injuries could be documented, despite the excessive use of force and obvious injures.

156. 36. The Chukwu incident was caught on videotape and investigated by the Houston IAD. It failed to find any violation when, in fact, excessive force had been used against Mr. Chukwu. Mr. Chukwu asked for the videotape from former City Mayor Bill White, Houston City Council and the HPD IAD, but was refused. At a Houston City Council meeting, Councilman Adrian Garcia stated that the

videotape should be released. City Council member Sue Lovell asked the HPD IAD about the Chukwu jail beating video, however, she apparently never received a copy of the Chukwu video. More than two years after the alleged beating, Mr. Chukwu has not received the beating videotape.

157.   On June 22, 2008, Henry Lee Madge was struck several times while in handcuffs by a Houston police officer without justification and the officer was not disciplined.

158.   Around February 6, 2009, Trenton Garrett was arrested and taken to the Houston jail at Mykawa Road where City of Houston jailers beat him without any reason. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Garrett, nor did the Houston jailers report another Houston jailer for the obvious excessive force. The jailers refused to take Mr. Garrett to a hospital where the injuries could be documented despite the excessive use of force and obvious injures. The incident was caught on videotape and investigated by the Houston IAD which failed to find any violation, when in fact, excessive force had been used against Mr. Garrett. Mr. Garrett asked for the videotape from the HPD IAD but was refused. More than two years after the alleged beating, Mr. Garrett has not received the beating videotape.

159.   On August 5, 2009, Hatice Cullingford, Ph.D. ("Dr. Cullingford"), 65, was arrested by the Houston Police Department. Dr. Cullingford had never been

convicted of any crime in her life and never previously been arrested for any crime. At the City of Houston Mykawa jail, Houston jail employees used excessive force on Dr. Cullingford yet no discipline resulted.

160.   In the late Spring of 2010, 15 year old Chad Holley was purposefully struck by a Houston police squad car and then violently beaten--by kicking, stomping and punching in the head, groin and other parts of his body--by least four Houston police officers while other Houston police officers looked on without intervention. Chad Holley was not resisting but had laid down on the ground with his hands behind his back. No officer attempted to stop the beating by the other officers and after the beating no officer reported any other officer for the incident. No use of force report was filled out by any officer in a timely manner. The Mayor of Houston, Annise Parker, thereafter, would not allow the release of a videotape showing the incident to the public.

161.   In February, 2011, a videotape of the Chad Holley beating was released to local Houston television station KTRK, Channel 13, by a Houston citizen. Houston City Mayor Annise Parker then threatened the citizen and berated KTRK Channel 13: "Whoever provided the video to Channel 13 is in violation of a federal court order and should be prosecuted." The citizen was not a party to the lawsuit nor was any protective order directed at the citizen.

162.   On February 8, 2011, at a Houston City Council public meeting discussing

the Chad Holley excessive force incident and past police excessive force incidents, Houston City Attorney David Feldman interrupted Houston City Councilpersons, such as Melissa Noriega, who were talking about the videotape of Holley and past instances of police brutality that could affect city liability. Mr. Feldman then instructed the City council to not to talk about the Chad Holley case. This was a sentiment Mayor Parker also verbalized. Council member Noriega agreed and stopped talking about excessive force events as did the Mayor and other City Councilpersons. For the past twenty years there have been excessive force cases against the City pending at all times, so under this policy the council members cannot speak about excessive force cases in public meeting.

163.   On February 19, 2011, Jose Coronado shot and killed a bar patron while he was off-duty and drunk. Coronado, a six-year vet, killed Omar Ventura in the parking lot of Sherlock's Pub in the 1900 block of West Gray about 2:20 a.m. February 19 , 2011, he was suspended for one month, but faced no criminal charges.

164.   On January 16, 2014, Houston Police Officer Juventino Castro shot and killed 26-year-old Baker at a northwest side strip center. Castro was working a second job as a security guard in the area after a string of burglaries. Castro told police that he tried to question Baker, but the man ran, then struggled with him.

Castro said he opened fire on Baker after he appeared to reach for something in his waistband. Baker was not armed. The Houston Police Department completed the administrative and criminal investigations regarding the officer-involved shooting of Mr. Jordan Baker. The HPD officer's action in this matter was determined to be within compliance with departmental policy and state law.

165. On July 15, 2015, Helder Flores, 23, was arrested by the Houston Police Department for assault of a police officer. He was shot in his back by HPD officer Loyd Harris. HPD Investigators and Officers tried to cover up the shooting in the back by describing the shot to have entered through Mr. Flores' shoulder and exited through his back. Mr. Flores fought felony assault charges in criminal court for 3 years. So he could be free pending trial he posting $170,000.00 in bond fees. The charges were drop against Flores once the district attorney office was able to determine that Flores had one bullet wound in his back and it had never exited his body, so no gunshot wound ever existed.

