**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON, DIVISION**

| | | |
|---|---|---|
| **ESTATE OF JOHN ALLEN AND** | § | |
| **JOHN ALLEN JR.,** *Individually,* | § | |
| *and as a representative of* **THE** | § | |
| **ESTATE OF JOHN ALLEN and** | § | |
| **LAWTON ALLEN** | § | **Civil Action No: 4:18-CV-00171** |
| *Plaintiffs* | § | **JURY DEMANDED** |
| **vs.** | § | |
| | § | |
| **JUSTIN THOMAS HAYES, in his** | § | |
| **individual capacity, TYLER** | § | |
| **SALINA, in his individual capacity** | § | |
| **and CITY OF HOUSTON, TEXAS,** | § | |
| *Defendants* | § | |
| | § | |
| | § | |

**MOTION FOR RELIEF FROM THE JUDGMENT AND TO ALTER OR AMEND THE JUDGMENT FED.R. CIV. PRO. RULE 59(e), RECONSIDERATION RULE 60 AND MOTION TO DEFER FED.R. CIV. PRO. RULE 56(d).**

TO THE HONORABLE JUDGE LYNN HUGHES:

Plaintiffs, Estate of John Allen and John Allen, Jr.., *Individually, and as a representative of* The Estate of John Allen and Lawton Allen, files this their Motion for Relief from Judgment and to Alter or Amend the judgment in reconsideration of the court's order, granting Defendant's Motion to Dismiss [Doc. 25], and Plaintiff's Motion

to Defer the Court's Ruling Pursuant to Rule 56(d) of the Federal Rules of Civil

Procedure and respectfully requests that the Court deny Defendant's Motion to Dismiss

and Motion for Summary Judgment or alternatively, grant Plaintiff's Motion to Defer.

Plaintiff respectfully shows as follows:

### I.   FACTS CONCLUDED BY THE COURT IN ITS OPINION [Doc. 26] NOT PRESENTED BY PLAINTIFF IN LIVE COMPLAINT [Doc. 16]

The following alleged facts were considered by the court in dismissing this case, that
were not alleged in the live complaint. [See Doc. 16].

- "The window on the driver's side apparently malfunctioned and would not open."
- "Allen reached into his pocket saying that he was getting his wallet"

- "Allen kept his hand in his pocket, fishing for something."

- "They repeated this exchange several times, then Hayes shot Allen five times."

- "The officers reported the incident to the precinct."

- "Approximately four minutes and thirty seconds after the shooting the officers

called the fire department for emergency medical care."

- "Allen stopped his truck halfway on a curb."

- "Allen reaching - unprompted- into his pocket and told him to take his hand out of

his pocket and stop reaching."

- "Allen said that he was getting his wallet and pressed the accelerator."

- "Hayes told him to take his foot off of it."

- "Hayes had no way of knowing what was in Allen's pocket."

- "Hayes thought that he saw the handle of a gun in Allen's pocket so he shot him."

● "In her initial statement, Artberry said that she also though she saw the handle of a gun in Allen's pocket. She Later said otherwise."

● "Allen actually had a wallet in his pocket, but Hayes did not know and could not have known at the time."

● "A reasonable officer could have concluded that Allen was reaching for a weapon and was ignoring the officer's instructions because he intended to harm him."

## II. FACTS CONCLUDED BY THE COURT THAT WAS NOT PRESENT IN THE VIDEO CONSIDERED BY THE COURT [Doc. 26]

The following alleged facts were considered by the court in dismissing this case, that were not present in the video[1] relied on by the court.

● "The window on the driver's side apparently malfunctioned and would not open."
● "They repeated this exchange several times, then Hayes shot Allen five times."
● "Allen said that he was getting his wallet and pressed the accelerator."

● "Hayes told him to take his foot off of it."

● "Hayes had no way of knowing what was in Allen's pocket."

● "Hayes **thought** that he saw the handle of a gun in Allen's pocket so he shot him."

● "In her initial statement, Artberry said that she also though she saw the handle of a gun in Allen's pocket. She Later said otherwise."

---

[1] The shooting of John Allen Sr., the decedent, was captured by the defendants, Hayes, and Salina's via body cam video. The video footage was deposited with the court by the defendants, at the court's request, and served on the Plaintiff, as a part of the initial disclosures, along with other documents including key additional facts from witness statements, photographs, investigation reports, dispatch call information. Key facts  that Plaintiffs were not able to present nor have the court consider prior to ruling on the converted Motion to Dismiss.

