IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Courts
Southern District of Texas
FILED
*May 27, 2020*
David J. Bradley, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
May 5, 2020
Lyle W. Cayce
Clerk

No. 19-20360

JOHN ALLEN, JR.; LAWON ALLEN, JR.; ESTATE OF JOHN ALLEN, SR.,

    Plaintiffs - Appellants

v.

JUSTIN HAYS; CITY OF HOUSTON; TYLER SALINA,

    Defendants - Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-171

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

PER CURIAM:*

    Regarding a motion to dismiss converted to one for summary-judgment, primarily at issue in this appeal is the fundamentally unfair procedure employed by the district court in granting, *inter alia*, qualified immunity to an officer who fatally shot a driver during a traffic stop. AFFIRMED in PART; VACATED in PART; and REMANDED.

---

    * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 19-20360

## I.

### A.

Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state claim) was converted *sua sponte* by the district court, pursuant to Rule 12(d), to a Rule 56(a) motion for summary judgment. Nevertheless, for purposes of this appeal, it is necessary first to look to the following allegations in the live complaint, as is required for a Rule 12(b)(6) motion. *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

On 4 November 2015, decedent John Allen, Sr., was driving in Houston, Texas, when Houston police officers Justin Hayes and Tyler Salina stopped his vehicle for several traffic violations. Shanell Arterberry was riding in Allen's front passenger seat.

Officer Salina approached the driver-side window, which did not function; on the other hand, the passenger-side window that Officer Hayes approached was rolled down fully. Officer Hayes "did not identify himself, ask for Allen's name, [or] state the reason for the stop".

When Allen attempted to provide his identification from his wallet to Officer Hayes, the officer became agitated and "instructed [him] to stop moving and get his foot off the gas". Officer Hayes subsequently commanded Allen to "stop reaching" and to "get his hands out of his pocket". "When Mr. Allen complied with [these] commands", Officer Hayes fired six shots, five of which struck Allen, despite Arterberry's pleading with Officer Hayes not to shoot. The encounter lasted 23 seconds.

Other officers arrived; one pulled Allen from the vehicle and handcuffed him. An officer observed he was still breathing; but, soon thereafter, he died at the scene.

Officer Hayes "told [a police] investigator that [Allen] tried to pull a gun out of his right pocket" and "that [Officer Hayes] was able to see that it

2

No. 19-20360

was . . . white handled". Officer Hayes also stated to the police investigator that the "last place he saw [the firearm] was while [Allen] tried to pull [it] out of his right pocket". Police, however, did not locate a firearm on Allen's person, or in the vehicle, but did find a wallet. While in overnight police custody, Arterberry stated "[s]he saw a gun"; but, she "quickly recanted" once released and stated Allen neither had a firearm nor "pull[ed]" one on Officer Hayes.

Against the backdrop of these allegations in the operative complaint, we turn to the procedure followed by the district court.

B.

Plaintiffs John Allen, Jr., Lawon Allen, Jr., and the Estate of John Allen, Sr., filed this action in Texas state court on 3 November 2017 against Officers Hayes and Salina (in their individual capacities), claiming they used excessive force, actionable pursuant to 42 U.S.C. § 1983; also asserted against them were Texas-law wrongful-death and survivorship claims. In addition, plaintiffs presented constitutional claims against the City of Houston, filed pursuant to § 1983, as well as various Texas-law claims. Following removal, defendants on 8 February 2018 filed a motion to dismiss on behalf of all defendants, pursuant to Rule 12(b)(6) and claiming, *inter alia*, that Officer Hayes was qualifiedly immune.

As provided in the transcript of the 14 February 2018 scheduling conference, at which the district judge presided, defendants produced a compact disc (CD) containing their required Rule 26(a)(1) initial disclosures, such as: Officers Hayes' and Salina's body-camera videos; "everything from the criminal investigation" [of Officer Hayes' conduct in the incident]; and the Houston Police Department's internal-affairs file. Obviously, defendants intended to produce the CD to plaintiffs; the district judge, however, instructed defendants to give the CD to him instead and ordered plaintiffs to respond by 23 February to the 8 February Rule 12(b)(6) motion.

