**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON, DIVISION**

| | |
|---|---|
| **JOHN  ALLEN JR., INDIVIDUALLY, AND AS A REPRESENTATIVE OF THE ESTATE OF JOHN ALLEN LAWTON ALLEN, SHERMAN ALLEN, AND MARTHA VAUGHN, Plaintiffs,** § § § § § § § § § | **CIVIL ACTION NO. 4:18-CV-00171** **JURY DEMANDED** |
| **VS.** **CITY OF HOUSTON, TEXAS, JUSTIN THOMAS HAYES, Individually,  APRIL PALATINO, Individually, M. ARROYO, Individually, and DIEGO MORELLI, Individually, Defendants,** § § § § § § § § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT (CORRECTED)**

This is an action brought by Plaintiffs, John Allen Jr., and Lawon Allen individually *and John Allen Jr. as the administrator,* of the Estate of Mr. John Allen Sr., on behalf of Mr. John Allen Sr., deceased. Plaintiffs respectfully come before this Honorable Court pursuant to 42 U.S.C. §1983 and Texas Wrongful Death and survivorship statute, complaining through plausible, detailed, and specific facts that defendants acted under color of state law and unreasonably deprived John Allen, deceased, of his clearly established rights secured by the United States Constitution, Fourth and Fourteenth Amendments, to remain free from unreasonable seizure and injury against Defendants City of Houston, and Justin Hayes. Plaintiffs further seek leave to join parties, M.

Arroyo, April Palatino, and Diego Morelli[1]. In support thereof, plaintiffs specifically allege the following:

## I. INTRODUCTION

1.     This case arises out of a November 4, 2015, alleged equipment stop where Mr. John Allen, a mental health consumer with Houston Police Department[2], was shot five times and killed during a twenty-three seconds traffic stop.

2.     This civil rights and state tort action seeks compensatory and punitive damages from defendants for violating various rights under the United States Constitution in connection with the fatal officer-involved shooting death of Plaintiffs' father, Mr. John Allen, Sr. ("Mr. Allen"), on November 4, 2015.

---

[1] Leave to join parties April Palatino, and Diego Morelli based upon the discovery rule. Plaintiffs were made aware of the names of the defendants upon receipt of discovery from the city defendants. Fraudulent concealment is a basis for tolling the statute of limitations. In cases where fraudulent concealment is involved, the statute of limitations does not begin to run until the relevant facts, which are in the control of the defendant, become known to the plaintiff: "When a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled." *Piotrowski v. City of Houston*, 237 1F.3d 567, (5th Cir. 2001). See also *Piotrowski I*, 51 F.3d at 517; *United States v. Kubrick*, 444 U.S. 111, 122, 100 S. Ct. 352, 359, 62 L. Ed. 2d 259 (1979); *Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1521-22 (5th Cir. 1993) as well as the relation back doctrine.

[2] John Edward Allen, Sr., an Army veteran suffered from Post-Traumatic Stress Disorder. Due to the many previous contacts with the City of Houston's police Department he had a well-documented history of mental health issues and was therefore documented and registered by HPD as a "mental health consumer". As a mental health consumer, he was placed on "premises history" which listed his name, identity and address. On March 7, 2014 HPD officers Pena, Jackson and Brown were summoned to Allen's home because he was having a mental health crisis. Allen announced to officers that his son, who was alive and well, was dead in the home the officers needed to remove the body from inside of the house. Officers attempted to get Mr. Allen went with the medics, but Mr. Allen fought the officers instead. The officers recognized the mental crisis and were able to restrain him by strapping Allen to a gurney. Allen's home was documented as "premises history by HPD mental health officer, Moulton. On September 17, 2014, HPD officers responded to a mental health investigation, as Allen was in a red 1999 Ford F-150 with license plates reading, the same truck Mr. Allen was driving on the night he was killed by Officer Hayes. The officer in the September 2014 incident had similar issues with Mr. Allen's "compliance" and believed that use of force was unnecessary , due to mentally ill, Mr. Allen's inability to follow the officer's commands; however, the September 2014 officer chose a different de-escalation approach. He disengaged contact with Allen, called a K-9 unit and was able to get Mr. Allen into custody, and to the hospital for a mental health checkup. The officer acted reasonably under the circumstances without causing harm to Mr. Allen or allowing harm to others.

3. Houston Police Department Officer Justin Thomas Hayes shot five times at point blank range and killed unarmed Mr. John Allen without any lawful justification.

4. Before Defendant Hayes shot Mr. John Allen--a 58-year-old father and Army veteran-- had been simply driving a female to McDonald's.

5. Mr. Allen had been committing no crimes at all. He poses no immediate threat of harm. Nonetheless, HPD officer Tyler Salina made commands to Mr. Allen.

6. Justin Hayes, however, confronted Mr. Allen in an agitated manner.

7. Because of his status as a police officer, nobody held Defendant Justin Hays accountable for his actions.

8. Although grand jury proceedings commenced against Justin Hayes based on the Harris County District Attorney's reasonable suspicion that Hayes committed a crime related to the shooting; he was no-billed by the grand jury and released from custody on August 19, 2016.

9. Hayes remained with the Houston Police department and was promoted to a sergeant.

10. Justin Hayes was on fair notice that his conduct in shooting the unarmed Mr. Allen at the November 4, 2015 traffic stop was unlawful based on the situation Hayes confronted, a non-threatening, non-resistant citizen who was not attempting to evade arrest by flight. But came to a complete stop.

11. There were clearly established rules that prohibited Justin Hayes from using

deadly force by shooting Mr. Allen five times as Mr. Allen complied with the commands of his partner, Tyler Salina.

12.     Rules that prohibited Justin Hayes from shooting Mr. Allen five times as Mr. Allen complied with the commands of his partner, Tyler Salina.

13.     The City of Houston gave Justin Hayes an award related to the killing of Mr. Allen.

14.     Tragically, the shooting of an unarmed citizen by a member of the Houston Police Department was not an isolated incident.

15.     The City of Houston has a rash of police-involved shooting where officers have not been disciplined.

16.     In the past immediately prior to the 2015 use of deadly force on John Allen, HPD officer Jason Rosemon killed Kenny Releford unconstitutionally using deadly force, as was Jordan Baker killed by J Castro, and Helder Flores severely wounded by Thomas Harris, Silvanus Okhueligbe killed by Thomas Harris, and no officer was terminated or disciplined in any of the named instances and disputes the dishonestly and contradicting accounts.

17.     The City of Houston has ratified this conduct by either doing nothing or awarding  as they did Justin Hayes, a certificate and a promotion in direct connection with the shooting of Mr. Allen. And, like Defendant Hayes, the City has not been held accountable for its actions (and inactions) concerning the shooting of unarmed

individuals by its officers.

18.     This action, brought under 42 U.S.C.§1983, seeks justice-and accountability-for the wrongful, unjustified killing of Mr. Allen, and seeks to deter the practice of wrongful, unjustified shootings of others at the hands of the Houston Police Department. Decedent  Mr. John Allen Sr. was an individual residing in the City of Houston, Texas.  He served this country in the United States Army and during his sacrifice for our country he suffered from mental illnesses.

## II. PARTIES AND SERVICE

1.     **Plaintiff, John Allen, Jr.,** is an individual residing in the City of Houston, Texas, and is the natural son of Mr. Allen. Mr. John Allen sues both in his individual capacity as the son of Mr. Allen and in a representative capacity as an administrator of the Estate of Mr. Allen pursuant to Texas Estate Code §301. Mr. Allen seeks both survival and wrongful death damages under federal and state law.

2.     **Plaintiff, The Estate of John Allen** represents the property and legal interests of Mr. Allen Mr. Allen. John Allen, Jr, as administrator for the Estate of John Allen, brings this action on behalf of him and his brother.

3.     **Plaintiff, Lawon Allen** is an individual residing in the City of Houston, Texas, and is the natural son of Mr. Allen.

4.     **Plaintiff, Martha Vaughan** is an individual residing in the City of Houston,

Texas, and is the natural mother of Mr. Allen,

5.      **Plaintiff, Sherman Allen** is an individual residing in the City of Houston,

Texas, and is the natural father of Mr. Allen.