166. The following individuals were assaulted and injured by Houston police and or Houston jailers the events of which were caught on video and then viewed by the Houston employee's supervisor and no discipline or retraining was meted out. In each instant there was no need to apply the level of force used by the City of Houston employees:

167. February 17, 2007: Steven Mikeasley

168. June 5, 2007 and/or March 5, 1997: Brian Golott

169. September 23, 2007: IAD Case #30470-2007

170. November 19, 2007:Hasan Matthews

171. January 27, 2008: Samuel Smith

172. April 4, 2008: Alexandra Koch2*

173. May 26, 2008: Kenneth Cert*

174. June 5, 2008: Nakia Stark*

175. June 21, 2008: Jeffrey Clark

176. July 26, 2008: Clyde Jones

177. September 30, 2008: Furrell Holmes

178. October 18, 2008: IAD Case #2302-2338

179. December 28, 2008: Brian Udovich

180. January 17, 2009: Timothy Peavy

181. April 12, 2009: Oliver Nicholas

182. August 23, 2009: IAD Case # 35015-2009 December 12, 2009: Eric Cossie

183. February 13, 2010: David Compean

184. March 3, 2010: Cooper, IAD Case #36327-2010

185. May 3, 2010: David Luke

186. August 12, 2010: W. Cotley

187. August 15, 2010: Harrison

188. March 16, 2011: Lewis Henderson

189. April 27, 2011: Donald Brooks

190. June 24, 2011: Charles Perez

191. October 24, 2011: Pedro Barrero

192. Jan. 16, 2014: Juventino Castro

193. October 2011: Jason Rosemon

194. July        9        2012:        Jillian        McGowan

In addition to the widespread practice of unreasonable excessive force, there is a widespread practice of failing to provide adequate medical care after causing injuries by denying and delaying medical assistance, until after an investigation, background information explored, or is the individual is placed in handcuffed.

195. On July 15, 2015, Helder Flores, 23, was shot in his back by HPD officer Loyd Harris. As Mr. Flores was dying instead of performing any life saving measures he was handcuffed and left on hot pavement for approximately 20 minutes.

196. On January 16, 2014, Houston Police Officer Juventino Castro shot and killed 26-year-old Baker at a northwest side strip center. EMS arrived on the scene to a handcuffed, lifeless, Jordan Baker.


## IX.  DEFENDANT'S WAIVER OF SOVEREIGN IMMUNITY

197. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein. Defendants have waiver qualified and sovereign immunity regarding each and every Count against the government and its actors in this complaint because the defendant officers' actions were not objectively reasonable. In shooting Mr. Allen, failing to render medical treatment, and delaying in medical treatment by failing to take any life saving measures and delaying in summoning emergency responding medical personnel, Defendants violated clearly established constitutional rights of Mr. Allen. A reasonable officer would have known that shooting Mr. Allen after he obeyed the officer's command to stop digging in his pocket violates his constitutional right to be free from unreasonable seizure. The Defendants' action were not objectively reasonable because the officers shot a man five times who did not pose a significant threat of death or serious physical injury to the officers or others. The Defendant officers under the color of law pursuant to a policy, custom and practice set forth by the City of Houston to delay medical care after causing an individual's injury and placing the individual in the custody of the City of Houston.

## X.   **TEXAS TORT CLAIMS ACT**

198. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

199.

## XI.  TEXAS CONSTITUTION

200. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

## XIII. PUNITIVE DAMAGES

201. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

202. All defendant sued are liable for punitive damages as they were deliberately indifferent to John Allen Sr.'s constitutional rights and they did the acts knowingly, such acts (ie. shooting an unarmed citizen, John Allen, within thirty-eight seconds of a routine traffic stop) being extreme and outrageous.

## XIV. ATTORNEY'S FEES

203. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein. Plaintiff is entitled to recover reasonable attorneys' fees and costs to enforce his Constitutional rights under 42 U.S.C. 1983 and 1988 from Defendants and under Texas Civil Practices and Remedies Code Section 38.0001.

204.  **XV. JURY DEMAND**

205.  Plaintiff demands a trial by jury on all issues triable to a jury.

**XVI. PRAYER FOR RELIEF**

206.  Plaintiffs' Estate of John Allen Sr., John Allen Jr. and Lawon Allen request that the Court:

207.  Enter judgment for Plaintiffs against Defendants Justin Hayes, T. Salina, City of Houston and each and every individually named defendants, jointly and severally.

208.  Award damages to plaintiff for the violations of his state and Federal Constitutional rights, wrongful death and survivorship including actual and compensatory damages, pain and suffering and mental anguish.

209.  Award Pre-judgment and post-judgment interest.

210.  Award punitive damages against all individually named defendants; and

211.  Find that Plaintiff is the prevailing party in this case and award attorneys' fees, expert fees and costs, pursuant to state and federal laws, as noted against defendant City of Houston, Texas, Justin Hayes and Tyler Salina including 42 U.S.C. Section 1988, as noted against defendants.

212. Grant such other and further relief as appears reasonable and just, to which, Plaintiffs shows himself entitled.

213. All other relief plaintiff show themselves entitled including attorney's fees in the event of an appeal of this cause to the Fifth Circuit Court of Appeals or U.S. Supreme Court.

Respectfully submitted,

/s/ *Debra V. Jennings*
_____

Debra V. Jennings
Law Office of Debra V. Jennings
    State Bar No. 10631850
    Federal Bar No.14373
    Law Office of Debra V. Jennings
    6140 Hwy 6, #269
    Missouri City, Texas 77459
    lawyerdvj@gmail.com

/s/ *U. A. Lewis*
U. A. Lewis
The Lewis Law Group
State Bar No. 24076511
Federal ID: 1645666
PO Box 27353
Houston, Texas 77227
Counsel for Plaintiffs
Myattorneyatlaw@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of Marchy 2018, this First Amended Complaint was filed pursuant to District Courts electronic filing system   and a copy was served via facsimile on Jennifer Callan. Attorney for the Defendants.

/s/ *Debra V. Jenning*s

_____

Debra V. Jenning