● "Allen actually had a wallet in his pocket, but Hayes did not know and could not have known at the time."

● "A reasonable officer could have concluded that Allen was reaching for a weapon and was ignoring the officer's instructions because he intended to harm him."

### III. BACKGROUND FACTS

John Allen, Sr. a mentally disabled veteran was shot five times within seconds of a routine misdemeanor traffic stop in Houston, Texas by a City of Houston Police Officer, Justin Hayes. The purpose of the stop was for a broken tail light and running a red light or stop sign. Estate of John Allen et. al and Lawon and John Allen, Jr. sued on behalf of their deceased father alleging that John Allen was subjected to excessive force in preparation and use of deadly force, wrongful death survivorship and a *Monell* claims for pattern and practice, customs of City of Houston violating the Civil Rights of citizens.

The Body camera video are the only objective evidence of the John Allen shooting event. See *Scott v. Harris*, 550 U.S. 372, 381 (2007).

John Allen died with the cause of death ruled a homicide by Harris County's medical examiner. Suit was filed and served upon the defendants, the Defendants filed two 12(b)6 Motions to Dismiss for failure to state a claim.

While the motions were pending, this court instructed plaintiff to the City of Houston police station and view the video. A video was produced and given to the court's clerk

4

without a copy provided to Plaintiff and without Plaintiff viewing the purported video provided to the court.

Only after, Plaintiff  filed a pre-motion seeking a clear copy of the video and initial disclosures. This court dismissed the claims against the defendants based on Plaintiffs alleged failure to state a claim and based his decision on the videos.

No discovery, except for the name of the officer and a video, including depositions were allowed  and the specific items the court instructed the party's to produce: the name of each officer, including the shooter, which unearthed key information supporting the Plaintiffs' claims of excessive force against John Allen Sr. by Houston Police Officer Justin Hayes.

The shooting officer, Justin Hayes has never been allowed to be deposed. Yet, somehow the court concluded that "***Hayes thought he saw the  handle of a gun in his pocket***". The videos contradict this statement and indicates that  Justin Hayes stated emphatically  that he saw a gun on the video:

**Justin Hayes**:  "Driver was reaching in his pocket"

**Justin Hayes**:  "He tried to pull a gun out of his right pocket. . .

**Justin Hayes**:   "Uh he tried, he tried to pull a gun out"

**Justin Hayes:**    "Yeah, driver's still in there. He's was trying to pull a gun out of his pocket".

**Tyler Salina**:   "Where was the pistol at, Justin?

**Justin Hayes**:   " . . . in his right pocket, the last place I saw it. Lie a..

**Justin Hayes:**   "Small caliber"

**Justin Hayes:**   "Small caliber revolver with a white grip".

This case isn't as the court characterized it as  Officer Justin Hayes thought he saw the handle of a gun in Allen's pocket so he shot him. (See Doc. 26)  But, rather this is a case where Officer Justin Hayes shot an unarmed citizen. Falsely stated that John Allen was armed *after* shooting him five times to justify the shooting. Allen actually had a wallet in his pocket, but  the court's statement that: Hayes did not know and could not have known at the time is not supported by the objective video and the actions of his partner, Tyler Salina (closest to Allen Salina never fired a gun shot at John Allen and voluntarily was dismissed.).   *A reasonable officer (eg. Tyler Salina) would not and did not, concluded that Allen was reaching for a weapon and was ignoring the officer's instructions because he intended to harm him.*

A reasonable officer, like Tyler Salina who was in the closest proximity to John Allen, Sr. did not fire one gun shot or any weapon at John Allen as he showed his wallet.

### IV. STANDARD OF REVIEW

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a

legally cognizable claim." *Ramming v. United States, 281 F.3d 158* 161 (5th Cir.2001), *cert. denied sub nom. Cloud v. United States,* 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.* To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 127 S.Ct. at 1965). "The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 127 S.Ct. at 1965). "Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it `stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 127 S.Ct. at 1966). Moreover, the court does not accept as true legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1950.