3

No. 19-20360

Defendants had also moved, on 29 January, for a protective order to prevent plaintiffs' publicly disclosing specific "[f]iles maintained pursuant to Texas Local Government Code § 143.089(g)" ("A . . . police department may maintain a personnel file on a . . . police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a . . . police officer."). As described in the motion, such protected files are: "investigative files and departmental personnel files of police officers"; "[i]nternal[-a]ffairs records"; and "[e]mployment files" containing a police officer's "home address and telephone numbers, social security numbers, and information on family members". The district judge orally granted this motion at the 14 February scheduling conference; the motion, however, did not reference videos generally or the body-camera videos at issue specifically. And, the statute defendants referenced refers to a "personnel file", Tex. Local Gov't Code § 143.089(g), which would not include body-camera videos.

Subsequent to the 14 February scheduling conference, defendants provided two non-functional CDs to plaintiffs. After plaintiffs notified the court they had not received a functional CD, the court's 22 February one-sentence order required the City, by 23 February, to "give [plaintiffs] a disc that works". Therefore, on 23 February and as stated in plaintiffs' 23 February motion to extend the time to file their response to the 8 February Rule 12(b)(6) motion, defendants "provided [to plaintiffs] a voluminous amount [of] disclosure documents, and videos" on a CD. As stated in plaintiffs' 13 September post-judgment motions pursuant to Rules 59 and 60, these "includ[ed] key additional facts from witness statements, photographs, investigation reports, [and] dispatch call information".

4

No. 19-20360

The record suggests, but does not establish, that this CD included an affidavit by Officer Hayes. And, as plaintiffs emphasize, the record does not establish that this CD contained the same files as the CD provided only to the district judge at the 14 February scheduling conference.

The 23 February response deadline for the Rule 12(b)(6) motion was extended to 1 March, on which plaintiffs amended their complaint as a matter of course. (This is the live complaint from which the allegations provided in part I.A. are taken.) The amended complaint included allegations based on "the bodycam footage of [Officer] Hayes, and his partner [Officer] Salina". (Plaintiffs presumably referred to whatever version of the body-camera videos they had.) Plaintiffs' response to the Rule 12(b)(6) motion was filed on 2 March.

Following the amended complaint, defendants filed a new Rule 12(b)(6) motion, raising essentially the same grounds as in their first. Plaintiffs and defendants then traded responses and replies; defendants also answered the amended complaint.

On 16 August 2018, the court's "Opinion on Dismissal" noted: the amended "complaint describe[d] the [body-camera] videos"; and the court "consider[ed] *them* in its decision". (Emphasis added.) This reference to "them" is presumably not to the descriptions of the videos in the amended complaint but, instead, to the body-camera videos contained on the CD provided only to the district judge at the 14 February scheduling conference, thus converting the Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. The opinion, however, did not state whether the court considered the other documents that CD contained.

Pursuant to the opinion, Officer Salina was dismissed for plaintiffs' failure to serve process; and Officer Hayes was granted qualified immunity because he did not violate Allen's right to be free from excessive force. Regarding the constitutional claims against the City, the court concluded the

No. 19-20360

amended complaint's alleging numerous police shootings did not show a "policy or custom of the Houston police department". For the Texas-law claims, it concluded: the wrongful-death claim against Officer Hayes failed because Allen had no claim against the officers; sovereign immunity barred the Texas Tort Claims Act claim; and Texas' constitution does not create a constitutional-damages action.

Accordingly, the court entered a one-sentence final judgment that plaintiffs "take nothing". As noted, plaintiffs moved to alter or amend the judgment, pursuant to Rule 59(e), as well as for relief from the judgment, under Rule 60(b). After several responses and replies, the court denied these motions without explanation.

II.

On appeal, plaintiffs do not contest the denial of the post-judgment motions. Nor do they contest Officer Salina's being dismissed for their failure to serve process.

For reasons that remain unclear, the record on appeal does not contain any CD, including the body-camera videos and the documents included in the CD which the district judge took at the 14 February scheduling conference. In that regard, following extensive questioning of both sides at oral argument before our court about the missing CD's not being included in the record on appeal, the parties filed a joint motion to supplement the record on appeal with the "entire initial disclosures including all video discs submitted to the trial court". Given the extreme confusion surrounding which videos and documents were properly before the district court and how they came to be there, as well as plaintiffs' objection to particular videos' authenticity, discussed *infra*, the motion was denied.