6.      **Defendant, City of Houston ("City")** is and was a duly organized public

entity, existing under the laws of the State of Texas. City is a chartered subdivision of

the State of Texas with the capacity to be sued. City is a Texas municipal corporation

that operates the Houston Police Department (the "HPD " or "Department"), which

in turn sets city-wide policy for police officers employed by the Department. City is

responsible for the actions, omissions, policies, procedures, practices, and customs of

its various agents and agencies, including the City of Houston Police Department and

its agents and employees. At all relevant times, Defendant City was responsible for

assuring that the actions, omissions policies, procedures, practices, and customs of the

City of Houston Police Department and its employees and agents complied with the

laws of the United States and of the State of Texas. The City of Houston, Defendant is

sued in its official capacity and subjected to monetary damage claims under 42 U.S. C.§

1983 because its official policy or custom caused Mr. Allen, Sr., to be deprived of state

and federally protected right[3]. At all relevant times, City was the employer of

Defendant Justin Hayes. Defendant City and may be served with process at Houston

Police Department 1200 Travis Street, Houston, Texas 77002 or where he may be

---

[3] *Monell v. Dept of Social Services*, 436 U.S. 658, 694(1978)

found.

7.      **Defendant, Justin Thomas Hayes** is a police officer working for the City of Houston Police Department. The officer defendant was acting under color of law within who, at all times relevant to this action, was acting in his individual capacity under color law and within the course and scope of his duties as officer for the City of Houston Police Department. At all relevant times, the officer defendant was acting with the complete authority and ratification of their principal, Defendant City of Houston.  In 2010, Justin T. Hayes was hired by Houston Police.

8.      **Defendant, Diego Morelli**, is supervisory officer for the City of Houston Police Department who was acting under color of law within the course and scope of their duties as police officers for the City of Houston Police Department. Morelli dragged Mr. Allen from the truck after five gunshots were inflicted on Allen and tossed him on the ground without making any effort to render aid to the severely injured Allen. Defendant  Morelli and may be served at Houston Police Department 1200 Travis Street, Houston, Texas 77002 or where he may be found.

9.      **Defendant, April Palatino,** is Houston Police Department crime scene unit office. who was acting under color of law within the course and scope of their duties as police officers for the City of Houston Police Department. Palatino claimed to have found a revolver in the back seat, on top of comforters in plain sight on November 6, 2015. Defendant Palatino may be served at Houston Police Department 1200 Travis

Street, Houston, Texas 77002 or where she may be found.

10.    **Defendant M. Arroyo** is an Internal Affairs Division investigator for the City of Houston Police Department who was acting under color of law within the course and scope of their duties as police officers for the City of Houston Police Department. Arroyo claimed  on November 26, 2015 to have found a suspect weapon of an unknown type that could be seen in plain view on November 4, 2015. Defendant Arroyo may be served at Houston Police Department 1200 Travis Street, Houston, Texas 77002 or where he may be found.

## III. JURISDICTION AND VENUE

11.    This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U. S. C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution and supplemental jurisdiction for all state law claims.

12.    Venue is proper under 28 U.S.C. §1391(b) because Defendants reside in this district and all incident events, and occurrences giving rise to this action occurred in this district.

## IV. FACTS COMMON TO ALL CLAIMS FOR RELIEF

13.    This is a civil rights action brought by John Allen Jr. and Lawon Allen, individually and on behalf of Mr. John Allen, Sr. deceased, for damages for violation of

constitutional rights and Texas Law wrongful death and survivorship.

14.    On November 4, 2015, Mr. Allen had the clearly established rights[4] under the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive force; and.be free from illegal arrest.

15.    Mr. John Allen, a known mentally ill army veteran was driving in Houston, Texas, at night when Houston police officers Tyler Salina and Justin Hayes stopped his Ford F-150 Truck for a routine traffic stop.

16.    Shanell Arterberry was riding in Allen's front passenger seat of the truck in a relaxed and reclined position with her legs stretched on the dashboard of the truck.

17.    Officer Salina approached the driver-side window, which did not function; on the other hand, the passenger-side window that Officer Hayes approached was rolled down fully.

18.     Officer Salina, nor Officer Hayes did not identify themselves as police officers, ask for Allen's name, or state the reason for the traffic stop. This was the stop of a mentally ill Mr. Allen.

19.    An unmarked police "ghost car" was at the scene.

20.    Hayes and Salina approached the passenger and driver side of Allen's truck with pointed guns.Officer Salina on the driver side made commands for Allen to roll down the window.

---

[4] *Khansari v. City of Houston*, (S.D. Tex. 2014); *Deville v. Marcantel*, 567 F. 3d 156, 167 (5th Cir. 2009): *Tolan v. Cotton*, 572 U.S. 650 (2014); *Baker v. Putnal*, 75 F. 3d 190, 196( 5th Cir. 1996)
*Tennessee v. Garner*, 471 U.S. 1, 4 (1985), and *Graham v. Connor*, 490 U.S 386, 396 (1989) *Hunter v. Cole*, 137 S. Ct. 497 *(2016, writ denied) Kost v. Cotto*,1:19-cv-25-RP (U.S. District. Ct. W.D. Texas 2020).

21.     He was unable to roll down the window because the window did not function.

22.      Officer Salina heard Mr. Allen say he was reaching for his wallet and he did not     give any commands for Mr. Allen to stop.

23.     Hayes, rather than identifying himself as a police, begins yelling and cursing to the mentally ill Allen on the passenger side, where Shanell Arterberry was seated, while simultaneously Officer Salina was still communicating with Mr. Allen.

24.     Mr. Allen was following the commands of Officer Salina.

25.     When Mr. Allen attempted to provide his identification from his wallet to the Officers, officer Hayes within seconds became agitated and instructed him to stop moving, stop reaching and get his foot off the gas.

26.     Mr. Allen, however, was at a complete stop.

27.     Officer Hayes subsequently yelled to Allen to stop reaching and to get his hands out of his pocket.

28.     Mr. Allen's hand was touching a flat square shaped wallet.

29.      Before Mr. Allen could pull his hand out of his pocket; the self-described "impatient and quick-tempered" officer Hayes pointed his gun at Mr. Allen.

30.      Hayes pointed his Smith and Wesson service revolver and reached it inside the Ford F-150 Truck with the gun across the body of Shanell Arterberry and shot   Mr. Allen  five times at point- blank range.

31.     As Mr. Allen complied with Officer Salina's commands, Officer Justin T. Hayes

fired six gunshots, five of which struck Mr. Allen, despite Arterberry's pleading with Officer Hayes not to shoot.

32.     Mr. Allen was not given a verbal warning by Hayes that before the shooting he would be shot.

33.     Hayes did not verbally warn Mr. Allen that he would be tased or any less than deadly force would be applied to him.

34.      Hayes did not use any less than deadly force. Hayes had a taser on him.

35.     Mr. Allen never threatened the officers or posed an immediate threat of harm to the safety of Officer Salina,  Officer Hayes or Shantell Arterberry  or anyone.

36.     Mr. Allen never made a provocative gesture towards the Officers.

37.     Mr. Allen never pointed a gun or anything toward the officers.

38.     Officer Hayes had the time and opportunity to give a warning to Mr. Allen.

39.     The officer, however, provided no warning that granted Allen a sufficient time to respond.

40.      The encounter prior to the shooting lasted 23 seconds.

41.     Mr. Allen did not have a gun in his pocket and no gun was found on the scene by over seven officers at the scene, including:  Diego A. Morelli, Jeffrey R. Sneed, Jason Zimmerman, Jose G. Lopez, Alton M. Baker, Matthew Hurbin and Shirley Ellis arrived to help in the investigation and search the scene.

42.     Allen did not pull a gun from his pocket. Allen never shot anyone.

43.     After Officer Hayes fatally shot Mr. Allen five times at point-blank range, approximately five or more additional officers arrived at the scene.

44.      Life saving measures were not applied to Mr. Allen. No officer provided Cardiovascular Pulmonary Resuscitation (CPR) on Allen,  oxygen given, chest compressions etc. or any life support measures.

45.     Defendants Officer Hayes and Diego Morelli failed to provide medical aid to Mr. Allen after Hayes shot him five times and before the EMS arrived on the scene.

46.     The HPD Officers strategized and then approached the truck, after inflicting the five shots, with body cameras and voice recorders in a tactical stance with over five rifles pointed at the injured Mr. Allen on the passenger side and then to the driver side.