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *See Paterson v. Weinberger,* 644 F.*2d* 521, 523 (5th

Cir.1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. *Id.* A factual attack challenges the existence of subject matter jurisdiction in fact — irrespective of the pleadings — and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* Because the City of Houston has not submitted evidence in support of its Rule 12(b)(1) motion to dismiss the TTCA claims asserted against it, the motion is a facial attack on plaintiffs' pleadings, and the court's review is limited to whether the complaint sufficiently alleges jurisdiction. *Khanasri v. City of Houston, 14 F. Supp. 3d 842 (2014)*

## V. ARGUMENTS AND AUTHORITY

### *Manifest errors of fact or law under FRCP 59(e)*

Decision based on mistaken factual premises are appropriate for a 59(e) motion and for relief from the judgment.

The narrow purpose of a Rule 59(e) motion is to "allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989).

"A Rule 59(e) motion is appropriate 'if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1064 (9th Cir. 2005) (citing *Sch. Dist. No. 1J, Multnomah*

*County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993) "[A] Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Dean. Gillette*, 2005 WL 1631093 at *2 (D. Kan. 2005) (citing *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.2000).  This motion is brought on the basis of the second listed grounds:  the court has misapprehended the facts, a party's position and controlling law to correct a clear error and/or to prevent a manifest injustice. It is also brought to seek the "the purely clerical task of incorporating undisputed facts into the judgment."  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *Molnar v. United Techs. Otis Elevator,* 37 F.3d 335, 337–38 (7th Cir.1994)).

 Plaintiff, Estate of John Allen et. al. files this Motion for Relief from the Judgment and to Alter or Amend the Judgment under Federal Rule Civ. Procedure Rule 59(e) in this Fourth Amendment unreasonable seizure of John Allen. Plaintiff, Estate of John Allen files this his Motion for Relief from the Judgment and Motion to Alter or Amend the Judgment under Federal Rule of Civil Procedure 59(e). Plaintiff's Rule 59(e) motion is timely. The narrow purpose of a Rule 59(e) motion is to "allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989).

"A Rule 59(e) motion is appropriate 'if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Circuit City Stores,*

*Inc. v. Mantor*, 417 F.3d 1060, 1064 (9th Cir. 2005) (citing *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993) "[A] Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Deanv. Gilette*, 2005 WL 1631093 at *2 (D. Kan. 2005) (citing *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.2000).  This motion is brought on the basis of the misapprehended facts and law and the second listed ground: to correct a clear error and/or to prevent a manifest injustice.  It is also brought to seek the "the purely clerical task of incorporating undisputed facts into the judgment."  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *Molnar v. United Techs. Otis Elevator,* 37 F.3d 335, 337–38 (7th Cir.1994)).

### Reconsideration Fed. R. Civ. Pro. Rule 60(b)

Rule 60(b) provides that district courts may relieve a party or its legal representative from a final judgment, order, or proceeding. . . Thus the rule applies only to a final judgement, order, or proceeding. It does not limit a district court's discretion to reconsider an interlocutory judgment or order at any time prior to final judgment. Plaintiff therefore request the court to reconsider its final judgment based on this Motion and the facts contained herein.

### Motion to Defer Fed. R. Civ. Pro. Rule 56(d).

Subdivision (d) of Rule 56, "When Facts Are Unavailable to the Nonmovant", provides a safeguard against premature grants of summary judgment. Plaintiff respectfully requests the court defer its ruling pursuant to Rule 56(d) of the Federal Rules of Civil Procedure to afford Plaintiff the opportunity to conduct discovery.  A continuance should be granted so that Plaintiffs may develop facts, take depositions and conduct other discovery, before the ruling on the converted Motion to Dismiss[2].

## VI. MOTION TO DISMISS

The factual allegation in a Complaint **<u>MUST</u>** be taken as true when evaluating a motion to dismiss. In a 12(b)(6) ruling the Court  is to determine whether the Plaintiffs' complaint  state plausible facts to support the claims alleged based on the law and not consider facts beyond the Complaint. The Supreme Court reiterated that a motion to dismiss for failure to state a claim cannot be granted merely because the factual allegations are not believed.

Motions to dismiss under Rule 12(b) (6) "are viewed with disfavor and are rarely granted." *Lormand v. SU Unwired, Inc.*565 F. 3d 228 (5th Cir. 2009); *Testamasters Educ. Servs., Inc. v. Singh*, 428 F. 3d. 559, 570 (5th Cir. 2005). When faced with a Rule 12(b)(6) motion to dismiss a Section 10 (b) action, court must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual

---

[2] The court essentially converted the Motion to Dismiss to a Motion for Summary judgment when it consider evidence outside of the live complaint, the video footage of the shooting of Allen by Hayes.

allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 , (2007). We must also draw all reasonable inferences in the plaintiff's favor. *Lormand.*, "[A] complaint does not need detailed factual allegations, bust must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true "raise a right to relief above the speculative level." Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007).