Regarding the summary-judgment procedures employed by the district court, plaintiffs contend, *inter alia*: the court provided insufficient notice of,

6

and opportunity to respond to, summary judgment; multiple versions of Officer Hayes' body-camera video exist; and the version contained on the CD provided only to the district judge on 14 February was not authentic. We agree that the unusual procedures the district judge employed—namely, requiring the 14 February CD be provided on that date only to him—require our vacating and remanding because they deprived plaintiffs of access to the "matters", *see* Rule 12(d) discussed *infra*, on which the court relied in granting summary judgment.

In ruling on a Rule 12(b)(6) motion, the court is required to consider facts alleged in the operative complaint and "written instruments" attached to it. Fed. R. Civ. P. 10(c); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citations omitted). In addition, the court may "rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice". *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks and citation omitted). The court may further consider documents *attached to the Rule 12(b)(6) motion* "that are referred to in the plaintiff's complaint and are central to the plaintiff's claim". *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (internal quotation marks and citation omitted).

If matters beyond these are presented, the court has "complete discretion" to exclude them. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (citations omitted). On the other hand, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion". Fed. R. Civ. P. 12(d).

As discussed, the court's opinion implies it considered body-camera videos. But, as discussed *supra* and *infra*, these types of videos were contained

on the initial-disclosure CD the district judge instructed defendants to give only to him at the 14 February scheduling conference. As also discussed, because the CD contained many other documents from the City's internal-affairs and criminal investigations into Officer Hayes' conduct, it is unclear whether the court considered these documents as well.

In any event, as discussed *supra*: "matters outside the pleadings" appear to have been "presented to and not excluded by the court"; accordingly, the motion to dismiss was converted to one for summary judgment. *Id.* Although the court's final judgment was simply that plaintiffs "take nothing" from defendants, and did not state under which rule judgment was granted, the Rule 12(d) conversion means the court granted summary judgment, governed by Rule 56. *See, e.g., Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016) (citations omitted) (recognizing conversions may occur implicitly).

A summary judgment is reviewed *de novo*. *E.g., Hoog-Watson v. Guadalupe Cty.*, 591 F.3d 431, 434 (5th Cir. 2009) (citations omitted). Under the familiar Rule 56 standard, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). "Once an official asserts the defense of qualified immunity, [however,] the burden of proof shifts to the plaintiff, who must rebut the defense by establishing a genuine [dispute of material] fact . . . as to whether the official's allegedly wrongful conduct violated clearly established law". *Winfrey v. Pikett*, 872 F.3d 640, 644 (5th Cir. 2017) (internal quotation marks and citation omitted). That said, all facts and reasonable inferences are drawn in the non-movant's favor. *E.g., Guaranty Bank & Tr. Co. v. Agrex, Inc.*, 820 F.3d 790, 794 (5th Cir. 2016) (citation omitted).

No. 19-20360

Review of a summary judgment "is confined to an examination of materials before the [district] court at the time the ruling was made; subsequent materials are irrelevant". *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (citations omitted). And, the "substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible", even though "the material may be presented in a form that would not, in itself, be admissible at trial". *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).

A.

A motion's being converted under Rule 12(d) triggers several procedural safeguards to prevent "summary judgment['s being] used to cut off discovery". *Clark v. Tarrant Cty.*, 798 F.2d 736, 746 (5th Cir. 1986). As stated, the parties "must be given a reasonable opportunity to present all" pertinent material. Fed. R. Civ. P. 12(d). Notice to the parties is also required and is generally sufficient "as soon as [the parties] know [the] court has accepted matters outside the pleadings for consideration". *Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 667 (5th Cir. 2019) (citation omitted). The court's providing express notice is the "better practice", but its failure to do so does not alone require reversal. *Id.* (citation omitted). In that regard, and for quite obvious reasons, including to provide the requisite fundamental fairness, sufficient notice requires the party opposing the motion to have: received the matters accepted for consideration; "had an opportunity to respond to them"; and "not controverted their accuracy". *See Moody v. Town of Weymouth*, 805 F.2d 30, 31 (1st Cir. 1986) (citation omitted).