47.     One officer, Alton Baker, broke the window of Allen's Ford F-150 Truck with the butt of his rifle and another Defendant, officer Diego Morelli dragged Mr. Allen forcibly from the Ford F-150 Truck to the street (after the five gunshots)  and handcuffed him.

48.     The force from being dragged caused Mr. Allen to suffer contusions on his nose, forehead and multiple abrasions of the face with a one-inch laceration of the chin.

49.     A thorough search of Mr. Allen's pockets and of the Ford F-150 Truck front

and back by about seven officers revealed no weapon.

50.     A blue cellphone and a blood smeared black wallet with the American Flag was found on Mr. Allen's person.

51.     And several officers observed Mr. Allen was still breathing. Emergency Medical service was called over six  minutes after the shooting.

52.     Mr. Allen was fatally wounded and continued to not pose a threat to Hayes, Salina or anyone present.

53.     After the five gunshot wounds he lost control over the truck and lunged forward slammed into a tree.

54.     Mr. Allen died at the scene as a result of his injuries from the five gunshot.

55.     Mr. Allen was unarmed.

56.     About seven Police officers did not locate a firearm on Mr. Allen's person or in the Ford F-150 Truck.

57.     Officer Alton Baker who arrived at the scene was unable to see any weapons

58.     Officer Matthew J. Hurban noted that he observed the suspect's hands  to be clear of any weapons and his hands to be on his lap.

59.     The truck was also cleared of any weapons by the remaining officers on the scene.

60.     Police did, however, find Mr. Allen's black wallet. Officers Justin Hayes and

Tyler Salinas, M. Arroyo and April Palatino lied about what happened in the November 4, 2015 shooting of Mr. Allen and fabricated evidence.

61.     Shanell Arterberry was handcuffed and taken into police custody.

62.     After being released from police custody Arterberry stated Mr. Allen neither had a gun nor pulled one on the police.

63.     The City of Houston awarded Justin T. Hayes a citation on August 23, 2016 for the shooting of Mr. Allen.

64.     The City of Houston promoted Justin T. Hayes to Sargent after the shooting of Mr. Allen.

65.     On November 4, 2015, Defendant Justin Hayes was a full-time patrol officer for the Houston Police Department assigned to work the SWAT and Gang Task Force.

66.     That evening, Defendant Hayes was working with Tyler Salina on a public street in Houston's Third ward area at the Drew Street and Nettleton as officers with approval from the Houston Police Department.

67.     To that end, Defendant Hayes was wearing his Department-issued uniform, wearing an HPD badge or insignia, armed with his service weapon and taser, and acting in full capacity as an Houston Police Department officer.

***Defendant Hayes shot the unarmed, non-threatening, Mr. John Allen within 23 seconds of the encounter***

68.     On the evening of the incident, Mr. Allen drove his car with a passenger Shanell Arterberry heading to McDonald's restaurant.

69.     Mr. Allen lived near Drew, and Nettleton, where he was registered as a mental health consumer.

70.     That evening, Mr. Allen was wearing tight-fitting corduroy pants, flip-flop sandals, and a sweatshirt.

71.     Mr. Allen was well known in his neighborhood by HPD officers, he was designated in the Houston Police database as a mental health consumer.

72.     Mr. Allen was completely unarmed when he was confronted by Salina and Hayes.

73.     Mr. Allen was not breaking any laws or engaged in any unlawful conduct.

74.     Mr. Allen had a right to drive on Drew street and to do so without being detained, discriminated against or profiled on the basis of his mental illness or his race.

75.     November 4, 2015, Defendant Hayes worked to serve as law enforcement in the third ward area. Defendant, Hayes worked in such capacity on November 4, 2015.

76.     Mr. Allen was driving his truck with a female passenger.

77.     Mr. Allen was not engaged in any unlawful behavior.

78.     The relaxed passenger, Shanell Arterberry, with her leg extended on the dash of the truck.

79.     At the time that this incident began, Mr. Allen had a right to drive his truck without being confronted by police because he was not committing any crimes, and there was no reasonable suspicion to believe he had committed any crimes or to stop and detain him for any reason.

80.     Nonetheless, and based in part because of Mr. Allen's race and mental illness, Defendant Hayes unlawfully engaged Mr. Allen and unlawfully detained him.

81.     He was racially profiled by Officer Hayes.

82.     Mr. Allen was not told the purpose of the traffic stop.

83.     Tyler Salina and Officer Hayes approached Mr. Allen with guns pointed.

84.      Salina, as driver of the police squad car, approached the driver's side and took the lead in the traffic stop.

85.      He began giving Allen routine commands at a traffic stop.

86.     During this time, is when Mr. Allen was obeying and complying with Tyler Salina's commands by reaching for his wallet in his right front pocket.

87.     At the same time Salina was making his commands, and before Mr. Allen could pull his flat square-shaped wallet out of his pocket with his fingers, Justin Hayes was speaking to Mr. Allen in a harsh, loud tone using cursive language.

88.     The mentally ill Mr. Allen was nervous due to the tone, manner, yelling and agitated communications by Hayes as Mr. Allen was following the commands of Tyler

Salina.

89.    Hayes misidentified Mr. Allen's mental illness as unlawful conduct and went further to allege an act of violence had occurred when no act happened.

90.    Mr. Allen did not make an overt act with a gun toward the officer.

91.    Mr. Allen did not make an overt act with a knife toward the officer.

92.    Mr. Allen did not make an overt act with any weapon toward the officers.

93.    Hayes was unable to identify Mr. Allen's mental illness, due to lack of or poor training by HPD.

94.    Hayes did not employ any crisis intervention or de-escalation techniques during the traffic stop; due to lack or poor training in de-escalation and crisis intervention.

95.    Hayes did not call a crisis intervention, hostage negotiator or someone to de-escalate the traffic stop.

96.    During this time, when Mr. Allen was complying with Sgt. Tyler Salina' commands by placing his hand in his pocket and pulling his wallet; Justin Hayes shouted to Mr. Allen to stop reaching and get your hand out of your pocket.

97.    In Mr. Allen's last words he stated: "here is my wallet".

98.    Justin Hayes knew Mr. Allen was not posing any harm to him or others. Justin Hayes chose to give Mr. Allen a death sentence.

99.    In twenty-three seconds of the encounter and before Mr. Allen could remove

his fingers from the square shaped flat object, Justin Hayes pointed his service issued weapon.

100.    The passenger, Shanell Arterberry stated: "don't shoot".

101.    Without regard for Arterberry, Justin Hayes leaned into the Ford F-150 Truck and pointed his gun at Mr. John Allen while they were only inches apart and fired six gunshots with five shots landing at point blank range on Mr. Allen's person.

102.    Mr. Allen was sitting at a ninety-degree angle facing the steering wheel.

103.    The first gunshot wound violently struck Mr. Allen's breast, the second gunshot hit his abdomen and chest, the third gunshot wound was to his abdomen and the fourth gunshot wound struck his right elbow region and the fifth gunshot struck his left hand. Striking the back of Mr. Allen's right elbow, his chest, three times in his abdomen and his left hand with the use of unreasonable force.

104.    Following the impact from the gunshots, as Mr. Allen's body turned an involuntary reflex causing the vehicle to move and strike a tree.

105.    During the unlawful detention, and seizure, Justin Hayes used unconstitutional force against Mr. Allen, by firing six shots for an unarmed, non-dangerous person who posed no threat to Hayes, others and the passenger.

106.    Defendant Hayes used excessive deadly force (six gunshots) against Mr. Allen, causing five gunshot injuries all over his body.

107.   Shanell Arterberry was  commanded to lay down on the street.

108.   She was then handcuffed and moved to the back seat of the unmarked officers car.

109.   The report of the shooting was made to dispatch.

110.   Knowing that Mr. Allen needed medical attention, as stated in the Internal Affairs report; the dispatching officer requested a minute after the shooting for a vehicle license plate check first, not EMS.

111.   As an afterthought, the Emergency Medical Service was called over six minutes after the shooting.

112.   Mr. Allen was suffering conscious pain and suffering.

113.   EMS arrived over ten minutes later.

114.   Officer Tyler Salina in closest proximity to Mr. Allen on the driver side and the lead at the traffic stop did not fire his gun or taser.