   ***A videotape that captures most of the events relevant to this case "significantly aids understanding" of them and a court must "view the facts in the light depicted by the videotape.*** See, *Scott v. Harris, 55*0 U.S. 372, 381 (2007)

   In its order, this Court did not consider certain evidence which would have changed the outcome.

   Here, the court rather  than applying the objective reasonable standards to determine if officer Hayes was entitled to qualified immunity, the court applied a subjective standard, supplementing the facts from outside the complaint, concluding Qualified Immunity should be granted based on what Officer Justin Hayes's "thought", when there is no evidence at this stage to support such speculation from the pleadings.

   Furthermore, the Court did not apply the *Tolan v. Cotton, 572 U.S. __ (2014)* requirements that requires this court to credit evidence that contradicted some of its key factual conclusions that the use of force to  Robbie Tolan's body was  not excessive force.   In other words, the lower courts only gave credence to the evidence that favored

Officer Cotton [Justin Hayes] and didn't give the same importance to evidence that favored Tolan [John Allen]. Here, the same principles applied to John Allen. The court gave credence to the officers who shot John Allen five times during a routine traffic stop.

In *Tolan* and Allen's case the court must view the evidence in the light most favorable to *Tolan*  and likewise in  John Allen's case.  The evidence must be viewed in the light most favorable to John Allen. In Tolan the facts were similar[3]

---

[3]

At around 2:00 on the morning of December 31,2008, John Edwards, a police officer, was on patrol in Bellaire, Texas, when he noticed a Nissan sport utility vehicle turning quickly onto a residential street . The officer watched the vehicle park on the side of the street in front of a house..Two men eited: Tolan and his cousin, Anthony Cooper. Edwards attempted to enter the license plate number of the vehicle into a computer in his squad car. But he keyed an incorrect character; instead of entering plate number 696BGK, he entered 69BGK. That incorrect number matched a stolen vehicle of the sae color and make. This match caused the squad car's computer to see an automatic message to other police units, informing them that Edwards had found a stolen vehicle. Edwards exited his cruiser, drew his service pistol and ordered Tolan and Cooper to the ground. He  accused Tolan and Cooper of having stolen the car. Cooper responded, "That's not true" And Tolan explained, "That's my card" Tilan then complied with the officer' demand to lie facedown on the home's front porch.

As it turned out, Tolan and Cooper were at the home where Tolan lived with  his parents. Hearing the commotion, Tolan's parents exited the front door in their pajamas. In an attempt to keep the misunderstanding from escalating into something more, Tolan's father instructed Cooper to lie down, and instructed Toland and Cooper to say nothing. Tolan and Cooper then remained facedown.

Edwards told Tolan's parents that he believed Toland Cooper had stolen the vehicle. In response, Tolan's father identified Tolan as his son, and Tolan's mother explained that the vehicle belonged to the family and that no crime had been committed.  Tolan's father explained, with his hands in the air,  "This is my nephew. This is my son. We live   here. This is my house"  Tolan's mother similarly offered, "Sir this is a big mistake. This car is not stolen. . .That's our car."

While Tolan and Cooper continued to lie on the ground in silence, Edwards radioed for assistance. Shortly, thereafter, Sergeant Jerry Cotton arrived on the scene and drew his pistol. Edwards told Cotton that Cooper and Tolan had exited a stolen vehicle. Tolan's mother reiterated that she and her husband owned both the car Tolan had been driving and the home where the events were unfolding. Cotton then ordered her to stand against the family's garage door. In response to  Cotton's order Tolan's mother asked, "Are you kidding me? We've lived here 15 years. We've never had anything like this happen before."