Taken together, our decisions demonstrate notice is sufficient where the non-movant has had access to the matters beyond the pleadings and some objective reason to believe such matters might be considered by the court. In *Snider*, both parties filed—and therefore had access to—documents beyond the

9

pleadings, and the court ordered summary-judgment briefing. 946 F.3d at 666–67. Under those circumstances, a party would reasonably be on notice the court was considering utilizing summary judgment. *See id.* In *Clark*, the court similarly placed the parties on notice by its accepting, at a hearing on the motion to dismiss, oral testimony related to the issues the motion raised. 798 F.2d at 740, 745–46. The non-movant was present at the hearing and would reasonably be expected to realize that the court might consider the testimony it allowed to be taken in the ordinary course of the hearing. *See id.* at 745–46. In *Isquith*, the movants filed multiple documents with their motion to dismiss. 847 F.2d at 196. Again, the non-movant had access to this filed material and would be reasonably notified that the court might rely on it. *See id.*

The key difference in this situation is the court's intercepting the CD at the 14 February scheduling conference. At the outset, we note the transcript of this conference is incomplete because the court engaged, repeatedly and for multiple minutes, in "[o]ff-the-record commentary".

Defendants were prepared, at the scheduling conference, to produce to plaintiffs the CD that, as stated, contained their required initial disclosures. The district judge asked defendants whether plaintiffs' counsel had "gotten a copy of the officers' film of [the incident]". Defendants' counsel responded affirmatively, stating: plaintiffs' version had not come from defendants, but from an open-records request; the parties had not yet "discussed exchanging all the documents the City has in its possession because of the pending protective order motion" discussed *supra*; and defendants had the CD containing the material "ready to go".

The district judge did not confirm with plaintiffs' counsel that plaintiffs had access to a copy of the body-camera videos (or confirm that any version to which plaintiffs had access was the same as the version contained on the CD); it instead instructed defendants to "hand [the CD] up" to the court.

No. 19-20360

Defendants' counsel advised the court that the CD contained not only the body-camera videos but also, as stated, "everything from the criminal investigation, other files referenced in the criminal investigation regarding Mr. Allen[,] and the [internal-affairs] file". (At oral argument before our court, plaintiffs stated they understood the CD to contain hundreds of documents.)

The district judge then proceeded to ask plaintiffs about their complaint's allegations of, *inter alia*, pain and suffering. After plaintiffs responded by referring to "the video that [they] saw", the district judge asked if "the video show[s] whether [Allen] was conscious" after the shooting. When plaintiffs answered he was alive and that it took "[a]t least six minutes before emergency services [EMS] were summoned to the scene", defendants "dispute[d] that [it took] six minutes for the officers to call EMS" because they "th[ought] the video shows that the officers dialed 911 to call EMTs as soon as they could". On this basis, the court stated that Allen "had medical care within ten minutes and was dead on [EMS'] arrival".

As stated, the documents and videos on the CD the district judge took at the 14 February scheduling conference were to be provided to plaintiffs as defendants' required Rule 26(a)(1) initial disclosures. In that regard, whether the documents and videos are understood to be "documents [and] electronically stored information", or the CD containing them is considered to be a "tangible thing", defendants were ready to produce "cop[ies] . . . of . . . documents, electronically stored information, [or] tangible things that [they] ha[d] in [their] possession, custody, or control and m[ight] use to support [their] claims or defenses" that would not be used "solely for impeachment". Fed. R. Civ. P. 26(a)(1)(A)(ii); *see also, e.g.*, Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment (noting "[r]eferences elsewhere in the rules to 'electronically stored information' should be understood to invoke [an] expansive approach" that "includes any type of information that is stored electronically"); Fed. R.

11

No. 19-20360

Civ. P. 26 advisory committee's note to 2006 amendment ("The term 'electronically stored information' has the same broad meaning in Rule 26(a)(1) as in Rule 34(a)."); *Kapp v. Schiavi*, No. 1:08-cv-2-HSO-JMR, 2010 WL 11530416, at *3 (S.D. Miss. 11 Mar. 2010) (concluding surveillance videos relevant to claims or defenses should have been disclosed pursuant to Rule 26(a)(1)(A)(ii)).