115.   A reasonable officer would not have shot unarmed Mr. Allen for at best was a minor traffic offense.

116.   But it was really a pretextual traffic stop.

117.   A reasonable officer would not have felt threatened by Mr. Allen's behavior of complying with Tyler Salina's command by attempting to produce his identification from his wallet to the officer.

### *Mr. John Allen Died from Defendant Justin Hayes's Gunshots Wound*

118.   In the wake of this unjustified shooting, Mr. Allen did not die immediately.

119.   In these moments, Mr. Allen experienced unspeakable pain due to the five gunshot wounds to his chest, elbow, hand and elbow.

120.   He was moaning  from the conscious pain and suffering.

121.   Instead-adding insult to fatal injury-Defendant Hayes handcuffed Mr. Allen as he lay dying, writhing in pain, on the ground next to his wallet and cell phone.

122.    He was left to die.

123.   Mr. John Allen died on the street in his blood from the five gunshot wounds to his abdomen, chest area, in the elbow area.

124.   Mr. Allen suffered his injuries at the hands of defendant Justin Hayes and Diego Morelli.

125.   The cause of Mr. John Allen's death was the five gunshot wounds.

126.   City of Houston HPD officials has established a custom of condoning lethal use of force by ruling all intentional shootings to be justified - even when an officer's statements conflict with other evidence or independent witness accounts.

127.   The City's refusal to supervise its officers' use of force amounts to deliberate indifference.

128.   For example, HPD officer working for an apartment complex was notified of a

20

loud music complaint in the parking lot.

129.   He made contact with an intoxicated individual playing the music, the individual fled the scene and was later found sustained shrapnel-type injury. He was not disciplined since his words were taken as true although in conflict with other accounts of the event resulting in a civilian's death. He had committed no violent act and no weapon was actually seen or recovered. The City found the incident justified.

130.   HPD officers, for example, working off-duty capacity as courtesy officers for apartment complex, observed an individual breaking into the officer's personal vehicle. He shot the suspect for breaking into his vehicle. He was not disciplined since his words were taken as true although in conflict with other accounts of the event resulting in a civilians death.

131.   HPD officers, for example, observed a crowd disturbance in the parking lot. When the officer approached crowd to break up the disturbance, officers claimed to observed individual threatened a victim with a shotgun. Despite conflicting accounts that there was no threat. The City found the incident justified.

132.   HPD officer, for example, claimed to observed an individual break into vehicles while disposing of his trash at his apartment complex. He was not disciplined since his words were taken as true although in conflict with other accounts of the event. The City found the incident justified.

133.   HPD officer, for example, went outside and observed his vehicle being burglarized; he shot the suspect, but there was no threat of violence. He was not disciplined since his words were taken as true although in conflict with other accounts of the event resulting in a civilian death.

134.   An HPD officer, for example, was visiting family in Arlington, Texas when he claimed he observed his brother being assaulted by several men outside his parents' house. He was not disciplined since his words were taken as true although in conflict with other accounts of the event resulting in a civilian death.

135.   HPD shooting investigations are cursory investigations designed to cover up any officer misconduct.

136.   An HPD officer, for example, working off-duty courtesy officer for an apartment complex, was exiting his apartment to throw his trash away and observed a domestic disturbance in progress. He was not disciplined since his words were taken as true although in conflict with other accounts of the event resulting in a civilian death.

137.   From 2006-2015, HPD policy and practice did not allow interviews of an officer-involved in a police shooting by the Internal Affairs Division.

***Defendant, City of Houston, Palatino, Arroyo, and Hayes Attempted to "Cover-Up" The Unlawful Shooting of Mr. Allen***

<u>**Planted Evidence**</u>

138.   After the shooting, Defendant Hayes falsely told authorities and investigators he shot Mr. John Allen because he pulled a white handle pistol and pointed it at him.

139.   It was only after Mr. Allen was fatally wounded that a gun was ever mentioned, and at no point prior to the shooting.

140.   Hayes did not mention to his partner on the scene about the presence of a gun in Mr. Allen's possession. Hayes did not tell Mr. Allen to drop the gun.

141.   Officers, media, investigators, and the "shoot team" remained together at the scene.

142.   The City of Houston and officers conspired to insulate Justin Hayes from liability with a fabricated narrative in which Justin Hayes was facing Mr. John Allen and Allen pointed his weapon at the officer, at which Hayes fired on Mr. Allen in defense.

143.   November 6, 2015, Defendant, HPD Crime scene unit officer April Palatino claimed to have found a revolver in the back seat, on top of comforters in plain sight.

144.   The discovery of the  alleged revolver came two days after Mr. Allen was killed, after crowds of people on the scene, including as many as seven officers, looked for the gun and cleared the vehicle and  Mr. Allen of weapons.  A weapon that was supposed to be in Mr. Allen's right pocket.

145.   Palatino acted on Justin Hayes fabricated statements to justify the five-gunshots to Mr. John Allen.

146.    November 26, 2015, M. Arroyo, HPD Crime Scene Investigator claimed to have found a weapon of an unknown type and he could see it in plain view.

147.    The discovery of the revolver on November 26, 2015, was *twenty-two days* after Mr. Allen was killed, November 4, 2015, and after crowds of people on the scene, including as many as seven officers, looked for the gun and cleared the vehicle of weapons.

148.    The white-handled gun was planted.

149.    Mr. Allen did not possess a gun nor did he pull a gun out of his pocket.

150.    Mr. Allen did not point or wield a gun at Hayes or anyone.

151.    Mr. Allen was not being aggressive or posed a threat of harm to anyone during the traffic stop.

152.    Shanell Arterberry[5] was detained and coerced into supporting Hayes fabricated statement and the only other witness to the shooting-John Allen-was dead.

153.    Shanell Arterberry after being released and free from police custody recanted and stated to the media that Mr. Allen did not have a gun or pull a gun on the officer.

154.    A few days later Arterberry was retaliated against and arrested by Houston Police for warrants that existed at the time they released her from providing the coerced statement that Mr. Allen had a gun.

---

[5] After she was released from police custody Shanell Arterberry recanted and appeared on televisions and stated that John Allen did not have a gun.

155.   Defendant Hayes' account to authorities is inconsistent with the evidence at the scene and the autopsy report prepared by the Harris County Coroner.

156.   Specifically, the autopsy report revealed a number of injuries ( three gunshots to the abdomen and chest, elbow, and hand) Mr. Allen suffered and sustained during his encounter with Defendant Hayes that are at odds with the version of events Defendant Hayes provided to investigators after the shooting.

***The City of Houston Failed to Discipline Hayes for the shooting, or untruthfulness surrounding the events involving Mr. Allen's death.***

157.   Despite all of the inconsistencies and implausible versions of events provided by Defendant Hayes, his employer--the City of Houston-failed to discipline Defendant Hayes in any meaningful way.

158.   Indeed, the City of Houston did not end Defendant employment in the wake of the shooting.

159.   Instead, records indicate that Defendant Hayes was listed as a worker after the shooting and was promoted to a Sergeant.

160.   He was not disciplined or fired by the City of Houston, for killing  Mr. Allen.

161.   Likewise, following the shooting (though after a short stint on administrative leave) Defendant Hayes returned to full duty for the Department.

162.   Defendant Hayes was not, and has not been, disciplined by HPD for killing Mr. Allen.

163.    The City of Houston did not require Hayes to stop serving as a law enforcement

officer in the third ward area after the shooting either.

### The City of Houston Awarded Hayes for the Shooting

164.    Justin Hayes was awarded a certificate by the City of Houston for the shooting

of Mr. John Allen during the traffic stop. The Certificate was awarded to Hayes based

on unsupported facts on August 23, 2016.

### The City of Houston Ratified and condone the conduct and Promotes Hayes to Sargent

165.    Justin Hayes after being awarded a certificate for the shooting of Mr. Allen was

promoted. Hayes was promoted to Sargent at the Houston Police Department.

### The City of Houston Failed to Train its Officers not to Use Deadly Force in Non-Deadly Circumstances.

166.    The City of Houston Trains its Officers to escalate the use of force rather than

De-escalate interactions with Mentally Ill Citizens.

167.    The officer defendants acted under color of law.

168.    The acts of the officer defendants deprived Mr. Allen and Plaintiffs of their

particular rights under the United States Constitution.