The parties disagree as to what happened next. Tolan's mother and Cooper testified during Cotton's criminal trial that Cotton grabbed her arm and slammed her against the garage door with such force that she fell  to the ground. Tolan similarly testified that Cotton pushed his mother against the garage door. In addition, Tolan offered testimony from his mother and photographic evidence to demonstrate that Cotton used enough force to leave bruises on her arms and back that lasted for days. By contrast, Cotton testified in his deposition that when he was escoringthe mother to the garage she flipped her arm up and told him to get his hands off her. He believed he had not left bruises. Tolan testified that upon seeing his mother being pushed, he rose to his knees. Edwards and Cotton testified that Tolan rose to his feet. Both parties agree that Tolan then exclaimed, from roughly 15 to 20 feet away. "Get your

The case, *Tolan v. Cotton*, deals with the manner in which a court must analyze the facts when deciding whether an officer is entitled to summary judgment or qualified immunity. At the outset it is important to note that an officer will be entitled to summary judgment when a court looks at the facs, as reported by the plaintiff, and concludes that the officer did not violate the Constitution. An officer is entitled to qualified immunity even if based on the facts as reported the plaintiff the officer's conduct amounts to a Constitutional violation if at the time the officer acted, the law was not clearly established thus the officer would not know that his/ her actions violated the Constitution.

The U.S. Supreme Court in a per curiam opinion in *Tolan v. Cotton* concluded: "[The Fifth Circuit U. S. Court of Appeals] s*hould have acknowledged and credited Tolan's evidence with regard to the lighting, his mother's demeanor, whether he shouted words that were an overt threat, and his positioning during the shooting"Id.*

In overturning the 5th Circuit, the U.S. Supreme Court instructed that when a court is deciding a summary judgment or qualified immunity motion, the court must look at the facts in the light most favorable to the non-moving party. " In other words since Officer Cotton ws the one seeking summary judgment and qualified immunity, the handling the matter must look at the facts as reported by the plaintiff in this case, Tolan. The Court then went through the facts relied upon by the 5th Circuit and determined that the 5th

---

f--cking hands off my mom." The parties also agree that Cotton then drew his pistol and fired three shots at Tolan. Tolan and his mother testified that these shots came with no verbal warning.  One of the bullets entered Tola's chest, collapsing his right lung and piercing his liver. While Tolan survived, he suffered a life-altering injury that disrupted his budding professional baseball career and causes him to experience pain on a daily basis.

Circuit had relied on the facts as reported by the officer rather than the facts as reported by the plaintiff.

 Similarly, this court in the John Allen's case did not look at the facts from the video and and consider the statements of  Justin Hayes in the light most favorable to John Allen, but rather relied on the facts as stated by the officers in granting the motion to dismiss which was nothing more than a converted summary judgment.   Fort this reason John Allen request this court to alter or amend the judgment by denying the motion to dismiss/summary judgment and grant John Allen relief from the judgment.

 The Tolan case, "*makes clear for officers that when an officer, through his/her attorney is seeking to end the case by filing for summary judgment or qualified immunity, the court reviewing the motion must utilize the plaintiff's facts, even though the officer is in disagreement with those facts, to determine whether the motion will be granted*". 572 U.S.____  (2014)

 In fact based on the record the court is using there is no allegation that Hayes "thought" he saw  a gun anything. Rather  Officer Justin Hayes insisted there was a gun in John Allen Sr.'s pocket and described a gun with specific detail. When Mr. Allen had what he told Officer Justin Hayes a wallet in his pocket, not a gun. The Officer in closest proximity to John Allen did not fire a gun shot, taser or any weapon at John Allen. This fact is significant.

### *Conversion of the Motion to Dismiss to a Motion for Summary Judgment*

Defendants sought dismissal of the Plaintiff's' Complaint under Rule 12(b)(6) on the grounds of the assertion of qualified immunity by Hayes and monell claims by the City of Houston, and did not attach any evidence. Plaintiff has responded without attaching any documents or evidence; however the court considered evidence outside the pleading in making its determination in ruling on the Motion to Dismiss.

There is no clear indication in the court's opinion that the 12(b)6 Motion was converted to a MSJ; the actions of the court by relying on evidence outside of the record demonstrate the court's intention to convert the 12(b)(6) Motion to a Fed Civil Pro. Rule 56 Motion.

### *Five gunshots to an unarmed and non-threatening driver for a defective tail light and running a light/stop sign is Excessive Force*

The court correctly states that John Allen has a right to be free from excessive force. Hayes used excessive force depends on whether he acted acted objectively reasonable.