That the documents and videos on the CD the district judge took at the 14 February scheduling conference were Rule 26(a)(1) initial disclosures (whether documents, electronically stored information, or tangible things) has an important consequence. Pursuant to Rule 5(d)(1)(A), such "disclosures under Rule 26(a)(1) . . . must not be filed *until they are used in the proceeding or the court orders filing*". Fed. R. Civ. P. 5(d)(1)(A) (emphasis added). The Advisory Committee has defined "used in the proceeding" to include "any use of discovery materials in court in connection with a motion". Fed. R. Civ. P. 5 advisory committee's note to 2000 amendment.

In this instance, as stated, the court itself, at the 14 February scheduling conference, asked plaintiffs what was shown on "the video" regarding their allegations of, *inter alia*, post-shooting pain and suffering. Defendants also described the video to counter the assertions plaintiffs made, based on whatever video they had seen, about how long it took EMS personnel to arrive at the scene. Because this abnormal procedure was manifestly "any use of discovery materials in court in connection with a motion" (in this instance, the pending Rule 12(b)(6) motion), the videos that were part of the Rule 26(a)(1)(A)(ii) initial disclosures should have been filed. *See* Fed. R. Civ. P. 5(d)(1)(A); Fed R. Civ. P. 5 advisory committee's note to 2000 amendment. (This is not to say that all discovery material will constitute a "paper", as that term is used in Rule 5, or that all discovery material must be filed; these conclusions would be contrary to the rule's language. It is simply to say that

12

where, as in this instance, a Rule 26(a)(1) initial disclosure is "used in the proceeding", Rule 5(d)(1)(A) requires its being filed.)

Rule 5(d) authorizes two filing methods: electronic, pursuant to Rule 5(d)(3); and nonelectronic, pursuant to Rule 5(d)(2). As a general rule, "[a] person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule". Fed. R. Civ. P. 5(d)(3)(A). For nonelectronic filing, a paper is either "deliver[ed] . . . to the clerk", Fed. R. Civ. P. 5(d)(2)(A), or "deliver[ed] . . . to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk", Fed. R. Civ. P. 5(d)(2)(B). It goes without saying that courts are not authorized to create other methods of filing. *See IBM Corp. v. Edelstein*, 526 F.2d 37, 45–46, 48 (2d Cir. 1975) (issuing writ of mandamus where district judge barred party from filing papers with clerk's office and instead required documents be filed in his chambers).

The record on appeal does not show the videos contained on the CD the district judge took at the 14 February scheduling conference were ever electronically filed, pursuant to Rule 5(d)(3), or nonelectronically filed by "delivering [them] . . . to the clerk", pursuant to Rule 5(d)(2)(A). Nor does our review of the record on appeal, including the 14 February scheduling conference's transcript, disclose an agreement by the district judge to accept the videos on the CD for filing, or the district judge's "promptly send[ing] [them] to the clerk", as would have been required to satisfy Rule 5(d)(2)(B). (Although the docket sheet states unspecified "[e]vidence [was] taken" at the scheduling conference, this notation does not substitute for compliance with Rule 5(d)(2).)

In their briefs on appeal, the parties do not cite, much less discuss, any parts of Rules 5 or 26. In any event, as stated, the rules apply in this instance,

and our addressing them *sua sponte* is prompted by the highly irregular procedures followed by the district judge in considering, apparently, videos that were never filed. In that regard, even if Rules 5 and 26 were not applicable or considered, the procedural safeguards discussed *supra*—regarding a motion to dismiss being converted, pursuant to Rule 12(d), to a motion for summary judgment, pursuant to Rule 56—were nonetheless violated. Plaintiffs are entitled to these rules' protection; at its core, this protection is simply the fundamental fairness that due process requires: their being able, *inter alia*, to access the same videos on which the court apparently relied in granting summary judgment six months after the extremely critical 14 February scheduling conference.