169.    The training policies of Defendant City were not adequate to train its police

officers to handle the usual and recurring situations with which they must deal,

including with regard to the use of non-deadly force, communicating with the mentally ill, crisis intervention training during interactions that require non-deadly force.

170.   Defendant City of Houston was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately, including with regard to use of non-deadly force and communicating with the mentally ill.

171.   The failure of Defendant City to provide adequate training caused the deprivation of Plaintiff's rights by the Officer defendant; that is, the defendants; failure to train is so closely related to the deprivation of Mr. Allen rights and is the moving force that caused the ultimate injury, Mr. Allen's death.

172.   By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of life, loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Allen.

173.   The aforementioned acts and omissions also caused Mr. Allen's conscious pain and suffering, loss of enjoyment of life, and death.


### CLAIMS:

### FIRST CLAIM FOR RELIEF
### Unreasonable Search and Seizure-Detention and Arrest-42 U.S.C.§ 1983
### Against Justin Hayes and Diego Morelli

174.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

175.    There was no reasonable suspicion and certainly not probable cause to believe that Mr. Allen had committed any crimes or to stop him for any reason or to arrest Mr. Allen.

176.    Mr. Allen was not a fleeing felon, had not committed a criminal offense, exhibited any aggressive behavior and posed no threat of harm to anyone.

177.    The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. John Allen's constitutional rights.

<u>**SECOND CLAIM FOR RELIEF**</u>
<u>**Unreasonable Search and Seizure-Excessive Deadly Force-42 U.S. C. § 1983**</u>
<u>**Against Justin  Thomas Hayes**</u>

178.    Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

179.    Defendant Hayes used unreasonable force against Mr. Allen when he fired six shots at him and landed five on Hayes chest, abdomen, elbow, and hand. Because of Defendant  Hayes' unreasonable force, Plaintiff was harmed and ultimately died.

180.    Defendant Hayes's action of shooting Mr. Allen five times at point-blank range during the traffic stop violated Mr. Allen's constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution.

181.    The misconduct described in this claim shooting an unarmed, Mr. Allen five

times after twenty-three seconds during a minor traffic stop for a misdemeanor was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

182.    Mr. Allen was not armed, posed no immediate threat to the safety of the officers or the public, he did not resist arrest, since he was not being investigated for any crime other than a traffic violation at most, nor was his passenger, he was not dangerous and exigent circumstances existed at the time of the stop to and he was non-resistant.

183.    Mr. Allen was an unarmed citizen. In addition, the misconduct and excessive force described in this claim "shocks the conscience".

## THIRD CLAIM FOR RELIEF
## Unreasonable Search and Seizure-Denial of Medical Care-42 U.S.C. §1983
## Against Justin Hayes and Diego Morelli

184.    Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

185.    After Mr. Allen was shot five times; his Ford F-150 truck struck a tree as he was bleeding, moaning, groaning from pain, and in obvious and critical need of emergency medical care and treatment.

186.    However, rather than treating Mr. Allen immediately or calling for medical personnel or EMS to treat his injuries that resulted from the gunshot wounds Defendant, Officer Diego Morelli used unreasonable force and drugged Mr. Allen

from of his Ford F-150 truck onto the paved street and handcuffed him, as officers, including Hayes, stood by and allowed Diego Morelli to engage in the unreasonable use of force.

187.   After shooting him and dragging him from the truck, Mr. Allen was thrown on his backside and handcuffed, pursuant to city of Houston Policy.

188.   The officer defendants, Hayes, and Morelli did not provide life- saving measures or timely summon medical care or permit medical personnel to treat Mr. Allen.

189.   The denial and delay of medical care to Mr. Allen caused  Mr. Allen extreme physical and emotional pain and suffering and was a contributing cause of  Mr. Allen's death.

190.   The denial of medical care by the officers, Hayes and Morelli, deprived  Mr. Allen the right to be secure in his person against unreasonable searches and seizures as guaranteed to  Mr. Allen under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

191.   Mr. Allen was frightened, suffered conscious pain and suffering, great physical pain and emotional distress up to the time of his death, and also suffered loss of enjoyment of life, loss of life, and loss of earning capacity.

192.   The Officers, Hayes and Morelli knew that failure to provide timely medical treatment to Mr. Allen could result in further significant injury or the unnecessary and

wanton infliction of pain, but disregarded that serious medical need, causing Mr. Allen great bodily harm and death.

193.   The conduct of the officer defendants, Hayes and Morelli, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Allen and therefore warrants the imposition of exemplary and punitive damages as to the officer defendants.

194.   As a result of their misconduct, the officer defendants, Hayes and Morelli, are liable for  Mr. Allen's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

**FOURTH CLAIM FOR RELIEF**
**Due Process-Procedural-42 U.S.C. §1983**
**Against City of Houston, Justin Hayes and Diego Morelli**

195.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

196.   John Allen faced a serious medical need.

197.   Defendant Hayes knew of that medical need and disregarded it; and the acts of Defendant Hayes caused harm to Mr. Allen.

198.   Shanell Arterberry was taken into police custody after witnessing the traumatic shooting of Mr. John Allen sitting next to her in the Truck.

199.   Arterberry was transported to HPD and held overnight for over hours and was subjected to custodial interrogation and coercive investigative conduct.

200.   She was deprived of freedom of movement.

201.   Shanell  Arteberry knew she was not free to leave.

202.   She involuntarily gave a statement under circumstances that overcame her will to speak. The purpose of the interrogation and questioning was to support the false narrative that Mr. John Allen pointed a gun at Officer Justin Hayes prior to being shot five times by Hayes.

203.   HPD did not ask and Shanell Arterberry did not make a knowing, intelligent, and voluntary waiver for the HPD.

204.   Fearful, Arterberry gave the HPD investigator what they wanted and was then finally released from police custody.

205.   She signed a statement that she did not write or more importantly agree with.

206.   After being released from police and free from police Arterberry recanted her story and stated the police shot that poor man, Mr. John Allen and he did not have a gun.

### FIFTH CLAIM FOR RELIEF
### Due Process-Interference with Familial Relationship-42 U.S.C. §1983
### Against City of Houston, Justin Hayes and Diego Morelli)

207.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

208.   Decedent, Mr. John Allen had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free

from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Mr. Allen's familial relationships.

209.   Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted interference in  John Allen, Jr., Lawon Allen's familial relationship with their father. And the interference in Martha Vaughan and Sherman Allen's relationship with their son, John Allen, Sr.

210.   The aforementioned actions of Officer Hayes, along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Allen and plaintiffs, and with the purpose to harm unrelated to any legitimate law enforcement objective.

211.   The officer defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with decedent, their father.

212.   As a direct and proximate cause of the acts of the Officer Defendants, Plaintiffs have suffered emotional distress, mental anguish, and pain.

213.   Plaintiffs have also been deprived of the life-long love, companionship, comfort,

support, guidance society, care, and sustenance of Mr. Allen,, and will continue to be so deprived for the remainder of their natural lives.

214.    The conduct of the officer defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Allen and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the Officer Defendants, either because they were integral participants or because they failed to intervene to prevent these violations.

215.    Plaintiffs seek wrongful death damages under this claim in their individual capacities and also seek survival damages for the violation of Mr. Allen's due process right. Plaintiffs also seek funeral and burial expenses and attorney's fees under this claim.

### SIXTH CLAIM FOR RELIEF
### Equal Protection-42 U.S.C. §1983
### Against City of Houston, Justin Hayes and Diego Morelli)

216.    Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

217.    In the manner specifically described in this complaint, Defendant Hayes violated Plaintiffs constitutional rights intentionally subjecting him to unlawful, unequal treatment on the basis of his race, black in violation of the Fourteenth Amendment of United States Constitution.

218.    Defendant Hayes' conduct created discriminatory effects by targeting Mr. Allen

for police action based on his race, black, and known mental illness, PTSD.

219.   The misconduct described was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Allen's constitutional rights.

### SEVENTH CLAIM FOR RELIEF
### Failure to Provide Medical Care--Eighth Amendment-42 U.S.C. §1983
### Against City of Houston, Justin Hayes and Diego Morelli

220.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

221.   As described in the preceding paragraphs, Defendant Hayes' actions toward Mr. Allen violated Allen's constitutional rights, including but not limited to the Fourth and Fourteenth Amendments of the United States Constitution due to his failure to render any medical care to Mr. Allen after having detained him by shooting him five times for unknown reasons. Failing to perform any life-saving measures.