Hayes' shooting of John Allen was unreasonable. John Allen stopped his truck with his female passenger when approached by the police. The court misapprehend the facts. Allen stopped his truck halfway onto a curb only after losing control from being shot five times and losing control of his body. (See Video). When Hayes arrived at the open passenger-side window, he saw Allen reaching into his pocket for his ***wallet,*** a square shaped object was visible  in Allen's pocket with the flashlight on his pocket, not a gun or

object shaped like or protruding like a gun. (See Video and Amended complaint). Allen was at a complete stop and did not press the accelerator as the court asserts. Hayes had every indication from the shape of the object, the fact that it was not protruding and the conduct of his partner, Tyler Salina who as mentioned was closer to John Allen to know that what was in Allen's pocket was not a gun. Allen received commands from both officers and he was seeking to comply. Hayes as mention did not think that he saw the handle of a gun in Allen's pocket, rather h*e emphatically stated there was a gun*, where no gun was in Allen's pocket and a reasonable officer would not have thought a gun was present from the video and complaint. The court correctly stated Allen actually had a wallet in his pocket. The court as mentioned, incorrectly stated that Hayes did not know and could not have known that at the time. The shape, color and diameter of the object in John Allen's pocket and the way Allen reached for the object out of the pocket indicated to a reasonable person it was not a gun. A reasonable officer could not conclude that Allen was reaching for a weapon and was ignoring the officer's instructions because he intended to harm him. Particularly, since Allen was given commands by two officers, Hayes and Salina at the same time as they cross talked to him at the same time.

The *Graham v. Connor*, 490 U.S. 386 (1989) four prong test is applied to determine if the officer's conduct was objectively reasonable as it relates to a free citizen in a investigatory stop or other "seizure" of his person: (1) The need for the application of force, (2) the relationship between that need and the amount of force that was used. (3)

the extent of the injury inflicted and (4) Whether the force was applied in a good faith effort to maintain and restore discipline of maliciously and sadistically for the very purpose of causing harm, but in a good faith effort to maintain or restore order in the fact of a potentially explosive siuation.*Id* at 248-249.

In a routine traffic stop where the driver is reaching for a square item in his front pocket, which was his wallet and identification does not create a need for the use of force.( Video) As evident by Tyler Salina's conduct in not shooting John Allen or using any force against Allen.

Further the relationship between the need to fire six with five gunshots landing in a free citizen attempting to show his identification in a routine traffic stop weighs in favor of the application of no force. Here, the extent of the injury death is not justified. Finally, the force was not a good faith effort to restore discipline but to cause harm to John Allen. As such, qualified immunity was inappropriate.

## Claims Alleged Against Justin Hayes

### *Wrongful Death*

Allen should have a claim against Justin T. Hayes and therefore his Estate and his beneficiaries, Lawton Allen, John Allen Jr., Martha Vaughan and Sherman Allen.

### *Survivorship*

The court has not addressed or dismissed the Survivorship claim in its order and therefore, the survivorship claim is viable and a live pending issue.

***Texas Tort Claims Act***

Plaintiffs have affirmatively plead waiver of defendants' sovereign immunity in Plaintiffs' live complaint. Plaintiffs stated that Defendants' actions were not objectively reasonable and violated the "clearly established" rights of Mr. Allen. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

This Court should deny Defendants' claim to dismiss Plaintiffs' Texas Tort Claims Act because Plaintiffs have properly pled the statute and have "affirmatively demonstrated the Court's jurisdiction by alleging a valid waiver of immunity." *Tex. Dep't of Criminal Justive v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001).

## Claims Alleged Against City of Houston

The City of Houston here is liable for failure to train, custom and practices of violence during routine traffic stops and ratifying the conduct of Officer Justin Hayes. See, *Khanarsi v. City of Houston*, 14 F. Supp.3d 842 (2014)

*Ratification*

City of Houston ratified the conduct of Officer Justin Hayes by providing him with an award after he shot John Allen five times at during the routine traffic stop.

***Failing to Adequately Training and Custom or Practice of Excessive Force***

City is liable for the officers' deprivation of all plaintiffs' constitutional rights for failing to adequately train the defendant officer to handle an individual in a mental ill; and for having a custom or practice of excessive force by use of a gun. Plaintiffs cited evidence capable of proving that a City custom or policy caused the plaintiffs to suffer deprivation of a right secured by the Constitution or laws of the United States. City is liable for the officers' deprivation of their constitutional rights because the City failed to adequately train Hayes on how to use a gun  and how to handle an individual in suffering from a mental illness, that the City was deliberately indifferent to the failure to train its officers in these areas, and that the City's customs or practices of excessive force by use of gun were the moving forces behind the deprivation of John Allen's constitutional rights.