Along that line, filing, as contemplated by Rule 5(d), obviously has meaningful consequences: it enters the filed items into the record, establishing exactly which items are at issue and may be considered by the court; and it allows other parties to review them. *See IBM*, 526 F.2d at 45 (noting "[f]iling at the trial court level with a view to 'making a record' is crucial because, absent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record" (citations omitted)). This failure to follow Rule 5(d) leads to the issues—including confusion—clouding this appeal. Although the CD taken by the district judge at the 14 February scheduling conference may have contained the same videos and documents as defendants later produced to plaintiffs on 23 February, the record does not establish this because none of the Rule 26(a)(1) initial disclosures that Rule 5(d)(1)(A) required to be filed were filed before the court granted summary judgment. Underscoring the severity of this defect, defendants admitted at oral argument before our court that they did not know how a particular document (an affidavit by Officer Hayes) was in the summary-judgment record.

Plaintiffs contest, moreover, the authenticity of the videos produced to the court because, as they stated at oral argument on appeal, they understand them to have different timestamps and to have been edited differently from the versions they possess. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Moody*, 805 F.2d at 31 (concluding notice sufficient where, *inter alia*, "[p]laintiff has not even on appeal disputed the accuracy of the factual assertions in [a document defendants placed before court]"). That summary judgment may be based only on admissible content bears reiteration, *see, e.g., Lee*, 859 F.3d at 355 (citations omitted); and, it goes without saying that evidence must be authenticated before it is admissible, *see, e.g.*, Fed. R. Evid. 901(a). Authentication is a low burden, requiring only a showing "sufficient to support a finding that the item is what the proponent claims it is", *id.*, and the video's "own distinctive characteristics" might overcome it, *see McLain v. Newhouse (In re McLain)*, 516 F.3d 301, 308 (5th Cir. 2008) (citation omitted) (considering document attached to summary-judgment motion). But, this is an issue to be resolved on remand.

Regarding *Mackey v. Owens*, No. 98-60758, 1999 WL 423077, at \*1 (5th Cir. 2 June 1999) (affirming summary judgment, following *sua sponte* conversion, that relied on documents attached to motion to dismiss), on which defendants rely, we note *Mackey* is not precedential because it is an unpublished opinion issued in 1999. *See* 5th Cir. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent . . . ."). To the extent *Mackey* is considered, however, it is distinguishable.

Unlike in this instance, movants in *Mackey* attached documents to their motion to dismiss; and, when the motion in *Mackey* was filed, Rule 5(d) was satisfied. *See* 1999 WL 423077, at \*2. The attached documents, moreover, were properly before the court on summary judgment, despite their not being

authenticated, because "[a]dmissible evidence may be submitted in an inadmissible form at the summary[-]judgment stage". *Id.* (citation omitted). In this instance, however, plaintiffs contend that the claimed discrepancies in what the different versions of the videos show, discussed *supra*, would preclude even that.

B.

As stated, the judgment is affirmed only as to Officer Salina's being dismissed. As to the remaining defendants—Officer Hayes and the City of Houston—it is vacated. On remand, the court is to require the remaining defendants to make their Rule 26(a)(1) initial disclosures to plaintiffs and permit plaintiffs to amend their complaint based on those disclosures. Defendants may, *inter alia*, subsequently, of course, move for Rule 12(b)(6) dismissal or Rule 56 summary judgment on some or all of plaintiffs' claims, concomitantly complying as required with Rule 5. If plaintiffs object to the authenticity, or otherwise contest the admissibility of, any supporting items, *see* Fed. R. Civ. P. 12(b)(6); 56(c)(2), the court should resolve the objections. It goes without saying that plaintiffs may also file items in support of their opposition to any such motion.

Regarding qualified immunity *vel non* for Officer Hayes, which is one of the issues to be reconsidered on remand, one of its purposes is "to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made". *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Accordingly, "[b]efore allowing discovery in a matter where qualified immunity is [asserted], the district court must first find that the plaintiff's pleadings [allege] facts which, if true, would overcome a qualified[-]immunity defense". *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 643 (5th Cir. 2014) (internal quotation marks and citation omitted); *see also, e.g., Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 223 (5th Cir. 2018) (holding

16

No. 19-20360

district court did not err in declining discovery requests where plaintiff's "claims could not overcome the clearly-established prong of the qualified[-]immunity defense").

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED in PART and VACATED in PART, and this action is REMANDED for further proceedings consistent with this opinion.