222.   The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Allen's constitutional rights.

### EIGHTH CLAIM FOR RELIEF
### Wrongful Death- 42 U.S.C. §1983 and Tex. CPRC §71.002- 71.021
### Against City of Houston, and Justin Hayes and Diego Morelli)

223.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

224.   Defendant Haye's actions toward Mr. Allen violated Allen's constitutional rights and wrongfully caused the death of Mr. Allen, and without those actions, the death of Mr. Allen would not have occurred.

225.   Prior to his death, Mr. Allen suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot but before he died from the gunshot wounds Defendant Hayes inflicted upon him.

226.   Both Mr. John Allen Jr. and Lawon Allen suffered from pecuniary loss as a result of the wrongful death of Mr. Allen. Mr. Allen's mother, Martha Vaughan, and father, Sherman Allen, and Allen's sons, Lawon and John Allen, Jr. suffered loss of companionship and Mental anguish as a result of the wrongful death of Mr. Allen.

## NINTH CLAIM FOR RELIEF
### Survival Action-42 U.S.C. §1983 and Tex. Civ. Prac. Rem. Code §71.021) Against City of Houston, Justin Hayes and Diego Morelli

227.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

228.   Defendant Hayes 'actions toward Mr. Allen violated Allen's constitutional rights and wrongfully caused the death of Mr. Allen.

229.   Prior to his death, Mr. Allen suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot and before he died.

230.    246. Plaintiff, the Estate of John Allen, which includes both John Allen, Jr. and Lawon Allen, Martha Vaughan, and Sherman Allen has standing to assert this claim pursuant to Tex. Civ. Prac. & Rem. Code Section §71.0004(a)

### TENTH CLAIM FOR RELIEF
### Loss of Consortium
### Against City of Houston, Justin Hayes and Diego Morelli

231.    Plaintiffs adopt and incorporate by reference each and every factual allegation throughout the complaint as though fully set forth herein.

232.    Each individual, John Allen, Jr. Lawon Allen, Martha Vaughn, and Allen each assert a claim for loss of consortium based upon the action by Hayes, and Moreilli resulting in John Allen Sr. 's death.

### TWELFTH CLAIM FOR RELIEF
### Race discrimination, Conspiracy to Discriminate on Basis of Race

233.    Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

234.    In the manner described in this Complaint, Defendant Hayes targeted and racially profiled African American males, like Mr. Allen.

235.    In the five years leading up to the unlawful stop and subsequent shooting death of Mr. Allen, HPD officers stopped black drivers at a starkly higher rate than any other group. The objective data, compiled by the City of Houston itself, is powerful evidence

of race-conscious policing in Houston. Racial disparities persist in the moments that follow the initial stop, and serve to reinforce the strong inference of racial bias in policing.

236.   HPD's data supports that black drivers are stopped on account of their race, and no other reason.

237.   Both Defendant and City of Houston hiring of Hayes took overt acts in furtherance of an agreement to work at the Third Ward area in November 4, 2015, and in Defendant Hayes's decision to stop, detain and otherwise interact with African-American, Mr. Allen.

238.   In so doing, and having stopped Mr. Allen on the basis of his race, Defendant Hayes and City of Houston violated Mr. Allen's right to the full and equal benefit of all laws and proceeding for the security of persons and property as is enjoyed by white citizens who drive to a restaurant at night.

## THIRTEENTH CLAIM FOR RELIEF
## 42 U.S.C. §1983-Municipal Liability: *Monell* Against the City of Houston

239.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

240.   As described in the preceding paragraphs the misconduct described in was undertaken under the policy and practice of the City of Houston, such that Defendant

City of Houston is also liable, in that:

a.      As a matter of both policy and practice, the City of Houston encourages, and is thereby the moving force behind, the very type of misconduct at issue in the foregoing paragraphs by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

b.      As a matter of both policy and practice, the City of Houston facilitates the very type of misconduct at issue in paragraphs 1-137 by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Huston police officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, the City of Houston directly encouraging future uses of excessive deadly force, unlawful detention, failures to intervene, and race-based policing and discriminating against the mentally ill such as those Plaintiff complains of; Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Houston Police Department violate the constitutional right of individuals in a manner similar to that alleged by Mr. Allen in this complaint on a regular basis, yet the Houston Police Department investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

241.   As a result of the City of Houston's policies and practices, and the unjustified and unreasonable conduct of the Defendant Hayes, Plaintiff has suffered injuries, including severe emotional distress and ultimately death.

242.   The City of Houston has ratified each use of deadly force by its officers as demonstrated through its actions after the use of deadly force.

243.    Chiefs of Police McCelland and Acevedo, as the City of Houston, has ratified its officers' conduct in nearly every case of use of deadly force by its officers.

244.   Following the shooting, the first person with whom Hayes spoke was his attorney, besides the officers on the scene.

245.   After Defendant Hayes with his attorney, the Harris County District Attorney's Office formed a huddled circle called a "shoot team".

246.   Defendant Hayes and his attorney then joined the "shoot team" huddle, which included important members of the HPD and the HPD's homicide and crime scene units.

247.   Hayes did a "walk-through" of the crime scene. The walk-through consisted of Defendant Hayes's walking through the scene and explaining where certain things had happened.

248.   No gun was found during the walk-through.

249.   Later that same night, Defendant Hayes went to the HPD office and, with his attorney present, typed and signed a sworn statement of his encounter with Decedent. Following the shooting, the Internal Affairs Division ("IAD") conducted an investigation.

250.   As part of the investigation, Defendant Hayes was given forty-eight hours to answer a set of written questions.

251.   Defendant Hayes was never required to undergo a live interview regarding the incident.

252.   The IAD determined that Defendant Hayes's shooting of Decedent was "intentional" and "justified."

253.   No independent witnesses, including Aterberry, were interviewed by IAD.

254.   According to a police officer in the IAD, when the IAD investigates a shooting, the shootings are deemed either accidental or intentional, and either justified or not justified.

255.   Other types of use of force incidents have additional more nuanced classifications. A justified shooting means that the IAD has determined that the shooting met the criteria of the HPD policies and procedures.

256.   The IAD does not look at the history, if any, of complaints against an officer being investigated when determining whether a shooting was justified or not.

257.   The IAD investigation moves up the chain of command to the chief of police, who alone makes a final determination on whether or not discipline will be issued.

258.   Following shootings by an HPD officer, like in the present case, the officer is allowed to do a "walk-through" of the scene to explain what happened.

259.   The officer is accompanied by an attorney during the walk-through and the walk-through is unrecorded. The walk-through is a matter of unwritten custom as there are no written protocols or procedures regarding the walk- through.

260.   It is HPD's policy that the officer being investigated is not questioned until he has spoken with his attorney.

261.   The officer is never given a live interview. Rather, HPD practice from 2009-2015 was to give the officer forty-eight hours to answer written questions. The officer would generally answer the written questions in consultation with an attorney.

262.   However, HPD conducted live recorded interviews of a shooter when the shooter was a civilian.

263.   There were over 194 intentional police shootings of civilians from 2009-2015.

264.   Of the over 194 shootings, eighty-one were of unarmed civilians.

265.   IAD determined that all 194 intentional police shootings of civilians, including the eighty-one shootings of unarmed civilians, were justified.

266.   2/24/10: The Shooting of Steven Guidry. Mr. Guidry was shot in the neck during a traffic stop where the officer forcibly removed him from the car and then claimed he reached toward his waistband area, and where the officer claimed that in response to refusing to exit the car the officer claims that Mr. Guidry said "What are you going to do, shoot me?"

267.    5/25/10: The Shooting of Gene Horace. In another case involving the claim that the victim was reaching for a waistband, an officer shot an unarmed man in the back while he was running away. HPD found it justified based solely because the officer's claim that the man reached for his waistband and despite the fact that Mr. Horace denied it. Like the Coronado Shooting, the City found the shooting justified even though it sustained two other charges against the officer.