HPD General Order 500-12 provides officers guidance on handling individuals with mental illness. This general order focuses on the need to secure medical assistance for their mental illness, but also recognizes that they may still be subject to charges for criminal acts such as assault.    John Allen suffered from mental illness and City of Houston was aware of this fact. A simple check of his background by the officers at the scene would have revealed this fact.

In *Monell v. Department of Social Services of the City of New York*, 98 S. Ct. (1978), the Supreme Court held that municipalities are "persons" subject to suit under 42 U.S. C. § 1983, but that municipalities cannot be held liable on a respondeat superior basis, i.e., a municipality cannot be held liable simply because one of its employees violated a

person's federal rights. For a municipality to be held liable under§ 1983, the municipality itself must cause the violation through its policies or customs. Id. at 2037-38 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

To establish municipal liability under § 1983, plaintiffs must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy. . . . A plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose `moving force' is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010), cert. denied, 13 S.Ct. 2094 (2011) (citing Monell, 98 S. Ct. at 2037-38, and quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). When, as here, the acts about which plaintiffs complain are not acts fairly attributable to the local government itself, the Fifth Circuit has articulated two paths of proof:

1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. ***A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive***

*knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.*

Pineda, 291 F.3d at 328 (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc). In Peterson v. City of Fort Worth, Texas, 588 F.3d 838 (5th Cir. 2009), the Fifth Circuit explained that "[w]here prior incidents are used to prove a pattern, they `must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" Id. at 850 (quoting Webster, 735 F.2d at 842). The Fifth Circuit also explained that "[a] pattern . . . requires `sufficiently numerous prior incidents,' as opposed to `isolated instances.'" Id. at 851 (quoting McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir.)

## VIII.  MOTION FOR RELIEF AND TO ALTER OR AMEND

Plaintiff, Estate of John Allen et. al. files this Motion for Relief from the Judgment and to Alter or Amend the judgment on the basis of the new standard for viewing excessive force case in the recent U.S. Supreme Court's holding in *Tolan v. Cotton,134 S.Ct. 1861* and the *Tennessee v. Garner*, *Graham v. Connor*'s standard.

 *The district court, here, applied the old standards.*

The Court of Appeals in *Tolan v. Cotton* erred in its application of the summary judgment standard by failing to consider all of the evidence in the light most favorable to *Robert*

*Tolan*. The Supreme Court cited testimony that indicated that the Court of Appeals improperly resolved disputed facts in favor of *Cotton.*

The Court vacated the judgment and remanded the proceeding, with instructions to acknowledge and credit evidence in Tolan's favor when determining whether Cotton's actions violated clearly-established law. The same principle should apply in John Allen's case.

Similarly, the court here erred in its application of the summary judgment standard [likewise as here, a Motion to Dismiss converted to a summary judgment with video evidence attached] by ***failing to consider all of the evidence in the light most favorable to John Allen, Sr. with respect to the central facts of this <u>case</u>***. "By failing to credit evidence that contradicted some of (City of Houston and Officer Justin Hayes) its key factual conclusions, the court [here] improperly "weigh[ed] evidence" and resolved disputed issues in favor of the moving party", *Anderson v. Lobby. 4*77 U.S. at 249.

First, the court relied on its view that Justin Hayes "thought he saw a gun". When nowhere in the record does Justin Hayes state he thought he saw a gun. ***Nothing, in the record objectively indicate that at the time of the shooting of John Allen, did Justin Hayes state he thought he saw a gun.***

Rather,  Justin Hayes claims he saw a specifically described white handled gun. The only objective evidence is the video and it disputes Hayes' statement of a white or any color handle gun was in John Allen's hand before he was shot.  A gun, that when objectively viewed, a reasonable officer does not see.   Thus, a disputed issue of material fact, issue exist as to whether the officer saw a gun. If no weapon was present in his hand or in proximity to his hand, a reasonable officer would not have been threaten during a routine traffic stop when the citizen is producing his wallet and identification.

In dismissing this case, Estate of John Allen et. al.  suffers a manifest injustice for which a Motion for Relief from the Judgment and to Alter or Amend the Judgment will cure.