268.    10/30/10: The Shooting of Ricardo Salazar-Limon. Mr. Salazar-Limon was shot in the back by an HPD officer after a traffic stop where the officer claimed that Mr. Salazar-Limon was reaching for his waistband, while turning his body.

269.    2/9/11: The Coronado Shooting of the Ventura Brothers. In this instance, an officer who had been drinking at a bar and was legally intoxicated when he shot two unarmed citizens (killing one) after intervening in a situation outside of a bar.

270.    The officer there claimed that one of the citizens was reaching for his waistband, thereby justifying the shooting. The City found the shooting justified despite the fact that the officer was intoxicated and committed other policy violations in the incident, crediting his account over other witnesses.

271.    7/9/12: The Shooting of Rufino Lara. The City also justified the shooting by another officer of an unarmed man, Mr. Lara, for allegedly reaching for his waistband while he was walking away. Two witnesses at the scene in that case rebutted the

officer's contention that Mr. Lara was reaching into his waistband—one saying that his hands were on the wall. HPD did absolutely nothing to provide any response.

272.   9/24/2012: Shooting at an Unknown Suspect. Another unarmed man was shot at while running from the police after stealing food from a food truck because the man allegedly reached for his waistband. He had committed no violent act and no weapon was actually seen or recovered.. The City found the incident justified.

273.   12/12/14: The Shooting of Michael Walker. Mr. Walker was suspected of PCP use and had already been shot once after a traffic stop when he walked away from the officers, who claimed he was reaching in his jacket, after which Mr. Walker was shot again.

274.   A final policymaker, acting under the color of law, who had final policymaking authority concerning the acts of the officer defendants, ratified the acts of Officer Hayes and the bases for them. The final policymaker knew of and specifically approved of Officer Hayes and Officer Diego Morelli's acts.

**The final policymaker determined that the acts of the officer defendants were "within policy."**

275.   In November 2015 and prior, The HPD Chief of police had a Policy to review each and every use of deadly force, even if it involves shooting animals, and is responsible for determining whether discipline is warranted or not.

276.   The policymaker for HPD, the chief of police, has not found the discipline for the use of force by one of his officers in over 400 cases of use of deadly force since 2009.

277.   The city of Houston may be liable if its policymakers condone or otherwise adopt the creation of a custom by knowingly ratifying the illegal or unconstitutional actions of subordinate, non- policymaking employees.

278.   The use of force as justified by the Chief of police, absence of immediate danger, and the use of force by Hayes is not justified, because Mr. Allen did not point a weapon at Hayes or place Hayes or anyone else in threat of danger of harm.

279.   The officers engaging in unreasonable use of deadly force in HPD have not been disciplined, reprimanded, retrained, suspended or otherwise penalized in connection with Mr. Allen's death or the death of any others leading up to the death of Mr. Allen.

280.   By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Allen. The aforementioned acts and omission also caused Mr. Allen's pain and suffering, loss of enjoyment of life, and death.

## FIFTEENTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY-FAILURE TO TRAIN-42 U.S.C. §1983
## Against City of Houston

281.   Plaintiff adopts and incorporates by reference each and every factual allegation

throughout the complaint as though fully set forth herein.

282.    The officer defendants acted under the color of law.

283.    The acts of the officer defendants deprived Mr. Allen and Plaintiffs of their particular rights under the United States Constitution.

284.    The training policies of Defendant City were not adequate to train its police officers to handle the usual and recurring situations with which they must deal, including with regard to the use of force, de-escalation of the mentally ill, crisis intervention training, and racial profiling, rendering life-saving measures during police-involved shooting and implicit bias.

285.    Defendant City of Houston was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately, including with regard to use of force, rendering medical aid, and communicating with the mentally ill.

286.    The failure of Defendant City to provide adequate training caused the deprivation of Plaintiff's rights by the Officer defendant; that is, the defendants; failure to train is so closely related to the deprivation of Mr. Allen and the Plaintiffs' right as to be the moving force that caused the ultimate injury, Mr. Allen's death.

287.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Allen. The aforementioned acts and omissions also caused Mr. Allen's pain and suffering, loss of enjoyment of life, and death.

## SIXTEENTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY-42 U.S.C. §1983
## Against City of Houston

288.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

289.   The officer defendants acted pursuant either to an expressly adopted official policy or a longstanding practice or custom of the defendant, City of Houston.

290.   The officer defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Mr. Allen's death.

291.   Defendants City and the officer defendants, together with. other city policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

       i.     Using excessive force, including excessive deadly force and improperly restraining Mr. Allen;

      ii.     Providing inadequate training regarding the use of force, including with regard to the use of force continuum;

    iii.     Employing and retaining as police officers individuals such as the Defendants, Justin Hayes, April Palatino and Diego Morelli, whom Defendant City of Houston at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

    iv.     Inadequately supervising, training, controlling, assigning, and discipling City of Houston police officers, and other personnel, including the officer defendants, whom Defendant City knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

     v.     Maintaining grossly inadequate procedures for reporting,

supervising, investigating, reviewing, disciplining and controlling misconduct by City of Houston police officers;

vi.    Failing to adequately discipline City of Houston police officers for the above-referenced categories of misconduct, including "slaps on the wrist." discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

vii.    Announcing that unjustified uses of force are "within policy". Including

viii.    uses of force that were later determined in court to be unconstitutional;

ix.    Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

x.    Encouraging, accommodating, or facilitating a "blue code of silence:, "blue shield," "blue wall", "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

xi.    Maintaining a policy of inaction and an attitude of indifference towards soaring number of police misconduct with regards to the use of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of force against unarmed people. Here, the inaction of the police chief in the face of excessive force cases including  Officer Hayes resulted in a tacit de facto approval of Officer Hayes action. Further the City's chief's and department history of ignoring or refusing to take action demonstrate a pattern or practice.[6]

---

[6] *Pitrowski v. City of Houston*, 237 F. 3d 567, 578 (5th cir. 2001).

292.   The aforementioned unconstitutional customs, practices, and policies, in addition to the ratification of the deficient customs, practices, and policies, are evidenced by the number of prior cases involving the use of deadly force against an unarmed person by a police officer working for the City. When the injuries result from the execution of a governmental policy the acts here may be fair to be said to represent official policy.

293.   By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Allen. The aforementioned acts and omissions also caused Mr. Allen's pain and suffering, loss of enjoyment of life, and death.

294.   Defendants City and officers, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.

295.   Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Allen, Plaintiffs, and other individuals similarly situated.

296.   By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Officers Hayes and Officer Diego Morelli acted with

intentional, reckless, and callous disregard for the life of Mr. John Allen and for John Allen's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants City of Houston and Officer Hayes and Morelli were affirmatively linked to and were a significantly influential and moving force behind the injuries of Mr. John Allen and Plaintiffs.

### SEVENTEENTH CLAIM FOR RELIEF (42 U.S.C. §1983)
### JUDICIAL DECEPTION
**Against the City of Houston, Hayes, Morelli, Palatino and M. Arroyo**

297.    Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

298.    Claims for judicial deception under Section 1983 are generally used to challenge the validity of a warrant or other judicially issued instrument based on allegations that law enforcement agents submitted a false affidavit or report to the issuing judicial officer.[7]

299.    Here, The City of Houston and Justine Hayes falsely represented that Mr. Allen pointed a gun at him thereby putting him in imminent threat of harm when no gun was found on the scene.

300.    The City of Houston fabricated evidence against Plaintiff altering the captured body-worn camera footage presented to the court and to Plaintiffs. Defendants later

---

[7] *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)

represented that perhaps the altered video may be a video of a video and no explanation as to the reason the original video was not made available or filed with the court. Videos of the November 4, 2015 shooting of John Allen have been withheld by the City of Houston.

301.   Documentary evidence of the shooting of John Allen has been withheld by the City of Houston.

### EIGHTEENTH CLAIM FOR RELIEF (42 U.S.C. §1983)
**Fabrication, Falsifying Evidence and Spoliation PRESERVATION OF EVIDENCE/SPOLIATION NOTICE**
**Against The City of Houston, Justin Hayes, Diego Morelli, Palatino and M. Arroyo**

302.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

303.   The City of Houston altered and edited videos of the November 4, 2015 shooting for purposes of avoiding liability and accountability.