The District Court granted motion to dismiss, (summary judgment) to Defendants City of Houston and Officer Hayes, reasoning that regardless of whether Officer  Justin Hayes had   used excessive force, he was entitled to qualified immunity because he did not violate any clearly established right.

This court, like in the lower court in *Tolan,* in articulating the factual context of the case failed to to adhere to the axiom that in ruling on a motion for summary judgment [likewise as here, a Motion to Dismiss converted to a summary judgment with video evidence attached]   "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor". *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

By failing to to credit evidence that contradicted some of its key factual conclusions, the court improperly "weigh[ed] the evidence" and resolved disputed issues in favor of the moving party, (the shooting officers, Justin Hayes).

The court, relied on the shooting Officer's perspective with no account, whatsoever, given to the words of John Allen to the officer prior to the officer firing six gunshots with five landing killing Allen.

The following disputed facts, which viewed in the light most favorable to John Allen as evidenced from the authenticated video:

This was a routine traffic stop of disabled veteran, John Allen, for a broken tail light and allegedly running a red light/stop sign. Officers Salina and Justin Hayes approached the truck driven by Allen with female companion with guns pointed.

John Allen was not a fleeing felon

John Allen came to a complete stop.

John Allen remain at a complete stop

The traffic stop lasted  three minutes.

John Allen stated:    "Here is my wallet" just seconds before being shot five times by Officer Justin Hayes:

John Allen raised his hand with a wallet in his hand as he was shot

Justin Hayes never stated: "I thought he had a gun" (as the court incorrectly relied upon and stated in Doc. 26)

Justin Hayes stated: that he [John Allen] pulled a gun out of his pocket and pointed the gun at him.

The video, the only objective evidence, does not show John Allen having a gun and disputes Hayes statement that the pulled a gun out of his pocket and pointed the gun and shows that John Allen pulled out his wallet, and not a gun.

John Allen did not objectively reasonably appear to be armed with a gun, based on the ***square shape of the objec***t in Allen's pocket

John Allen did not appear to be otherwise dangerous as he was at a complete stop, producing his identification during a traffic stop.

The object in John Allen's pocket before he was shot, met the description of a wallet, was told it was a wallet, was in fact, a wallet

Justin Hayes fired six shots on an unarmed John Allen The wallet was found on John Allen's person.

Even, if the force was justified, and it was not, the ensuing four or five gunshots wounds to John Allen that followed the first gunshot was excessive and unjustified force.

Officer Tyler Salina standing within two inches, and the closest to John Allen  did not fire one gunshot or taser, John Allen and did not perceive an immediate threat to his safety or others.

These material facts, were not considered by the court in dismissing John Allen's case.

## IX. RELIEF REQUESTED

Plaintiff respectfully request the Court to deny the Motion to Dismiss on qualified immunity and the *Monell* claims, allow the parties to proceed with full discovery, issue a docket control order, discovery deadlines, with expert designation and set this case for a trial on the merits.

## X. CONCLUSION

Plaintiff, request the Court to amend the Memorandum and Order dismissing plaintiff's claims and reinstate the case with a docket control order, with experts designation, full discovery and set this case for trial on the merits.

Respectfully Submitted,
*/s/ Debra V. Jennings*
Debra V. Jennings
Fed ID 14373
Texas Bar No. 10631850
lawyerdvj@gmail.com
6140 HWY 6, #269
Missouri City, TX 77459
Phone: (832) 904-4666
Fax: (1-832) 442-3700
LEAD ATTORNEY FOR PLAINTIFFS

By:*/s/U.A. Lewis*
The Lewis Law Group
U.A. Lewis
SBN: 24076511

FBN: 1645666

P.O. BOX 27353

HOUSTON, TX 77227

PHONE: (713) 570-6555

FAX: (713) 581-1017

MYATTORNEYATLAW@GMAIL.COM

ATTORNEY FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 13th day of September 2018, a true and correct copy of the foregoing, MOTION TO ALTER OR AMEND THE JUDGMENT UNDER FED. RULES OF CIVIL PROCEDURE RULE 59(e) has been served via the DC/ECF filing , to the following:

***Via E-file***

Jennifer Callian-Attorney for City of Houston

Dennis Jackson-Attorney for Houston Police Officers Justin Hayes

<u>/s/ *Debra V. Jennings*</u>