304.   The collection of the evidence and maintenance of the proper chain of custody for the evidence is questionable and the surveillance, body camera videos,  and audio of officers: Justin Hayes, Tyler Salinas, M. Arroyo,  Jeffery Sneed, Alton Baker, Diego Morelli, M. Hurban, J. Lopez, J. Zimmerman, D. Riggs,  S. Thorp,  B. Morley, R. Rivas and J. Guzman, Sgt. Ramos, J. Dominguez, M. Arroyo, and  C. Lamunyon have been withheld from the court and the Plaintiffs, the Allens.

305.   Defendants were required to preserve and maintain all evidence pertaining to

any claims or defenses related to the incident made the basis of this lawsuit, or the damages resulting therefrom. Failure to maintain such items shall constitute a "spoliation" of the evidence. Defendants acted within the scope of his employment with the City of Houston.

## TWENTIETH CLAIM FOR RELIEF
### False Arrest
### Against City of Houston, Justin Hayes and  Diego Morelli

306.   Plaintiff adopts and incorporates by reference each and every factual allegations throughout the complaint as though fully set forth herein.

307.   The Officers Hayes and Morelli, while working as police officers for the City of Houston Police Department and acting with the course and scope of their duties, acted intentionally to restrain Mr. Allen into an area within his control.  Defendants Hayes and Morelli acted without lawful authority and without the Plaintiffs' consent; Defendant Hayes' act resulted in the direct restraint of Mr. Allen's liberty or freedom of movement by actual force inflicted on Mr. Allen. Plaintiff was aware of the restraint.

308.   Officers Hayes and Morelli detained Mr. Allen without reasonable suspicion and arrested him without probable cause for an appreciable amount of time.

309.   Mr. Allen did not knowingly or voluntarily consent.

310.   The conduct of the officer defendants was a substantial factor in causing harm to Mr. Allen.

311.   Each of the Officer defendants integrally participated or failed to intervene in

the detention and arrest.

312.   As a result of their misconduct, the Officers Morelli and Hayes are liable for Mr. Allen's injuries, either because they were integral participants in the detention and arrest, or because they failed to intervene to prevent it. The conduct of Officer Hayes and Morelli was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Allen, entitling Plaintiffs to an award of exemplary and punitive damages.

313.   As a result of their misconduct, the officer defendants are liable for Mr. Allen's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

314.   Plaintiffs bring this claim individually and as heirs and administrator of the Estate, and seek both survival and wrongful death damages under this claim. Plaintiffs also seek funeral and burial expenses and attorney's fees under this claim.

<u>**TWENTY-ONE CLAIM FOR RELIEF**</u>
<u>**State Law-Battery CPRC Sec. 101.057**</u>
<u>**Against Justin Hayes and Diego Morelli**</u>

315.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

316.   Morelli knowingly and without legal justification caused bodily injury to Mr. Allen when he dragged Mr. Allen from his Ford F-150 Truck to the concrete street.

317.   As a result of the actions of the officer defendant, Mr. Allen suffered severe pain and suffering and ultimately died from his injuries. Hayes knowingly and without legal justification caused bodily injury to Mr. Allen when he fatally shot him five times.

318.   Causing Mr. Allen to suffer pain and suffering and ultimately died from his multiple gunshot wounds.

319.   As a result of their misconduct, each of the officer Defendants is liable for Mr. Allen's injuries.

320.   As a direct and proximate result of the conduct of the officer defendants as alleged above, Mr. Allen sustained injuries and died from his injuries.

### ELEVENTH CLAIM FOR RELIEF
### Mental Illness discrimination, Americans With Disability Act Act, as Amended Against City of Houston, Hayes, and Morelli

321.   Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

322.    Allen was detained due to Hayes's misperception of the effects of his mental illness as criminal activity, namely passively failing to comply with a lawful order.

323.    In addition, they failed to reasonably accommodate Allen's known or perceived disability in the course of investigation and detention, causing him to suffer greater injury due to the belief that he had to defend himself.

324.    Allen was shot by Defendant Hayes.

325.    HPD records are clear that Mr. Allen was a known mental health consumer when Hayes stopped Allen near his home in Allen's neighborhood. Rather than communicating in a manner that is necessary for dealing with the mentally ill. Summoning the assistance of a crisis intervention officer;  Hayes spoke to Allen in a loud, aggressive tone or in a manner to de-escalate a nervous individual suffering from Post Traumatic Stress Disorder. 315.  While commands were being made by officer Tyler Salina in a calm manner. The self-described impatient and quick-tempered Officer Hayes seized Mr. Allen by shooting him. He chose to ignore Mr. Allen's well documented mental consumer status with the Houston Police Department.

## IV. PLAINTIFFS' DAMAGES

326.   The Defendants' actions imposed substantial harm on Mr. Allen during the period of time after which he was shot by Defendant Hayes until Mr. Allen ultimately passed away. The amount of excruciating pain Mr. Allen felt during those final moments is unquantifiable.

327.   In addition, Mr. Allen, a 58-year old veteran, and father of two sons, lost the opportunity to live the rest of his life. Mr. Allen lost the opportunity to raise his sons and see them marry; the opportunity to earn wages based on his experience; and the ability to see his son graduate from college. These damages are tragic and substantial.

328.   Likewise, Mr. Allen's sons, John Allen, Jr. and Lawon Allen have suffered an immeasurable loss: growing up as young men without a father. Their upbringing will

now be forever altered by the difficulties that they and his grandfather and grandmother will face as a result of his father's death.

329.    The Estate of John Allen, Martha Vaughan, and Sherman Allen, Mr. Allen's mother, and Father, have experienced monumental loss as well. Mrs.Vaughan and Mr. Sherman Allen were close with their son and will never again have this relationship nor the opportunity to see Mr. Allen grow.

330.    In addition, the Estate of John Allen, Martha Vaughan, and Sherman Allen has been further harmed by the actions subsequent to the shooting --both by the failure of any authorities to bring any accountability to Defendant Justin Thomas Hayes but also by the substantial life changes that they have had to endure in assisting with the guidance for Lawon Allen and John Allen, Jr.

331.    Plaintiffs bring their claim as heirs and administrator to Mr. Allen's estate seeks both survival and wrongful death damages for the violation of Mr. Allen's rights.

332.    Plaintiffs also seek funeral and burial expenses under this claim.

333.    Plaintiff is entitled to recover reasonable attorney's fees and costs to enforce his Constitutional rights under 42 U.S. 1983 and 1988 from defendants.

334.    Plaintiffs John Allen, Jr., Estate of John Allen and Lawon Allen request entry of judgment in their favor and against Defendants City of Houston, Justin Hayes, April Palatino, Diego Morelli and M. Arroyo  inclusive, as follows:

A.      For compensatory damages, including both survival damages and wrongful

death damages under federal and state law, in the amount proven at trial;

B.      For fright, loss of life, loss of liberty, funeral and burial expenses and loss of companionship and financial support;

C.      For punitive damages against the individual defendants in an amount to be proven at trial; For loss of consortium;

D.      For prejudgment and post-judgment interest;

E.      For reasonable attorney's fees, including litigation expenses;

F.      For costs of suit ;

G.      For emotional distress up to the time of his death;

H.      For loss of enjoyment of life;

I.      For deprivation of physical liberty, loss of the right to bodily integrity, security and loss of life;

J.      For pre-death pain and suffering and loss of earning capacity; and

K.      For such further other relief as the Court may deem just, proper and appropriate.

*Respectfully submitted,*

*By: /s/ Debra V. Jennings*
Debra V. Jennings
*State Bar No. 10631850*
 *Federal Bar ID: 14373*
*Law Office of Debra V. Jennings*
*6140 HWY 6, # 269*
*Missouri City, Texas 77459*
*Telephone (832) 904-4666*
*Facsimile: (1832)442-3700*
 *Email: lawyerdvj@gmail.com*

57

LEAD ATTORNEYS FOR PLAINTIFFS

THE LEWIS LAW GROUP, PLLC.

/s/U. A. Lewis

U. A. Lewis

*State Bar No. 24076511 Federal Bar No. 1645666*

*P. O. Box 27353 Houston, TX 7722*

*Telephone: (713)570-6555*

*Facsimile: (713) 581-1017*

ATTORNEY FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served

DC/ ECF to all counsel on this the 31st day of August 2020

*<u>/s/ Debra V. Jennings</u>*

Debra V. Jennings