United States District Court
Southern District of Texas
**ENTERED**
April 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| John Allen, Jr. et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-18-171 |
| | § | |
| Justin Thomas Hayes, | § | |
| *Defendant.* | § | |

### MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 152. Many motions are pending before the court: Defendant's Motion for Summary Judgment, ECF No. 333; Plaintiffs' Motion for Summary Judgment, ECF No. 335; Plaintiffs' Motion to Quash, ECF No. 317; Plaintiffs' Motion for Due Process, ECF No. 324; Plaintiffs' Motion for Reconsideration, ECF No. 325; Defendant's Motion to Strike, ECF No. 332; and Plaintiffs' Motion to Strike, ECF No. 336.

The court recommends that Defendant's Motion for Summary Judgment, ECF No. 333, be **GRANTED in part and DENIED in part** and Plaintiffs' Motion for Summary Judgment, ECF No. 335, be **DENIED**. Plaintiffs' Motion to Quash, ECF No. 317, is **DENIED**; Plaintiffs' Motion for Due Process, ECF No. 324, is **DENIED as MOOT**; Plaintiffs' Motion for Reconsideration, ECF No. 325, is **DENIED as MOOT**; Defendant's Motion to Strike, ECF No. 332, is **DENIED** without prejudice; and Plaintiffs' Motion to Strike, ECF No. 336, is **DENIED as MOOT**.

### 1. Background

This case stems from the fatal shooting of John Allen, Sr. (Allen). *Allen v. Hays*, 65 F.4th 736, 741 (5th Cir. 2023) (*Allen II*).

On November 4, 2015, Officer Justin Hayes fatally shot Allen. Plaintiffs sued multiple defendants under 42 U.S.C. § 1983 and the Texas wrongful death statute, alleging many claims related to the violation of Allen's constitutional rights. *Id.* at 743–52. The remaining claims are against Officer Hayes for excessive force, unlawful arrest, and denial of medical care in violation of Allen's constitutional rights. *Id.* at 752.

Before addressing the events of November 4, 2015, the court first provides a brief summary of the lengthy procedural history of this case. Plaintiffs filed suit in Harris County in 2017, and Defendant Justin Hayes removed the case to federal court in January 2018. ECF No. 1. Since then, the Fifth Circuit has ruled on this case and remanded it twice. *Allen v. Hays*, 812 F. App'x 185 (5th Cir. 2020) (*Allen I*); *Allen II*, 65 F.4th at 741.

In 2020, the Fifth Circuit found that the district court violated procedural safeguards when it converted the motion to dismiss into a motion for summary judgment. *Allen I*, 812 F. App'x at 192–93. The Circuit affirmed in part as to the dismissal of one defendant and vacated and remanded the case as to the remaining defendants. *Id.* at 193–94.

In 2023, the Fifth Circuit considered this case at the motion to dismiss stage, affirmed dismissal as to several claims, and reversed and remanded the dismissal of Plaintiffs' claims for excessive force, unlawful arrest, and denial of medical care against Hayes. *Allen II*, 65 F.4th at 752. Hayes is the only remaining defendant.

Upon remand in 2023, the case was reassigned to a new district judge. The case was referred to the undersigned in October 2023. ECF No. 152. Since that time, the court has ruled on many discovery disputes. *See* ECF No. 293 (ruling on a discovery dispute and stating that "[t]he court has held many hearings in this case, has extended the discovery deadline many times, and has ordered

the parties repeatedly to fully answer all outstanding discovery requests . . ."). The court ordered that all depositions be completed by September 30, 2025. *Id.* Currently pending before the court are both parties' summary judgment motions.

The court turns to the relevant events of November 4, 2015, which are recorded in multiple videos from the officers' body-worn cameras (bodycam).[1] The parties both rely on the video evidence and do not object to its authenticity.

Officer Hayes and his partner, Officer Salina, both stated in sworn statements that, at approximately 12:40 AM on November 4, 2025, they initiated a traffic stop after observing a red pickup truck driving erratically with a defective brake light and a rear license plate bulb hanging down toward the bumper. ECF No. 334-10 at 3, 7.

The footage from Hayes and Salina's bodycams begins when the Officers approached the vehicle. Portions of the video are very dark. Hayes approached the passenger side of the vehicle and used his flashlight to illuminate the truck. Hayes Bodycam, ECF No. 334-3 at 0:00-0:12.[2] Allen was in the driver's seat and Shantell Arterberry was in the front passenger seat. The passenger-side window was down. Although it is difficult to discern, Allen appeared to ask "Who is it?" and stated that he would retrieve his wallet. *Id.* at 0:03–0:12. Hayes yelled in response "Hey! Stop moving! Get your foot off the f***ing gas!" *Id.* at 0:12–0:18. The interaction proceeds as follows.

---

[1] Where there is "video and audio recording of the event, we are not required to accept factual allegations that are 'blatantly contradicted by the record.'" *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[2] To cite specific portions of the recordings, the court includes the minutes and seconds from the time stamp on the video. For example, ECF No. 334-3 at 0:00-0:12, refers to the first twelve seconds of Hayes's bodycam video.

3

Allen: I ain't moving, I'm getting my wallet. I'm getting my wallet.

Hayes: What do you mean, "Who is it?"

Allen: I'm getting my wallet.

Hayes: You better stop pulling—reaching in your pocket.

Allen: I'm not reaching in my pocket.

Hayes: Yeah, I'm looking at you reaching in your pocket. Stop reaching!

Allen: I'm getting my wallet!

Hayes: Stop reaching! That's not a wallet! Stop reaching!

Allen: [indistinguishable]

Hayes: [yelling] Stop reaching!

*Id.* at 0:14–0:33.

During the exchange, the video shows Allen retrieving an object from his right pocket.



ECF No. 334-3 at 00:25.

It is difficult to discern from the video what the item was. The video shows, and the parties appear to agree, that *something* was in Allen's pocket. *See* ECF No. 343 at 11 (Plaintiffs argue that "Mr. Allen's hand briefly contacts a flat, square-shaped object, not a firearm, and there is never a white handle visible."). The image included above is the clearest view of the item captured on the video.

Immediately after Hayes yelled "stop reaching!" the final time, Hayes fired his weapon at Allen through the open passenger window. ECF No. 334-3 at 0:33–0:36. The bodycam videos do not clearly show Allen's pocket at the time Hayes shot. As the court discusses in more detail below, a silver revolver with a white hand grip, matching Hayes's description of the weapon, was found in the rear seat area of the vehicle. ECF No. 334-18 at 6, 10.

The parties dispute how many times Hayes shot his weapon. The court assumes in Plaintiffs' favor that there is a fact dispute as to this issue. Plaintiffs argue that six "spikes" in the audio from the bodycam footage indicate that Hayes fired his gun six times. ECF No. 343 at 2, 10 n.1, 18; ECF No. 335 at 14; ECF No. 348 at 3. The Autopsy Report indicates that Allen had gunshot wounds in five locations. ECF No. 334-23 at 13. Multiple other pieces of evidence, including the Forensics Report on Hayes's gun, indicate that Hayes fired his weapon four times. Hayes Deposition, ECF No. 334-1 at 128:1–18; HPD Homicide Case Report, ECF No. 334-12 at 22 ("15-round magazine was loaded in [Hayes's] gun. There were 11 rounds in the magazine"); ECF No. 334-18 at 11 (stating that there were 11 rounds in the magazine).

After Hayes shot Allen, Allen's vehicle moved forward and crashed into a tree. Hayes and Salina moved to catch up to the vehicle, and Hayes told Salina to "get it on the radio." ECF No. 334-3 at 0:37–0:47. Arterberry exited the crashed vehicle, and Hayes instructed her to get on the ground. *Id.* at 0:48–-1:12. Hayes

5

shined his flashlight on the vehicle from behind and informed other officers that Allen "tried to pull a gun out of his right pocket." *Id.* at 1:17–1:23. Hayes and other officers yelled at a bystander to "stay in [the] house!" *Id.* at 1:20–1:40.

Hayes then took Arterberry into the backseat of a police vehicle. ECF No. 334-3 at 1:42–2:17. Hayes told Arterberry "You're obviously going to be placed in the backseat of a car for now. You were in a car where someone was shot, okay?" *Id.* at 1:59–2:06.

Hayes turned toward Allen's vehicle, and multiple officers were lined up facing the vehicle with weapons drawn. Hayes approached the officers and asked "What are we doing?" ECF No. 334-3 at 2:15–2:23. The officers slowly approached the vehicle from behind. *Id.* at 2:23–3:50. Upon arriving at the passenger side of the vehicle, an officer instructed Allen to put his hands on the steering wheel. *Id.* at 3:50–3:56. Hayes stated "In his right pocket, the last place I saw it. It's like a white—small caliber revolver with a white grip." *Id.* at 3:54–4:07. Hayes's description matches the gun that was later found in the vehicle.

At this time, Hayes was on the passenger side of the vehicle, and Allen was still sitting in the driver's seat with his eyes closed and his head leaned back against the seat. ECF No. 334-3 at 4:03–4:15. Multiple officers stated that they observed that Allen was still breathing and had blood on his shirt. ECF No. 334-9 at 6, 15, 24, 40. Hayes asked "Anybody got HFD coming yet? I assume she did when we dropped it." ECF No. 334-3 at 4:30–4:36. Salina asked dispatch to send Houston Fire Department to the scene and stated that Allen had "several gunshot wounds." Salina Bodycam, ECF No. 334-4 at 4:35–4:46.

Multiple officers approached the driver's side of the vehicle and broke open the window to unlock and open the driver's side door. ECF No. 334-3 at 4:36–5:15. When the officers opened the door, Allen's left hand hung at his side. *Id.* at 5:15–5:27. Officer

Morelli removed Allen from the vehicle and handcuffed him. ECF No. 334-9 at 40. Morelli states in his sworn Witness Statement that he "took hold of [Allen] by his left arm and placed him on the ground." ECF No. 334-10 at 10. Morelli explains that "[b]y this time, we still didn't know if the suspect had a gun on him or if it was inside the vehicle, so I went ahead and placed handcuffs on him." *Id.* The officers checked Allen's pockets and waist band for weapons and removed items from his pockets and placed them on the street next to Allen.[3] *Id.* at 11, 13.

When Houston Fire Department arrived, they announced that Allen had died prior to their arrival. ECF No. 334-9 at 4, 23, 31. An officer with the Houston Police Department's Forensic Science Center arrived on the scene and observed Allen's body lying on his stomach and covered by a sheet. ECF No. 334-18 at 10. The officer also observed Allen's truck at the scene. *Id.* The officer's report states that "[v]isible in the rear passenger area of the [truck's] cabin . . . was a silver revolver with a white grip."[4] *Id.* at 10. The report explains that, after the Medical Examiner arrived around 4:00 AM, they recovered what appeared to be Allen's cellphone and a black nylon wallet near Allen's body. ECF No. 334-18 at 13. Both items were processed as evidence and placed in a secure crime scene vehicle. *Id.* at 13.

The truck was classified as a "vehicular contained crime scene." ECF No. 334-18 at 5. An officer processed the truck at the Vehicle Examination Building on November 6, 2015, and found a silver revolver with a white hand grip in the rear seat area of the vehicle. *Id.* at 6.

---

[3] The officers did not locate a gun on Allen's person in this search.

[4] Plaintiffs argue that "[n]o firearm was recovered from Allen's person, vehicle, or the immediate scene. Exs. 1, 2, 5." ECF No. 335 at 14. Plaintiffs cite to the entirety of both Officers Hayes and Salina's bodycam videos and Hayes's deposition to support this statement. It does not appear that the cited evidence supports Plaintiffs' argument.

7

The court addresses the remaining facts as needed in its analysis. The court turns to the evidentiary objections.

### 2. Evidentiary Objections

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'").

### A. Plaintiffs' Evidentiary Objections

Plaintiffs object to Defendant's Exhibits 1, 2, 5–8, 10, 11, 13–19, 22, and 26–28. ECF No. 343 at 4–7. Notably, Plaintiffs do not object to the bodycam videos from Officer Hayes or Officer Salina.

The court did not rely on many of Defendant's exhibits in its analysis. The only exhibits that Plaintiffs objected to and that the court relied on are Defendant's Exhibits 1, 10, and 18 (ECF Nos. 334-1, 334-10, 334-18).

Defendant's Exhibit 1 is Hayes's deposition, which is more than 300 pages long. ECF No. 334-1. Plaintiffs argue that portions of the deposition are self-serving narrative, contain hearsay within hearsay, speculate, include improper lay opinion, and lack foundation. ECF No. 343 at 5. The objections do not specify which parts of the objected-to document are objectionable. The court is thus left to guess at the substance and merit of the objections. The objections are overruled. Even so, the court has attempted to avoid relying on obviously hearsay or otherwise inadmissible statements.

Defendant's Exhibit 10 contains sworn witness statements from approximately eight different officers. ECF No. 334-10. Plaintiffs argue that "[s]tatements of officers and witnesses

8

compiled by homicide investigators are hearsay; Defendant has not submitted sworn declarations or deposition testimony adopting these." ECF No. 343 at 5. The documents in Exhibit 10 include sworn statements from officers and are each signed by the testifying officer. The statements generally appear to be based on each officer's personal knowledge and experience.

"At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017); Fed. R. Civ. P. 56(c). The evidence merely must be *capable* of being "presented in a form that would be admissible in evidence." *Maurer*, 870 F.3d at 384 (quoting *LSR Consulting, LLC*, 835 F.3d at 534). The sworn statements need not be further "adopted" in a separate deposition or a separate declaration. The objections are overruled.

Defendant's Exhibit 18 includes Forensics Reports. ECF No. 334-18. Plaintiffs argue that the forensics reports are "unsworn and not certified under FRE 902(11) or 803(6). Absent analyst testimony, reports violate *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). Chain of custody not demonstrated." ECF No. 343 at 6.

Defendant submitted a Business Record Affidavit, which incorporates the Forensic Reports in Exhibit 18 (referenced by bates stamp numbers). ECF No. 334-25. The custodian of the documents swears that the records were made at or near the time of the event, by persons with knowledge of the matters, and that it is the regular practice of Houston Police Department to keep these records. *Id.* In their reply, Plaintiffs do not address how or whether the business records affidavit is insufficient as to the Forensics Reports. ECF No. 351 at 11. In any event, the court did not rely on any hearsay portions of the reports. Plaintiffs' objections are

9

overruled. Plaintiffs may reraise their objections at trial, as necessary.

### B. Defendant's Evidentiary Objections

Defendant objects to Plaintiffs' Exhibits 5–8. ECF No. 345 at 7–18. The court separately rules on Defendant's objection to Exhibit 7, the Report of Dr. Howse, in Sections 4B and 5B herein.

As explained in more detail below, the court recommends that Plaintiffs' summary judgment motion be denied and that Defendant's motion for summary judgment be granted in part and denied in part. Overruling Defendant's objections does not have any material effect on the resolution of either motion for summary judgment. Nor does it prejudice Defendant. As such, Defendant's objections are overruled. Defendant may reraise his objections at trial, as necessary.

Defendant also objects to Plaintiffs' "Corrected Response to Motion for Summary Judgment" (ECF No. 343). ECF No. 345 at 19. The court has discretion to allow untimely responses where "the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1); *see also Rasco v. Potter*, 265 F. App'x 279, 283 (5th Cir. 2008). It does not appear to the court that any difference between the original response and the corrected response prejudiced Defendant in any way or otherwise significantly altered the court's conclusions. Thus, the objection is overruled.

### 3. Legal Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party

based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

### 4. *Summary Judgment Analysis*

Plaintiffs and Defendant each filed motions for summary judgment. The court begins its analysis by recognizing the gravity of the events at issue in this case. Allen's death is a tragedy. Even so, the court must continue its analysis as binding precedent from the Fifth Circuit and Supreme Court require.

11

Hayes argues that he is entitled to qualified immunity. ECF No. 333. Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law. 42 U.S.C. § 1983; *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). However, in a lawsuit under Section 1983, "[q]ualified immunity shields from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). State officials are entitled to qualified immunity unless (1) the evidence demonstrates that the official's conduct violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the violation. *McVae v. Perez*, 120 F.4th 487, 492 (5th Cir. 2024); *Allen II*, 65 F.4th at 743.

A right is clearly established when it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017) (en banc). "This is a 'demanding standard.'" *Degenhardt v. Bintliff*, 117 F.4th 747, 753 (5th Cir. 2024). Courts "can analyze the prongs [of the qualified immunity test] in either order or resolve the case on a single prong." *Perry v. Mendoza*, 83 F.4th 313, 317 (5th Cir. 2023).

When a defendant asserts qualified immunity as a defense to a claim, "the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019). "Once an officer pleads qualified immunity, it is the plaintiff's burden to establish that the officer violated the plaintiff's clearly established federal rights." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023). At the summary judgment stage, a plaintiff bears the burden of showing a genuine and material dispute. *Perry*, 83 F.4th at 320. "A disputed fact is material if it could affect the outcome of the lawsuit." *Id.*

12

### A. Law of the Case

Because Plaintiffs incorrectly state the history of this case, the court clarifies the procedural history before turning to the parties' arguments. The Fifth Circuit issued opinions in this case in 2020 and 2023. *Allen I*, 812 F. App'x 185; *Allen II*, 65 F.4th at 741. Plaintiffs incorrectly cite *Allen II* as their "*Allen I*" case.[5] ECF No. 343 at 9. The more concerning error, however, is that Plaintiffs' "*Allen II*" citation does not cite to a legitimate case. *Id.* A search on Westlaw for "2024 WL 345995" returns a Wisconsin Senate Bill. The court is not aware of any Fifth Circuit opinions in this case in 2024. The case was before the undersigned for the entirety of 2024 after the Fifth Circuit remanded it in 2023. *See* ECF Nos. 131–33 (remanding the case); ECF Nos. 184–266 (entries in district court from January 4, 2024, through December 2024).

Another concerning issue persists in Plaintiffs' briefing. On multiple occasions, quotations appear to be either made up or hallucinated.[6] For example, Plaintiffs argue that facts support "the Fifth Circuit's determination that 'a reasonable jury could find that Hayes's use of force was objectively unreasonable.' *Allen v. Hayes*, 2023 WL 2643718, at 3 (5th Cir. 2023)." ECF No. 343 at 11. In addition to another incorrect case citation, which does not appear to cite to a real case, the quotation does not appear in either *Allen I* or *Allen II*. Plaintiffs include multiple other alleged quotations in their briefing that do not appear in any relevant case. *See, e.g.*, ECF No. 343 at 14 ("We AFFIRM the denial of summary judgment on all claims."), 15 ("no reasonable officer could perceive an immediate threat"), 19 ("Hayes delayed aid for over six minutes

---

[5] Plaintiffs' citations are as follows: *Allen v. Hayes*, 63 F.4th 307 (5th Cir. 2023) (per curiam) ("*Allen I*"); *Allen v. Hayes*, No. 23-20144, 2024 WL 345995 (5th Cir. Jan. 30, 2024) (unpublished) ("*Allen II*"). ECF No. 343 at 9.

[6] Plaintiffs might cite to a withdrawn Fifth Circuit opinion that was superseded, *see* 63 F.4th 307, but the court is unable at this time to determine whether that is true.

while Allen bled out…a jury could find deliberate indifference."). The errors are numerous and persistent.

The court turns to the parties' arguments as to the law of the case. Plaintiffs argue that the Fifth Circuit's prior rulings are binding as law-of-the-case and require denial of Defendant's Motion for Summary Judgment. ECF No. 343 at 13–15. According to Plaintiffs, "[t]he Fifth Circuit has twice reviewed the same record including body-worn camera footage, depositions, and HPD mental health records And [sic] twice denied Hayes qualified immunity[.]" *Id.* at 13–14. Plaintiffs are plainly incorrect. The circuit has never reviewed the full record now before the court. Nor has the circuit considered the bodycam videos under the summary judgment standard.

In 2020, years before this case was transferred to Judge Tipton or referred to the undersigned, the Fifth Circuit found that the district court improperly converted a motion to dismiss into a motion for summary judgment. *Allen I*, 812 F. App'x at 189, 192. The Circuit affirmed the decision in part as to the dismissal of one defendant and vacated and remanded the case as to the remaining defendants. *Id.* at 193–94.

In 2023, the Fifth Circuit again considered this case—this time at the motion to dismiss stage—and analyzed Plaintiffs' *allegations. Allen II*, 65 F.4th at 742 n.3 The Circuit stated that "[a]ssuming *arguendo* that the body-cam footage was incorporated into plaintiffs' live complaint such that we can consider it at the motion-to-dismiss stage, which is far from clear, nothing in it clearly contradicts plaintiffs' version of events." *Id.* The videos did not "clearly contradict" the pleadings, so the court relied on Plaintiffs' allegations. The Circuit affirmed dismissal as to several claims and reversed and remanded the dismissal of Plaintiffs' claims for excessive force, unlawful arrest, and denial of medical care against Hayes. *Id.* at 752.

14

Currently pending are summary judgment motions. At this stage, Plaintiffs must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *McCarty*, 864 F.3d at 357 (quoting *Boudreaux*, 402 F.3d at 540). The case is now before the court at a different stage than it was before the Fifth Circuit. In its prior analyses, the Circuit was required to apply a different legal standard than that currently before the court. Now, the court considers whether the *evidence*, not the allegations, viewed in the light most favorable to the nonmovant, demonstrates a material fact dispute. There is now evidence before the court that the circuit expressly did not consider or that did not even exist when the Circuit last considered this case. *See, e.g.,* ECF No. 334-1 (Hayes's Deposition, completed on August 26, 2025). As such, the court continues its analysis consistent with the Fifth Circuit's instructions on remand and consistent with the binding precedent in this circuit.

### B. Excessive Force

Plaintiffs argue that Hayes's shooting of Allen was an excessive use of force, which violated Allen's Fourth Amendment right to be free from unreasonable search and seizure. "An excessive-force claim requires (1) an injury, (2) resulting directly and only from excessive force, (3) that was objectively unreasonable." *Argueta*, 86 F.4th at 1089; *Allen II*, 65 F.4th at 744.

At issue here is whether Hayes's use of deadly force was excessive and unreasonable. To determine whether a use of force was reasonable, the court considers the facts and circumstances of the case, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Graham v.*

15

*Connor*, 490 U.S. 386, 396 (1989)); *Allen II*, 65 F.4th at 744. "The use of force is not excessive and unreasonable if 'the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to their underlying intent or motivation.'" *Allen II*, 65 F.4th at 744. (quoting *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021)).

"Claims that law enforcement unreasonably utilized deadly force are treated as a special subset of excessive force claims." *Aguirre v. City of San Antonio*, 995 F.3d 395, 412 (5th Cir. 2021). The Fifth Circuit has long held that, "[w]hen an officer uses deadly force, that force is considered excessive and unreasonable 'unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021). The reasonableness of the use of deadly force is based on the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *Argueta*, 86 F.4th at 1089; *Allen II*, 65 F.4th at 744.

"[I]t is manifestly unreasonable for an officer to seize a suspect the officer knows is unarmed and not aggressive by shooting him dead." *Allen II*, 65 F.4th at 744. "But if the officer believes the suspect has a gun, the calculation changes—even if there was never, in fact, a gun." *Id.*; *see also Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) ("Whether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use of deadly force.") (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

Even when a suspect is armed, a warning must be given, when feasible, before the use of deadly force. *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), *as revised* (Aug. 21, 2019). The force an officer uses should be proportional to the threat, and an officer

16

must use lesser force if an officer could reasonably do so. *Allen II*, 65 F.4th at 744.

In "furtive gesture" cases, the Fifth Circuit has held that an officer's use of deadly force is not unreasonable or excessive where a suspect "moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." *Argueta*, 86 F.4th at 1091 (citing *Manis*, 585 F.3d at 844); *Allen II*, 65 F.4th at 744. "Nevertheless, an officer cannot escape liability any time he claims he saw a gun. The question is whether the officer's belief that he saw a gun was sufficiently reasonable to justify the use of deadly force in light of all the surrounding circumstances." *Allen II*, 65 F.4th at 744.

In *Manis*, the suspect, who was seated in the driver's seat of an SUV, repeatedly reached underneath his seat. *Manis*, 585 F.3d at 842. The officers drew their weapons and ordered the suspect to show his hands. *Id.* When the suspect appeared to retrieve some object and began to straighten up, the officer fired four rounds, killing the suspect. *Id.* The Fifth Circuit found that the relevant inquiry was whether, in view of the suspect's conduct, the officer was objectively reasonable in believing the suspect posed a threat of serious harm. *Id.* at 845. The Circuit found that there was not a constitutional violation because the evidence showed that the officer reasonably believed the suspect had retrieved a weapon. *Id.* at 844–45.

Here, in 2023, the Fifth Circuit took as true Plaintiffs' allegations that "Allen was not carrying a gun (nor was there a gun in the car), that a reasonable officer would have known there was no gun, and that Allen never reached outside the officer's line of sight." *Allen II*, 65 F.4th at 745. The evidence now before the court does not support those allegations.

The question now before the court is whether, based on the evidence viewed in the light most favorable to Plaintiffs, Hayes's

belief that he saw a gun was sufficiently reasonable to justify the use of deadly force in light of all the surrounding circumstances. *See Allen II*, 65 F.4th at 744. The evidence shows that Allen was reaching in his pocket despite Hayes's warnings to "stop reaching." ECF No. 334-3 at 0:03–0:33. Plaintiffs have not pointed to any evidence that any officer asked for Allen's wallet at any time. Hayes stated multiple times that he believed that Allen was reaching for a weapon. *Id.* at 1:18–1:23, 3:54–4:07; ECF No. 334-10 at 4; ECF No. 334-1 at 70:5–72:3. After the fact, a Forensics Report states that a revolver with a white handle was found in "the rear seat area" of Allen's vehicle. ECF No. 334-18 at 6.

The evidence shows that Hayes's belief that he saw a gun was sufficiently reasonable to justify the use of deadly force in light of all the surrounding circumstances. The court "[has] never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 at n.6 (5th Cir. 2016), *as revised* (June 16, 2016) (collecting cases); *see also Valencia v. Davis*, No. 19-CV-017, 2020 WL 5580896, at *4 (N.D. Tex. Jan. 13, 2020) ("it was reasonable for [the] Officer to assume that [the suspect] may have been armed and the movement of Plaintiff's hand downward toward his waistline and pockets (as clearly depicted on the video from the dashcam) was a furtive gesture"), *aff'd*, 836 F. App'x 292 (5th Cir. 2020). Plaintiffs do not explain how a fact dispute about whether Hayes fired his weapon six times rather than four times, as in *Manis*, is material.

Plaintiffs' attempts to identify material fact disputes as to this claim are unsupported. Plaintiffs argue that "Allen's hand briefly contacts a flat, square-shaped object, not a firearm, and there is never a white handle visible." ECF No. 343 at 11. Plaintiffs also point to evidence that Officer Salina testified that he never saw Allen point a gun at anyone. *Id.* at 16–17. But whether a gun

18

was visible or whether Allen pointed a gun at anyone is not the question.[7]

The question before the court is whether the evidence shows that Hayes's belief that he saw a gun was reasonable. Hayes warned Allen to stop reaching in his pocket multiple times. The video shows Allen attempting to remove a white item from his pocket. The evidence shows that Hayes believed that he saw a gun and described seeing Allen try to remove a "small caliber revolver with a white grip" from his right pocket within minutes of the shooting. ECF No. 334-3 at 3:54–4:07. Hayes reiterated in his deposition that he saw Allen removing a small caliber revolver with a white handle from his pocket, and Hayes feared for his life and for the lives of those around him. ECF No. 334-1 at 127:1–25. Plaintiffs have not identified a genuine dispute of material fact as to whether Hayes's belief was reasonable.

Plaintiffs also argue that Hayes's commands "were shouted after the gunfire, as confirmed by the dispatch audio and Defendant's own expert, Dr. Robert Taylor who acknowledged no audible warning in the recordings." ECF No. 343 at 11–12, 18. The video plainly shows that Hayes repeatedly told Allen to "stop reaching" prior to shooting his weapon. There is no genuine dispute of material fact that Allen disobeyed Hayes's command to "stop reaching."

Plaintiffs also cite to their Expert Report, by Dr. Howse, which states that "there is nothing to suggest there was any immediate or imminent threat of harm to Officer Hayes, or any other person, by Mr. Allen[.]" ECF No. 343 at 20; *see also* ECF No. 342-3 at 7. Defendant argues, in part, that Dr. Howse

---

[7] Plaintiffs also argue that Arterberry stated after the fact that Allen did not have a gun and that Allen was complying with Officer Salina's instructions. ECF No. 343 at 11; *see also* ECF No. 335-7. Arterberry's statements do not alter the court's analysis.

impermissibly offered legal conclusions in his report.[8] ECF No. 345 at 11.

The Fifth Circuit has repeatedly recognized that the risk an individual poses to officers or others is a legal inquiry and part of the objective-reasonableness analysis. *Argueta*, 86 F.4th at 1092–93. As such, because Dr. Howse's statement is an impermissible legal conclusion, Dr. Howse's statement on this matter is insufficient to raise a genuine dispute of material fact as to the events of November 4, 2015. *See Manis*, 585 F.3d at 844–45 ("[t]he expert's subsequent speculation that deadly force was unjustified is insufficient to create a genuine, material fact issue"); *Valencia v. Davis*, 836 F. App'x 292, 299–300 (5th Cir. 2020) (affirming exclusion of expert testimony wherein an expert opined that an officer "was not in immediate harm or fear for his life"); *Asante-Chioke v. Dowdle*, No. CV 22-4587, 2026 WL 24978, at *7 (E.D. La. Jan. 5, 2026) ("By opining that Mr. Asante-Chioke is a 'threat,' 'imminent threat,' or 'imminent deadly threat,' Mr. Martin is impermissibly answering a legal question for the jury.").

Under the first prong of the qualified immunity analysis, there is no evidence or material fact dispute that Hayes's shooting of Allen violated Allen's Fourth Amendment rights. As the court stated above, Fifth Circuit precedent dictates that, under these circumstances, Hayes had probable cause to believe that Allen posed a threat of serious physical harm to himself and those in the area. There is no evidence that Hayes's use of deadly force was constitutionally excessive or unreasonable.

Even if the evidence demonstrated that Hayes's conduct violated a statutory or constitutional right, which it does not,

---

[8] Defendant moves to exclude the entirety of Dr. Howse's report. ECF No. 332 at 9. Plaintiffs filed a motion requesting that the court strike Defendant's motion (ECF No. 332). ECF No. 336. Section 5, below, includes the court's ruling on both motions.

Plaintiffs have not met their burden as to the second prong of the qualified immunity test. The court does "not deny immunity unless 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Here, Plaintiffs have not shown that Hayes had any "fair notice that his conduct was unlawful." *See Elizondo et al. v. Hinote*, No. 25-40007, 2026 WL 311958, at *2 (5th Cir. Feb. 5, 2026). Plaintiffs do not provide any evidence or case law showing that any constitutional question was "beyond debate." Also for the reasons stated in the court's analysis as to prong one above, there is no material fact dispute about whether Hayes violated a right that was "clearly established" when he used deadly force. Accordingly, Defendant's Motion for Summary Judgment should be **GRANTED** as to Plaintiffs' excessive force claim.

### C. False Arrest

Plaintiffs allege that it was an unlawful arrest for Hayes to handcuff Allen. *Allen II*, 65 F.4th at 746. When "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). If a police officer lacks probable cause when he makes an arrest, it is a "false arrest." *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023).

Before the court addresses whether qualified immunity applies to Plaintiffs' false arrest claim, the court must first determine whether Hayes is the correct defendant for this claim. Hayes argues that he did not remove Allen from the vehicle nor did he handcuff or arrest Allen. ECF No. 333 at 17. Plaintiffs do not explicitly address Hayes's argument in their response to Defendant's Motion. Plaintiffs do not cite any evidence supporting

21

their argument that Hayes arrested or otherwise detained Allen. Plaintiffs generally argue, without citing evidence, that "Hayes handcuffs a dying, unresponsive man without probable cause[.]" ECF No. 343 at 2, 18. Plaintiffs confusingly also argue that "officers" removed Allen from the vehicle and handcuffed him. *Id.* at 12.

In Plaintiffs' reply in support of their Motion for Summary Judgment, they argue that "Hayes's participation is undeniable (BWC shows Hayes directing the scene)[.]" ECF No. 347 at 13. Plaintiffs argue that Hayes instructed the officers about removing Allen from the vehicle. *Id.* The evidence does not support Plaintiffs' arguments.

The evidence shows that, after Hayes placed Arterberry in the police car, Hayes approached the other officers and asked "What are we doing?" ECF No. 334-3 at 2:14–2:26. Undisputed evidence shows that Officer Morelli removed Allen from the vehicle and handcuffed him. ECF No. 334-9 at 40. Morelli states in his sworn Witness Statement that he "took hold of [Allen] by his left arm and placed him on the ground." *Id.* Morelli explains that "[b]y this time, we still didn't know if the suspect had a gun on him or if it was inside the vehicle, so I went ahead and placed handcuffs on him." *Id.* There is no evidence showing that Hayes directed the officers to break open the vehicle's window, remove Allen from the vehicle, or to handcuff Allen. ECF No. 334-3 at 4:45–6:00.

Thus, the evidence does not support Plaintiffs' argument that Hayes violated Allen's rights by conducting an unlawful arrest or otherwise instructing other officers to arrest Allen. Plaintiffs have not met their burden to show any genuine or material dispute that Hayes's actions violated a clearly established right. Plaintiffs do not argue that Hayes was liable as a bystander. Plaintiffs do not explain how Hayes's presence and failure to

22

intervene when Morelli handcuffed Allen constitute a violation of a clearly established constitutional right.

An officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Plaintiffs do not argue or provide evidence addressing any element of bystander liability. It is not clear to the court how Hayes could otherwise be liable for any allegedly unlawful arrest based on the evidence in the case. Plaintiffs have not demonstrated any material fact dispute such that the claim may proceed.

Accordingly, Defendant's Motion for Summary Judgment should be **GRANTED** as to Plaintiffs' false arrest claim.

### D. Denial of Medical Care

Plaintiffs allege that Hayes violated Allen's rights by failing to provide life-saving measures, timely summon medical care, or permit medical personnel to treat Allen. *Allen II*, 65 F.4th at 747. Hayes argues that qualified immunity applies.

The court's law of the case analysis is different as to the denial of medical care claim. An officer violates a pretrial detainee's Fourteenth Amendment right to medical care if the officer acts with deliberate indifference to a substantial risk of serious medical harm. *Allen II*, 65 F.4th at 474. Deliberate indifference is an extremely high standard. *Id.*

Hayes argues that Plaintiffs cannot meet their evidentiary burden to show:

> (1) that Officer Hayes subjectively knew of a substantial risk of serious harm, (2) failed to provide medical care or delayed medical care to alleviate that harm, (3) that the failure or delay was objectively unreasonable, (4) a substantial injury resulting from

the alleged failure or delay, and (4) [sic] that Officer Hayes was aware of and intended the result.

ECF No. 333 at 21–23 (citing *Wagner v. Bay City*, 227 F.3d 316, 324–25 (5th Cir. 2000)). However, the Fifth Circuit clarified *in this case* that, since *Wagner*, the court has "rejected the subjective-intent requirement[.]" *Allen II*, 65 F.4th at 747. The Fifth Circuit instructed that, to succeed on a denial of medical care claim, Plaintiffs must show that "(1) Hayes was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and (2) he drew that inference." *Id.* "If the plaintiff relies on *delay* as the basis of the claim, then the plaintiff must show that the delay '*results in substantial harm.*'" *Batyukova v. Doege*, 994 F.3d 717, 732 (5th Cir. 2021) (emphasis in original) (quoting *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018)). Pain suffered during that delay can constitute substantial harm. *Id.*

At the motion to dismiss stage, the Fifth Circuit found that "[a]s alleged, Hayes stood by for six minutes without performing any medical care or calling for medical backup, aware that he had shot Allen several times and witnessed him crash into a tree, and after he had radioed for police backup for himself." *Allen II*, 65 F.4th at 748. The Circuit found that those allegations were sufficient to allege a constitutional violation. *Id.*

The evidence now before the court indicates that there is a fact question as to Plaintiffs' denial of medical care claim. There is evidence generally supporting or raising a fact question as to each of the material allegations the Fifth Circuit identified at the motion to dismiss stage. The evidence viewed in the light most favorable to Plaintiffs could lead a jury to find that Hayes was deliberately indifferent. Hayes was aware that he had shot Allen at close range and witnessed Allen's vehicle run into a tree. ECF No. 334-3 at 0:30–0:53. Within approximately twenty seconds of shooting Allen, Hayes told Salina to "put it on the radio." ECF

24

No. 334-4 at 0:48–0:51. Salina reported shots fired, but he did not ask for medical assistance. *Id.* at 0:51–0:59. Approximately four minutes after Hayes shot Allen, Hayes asked whether anyone called for Houston Fire Department. *Id.* at 4:35–4:40 (approximately four minutes after Hayes fired shots at 0:37–0:40). Then, Salina asked dispatch for HFD and reported that Allen had several gunshot wounds. *Id.* at 4:35–4:45. There is no evidence that Hayes performed any medical care in that time.

Defendant argues that "Hayes confirmed that someone had HFD coming as soon as the immediate threat was over, within three minutes of the shooting." ECF No. 333 at 22. Defendant's argument raises a fact issue. The court is bound by the Fifth Circuit's prior holding in this case.

To overcome qualified immunity, Plaintiffs must also show that the constitutional violation was clearly established at the time of Hayes's actions. *Allen II*, 65 F.4th at 748. The Fifth Circuit stated that, as of 2015, "existing precedent showed that officers who, 'despite being aware of the detainee's dire condition[,] . . . did nothing to secure medical help' at all were on 'fair warning' that their behavior was deliberately indifferent." *Id.* Plaintiffs have met their burden.

Thus, Defendant's Motion for Summary Judgment should be **DENIED** as to Plaintiffs' denial of medical care.

### 5. *Remaining Motions*

#### A. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs filed an affirmative Motion for Summary Judgment as to qualified immunity. ECF No. 335 at 1. The court has already found that there are no material fact disputes as to the claims of excessive force and false arrest, and that Defendant's Motion for Summary Judgment should be granted as to those claims, which precludes Plaintiffs' motion as to those claims. As to

25

denial of medical care, there is a fact dispute as to whether Hayes's conduct was deliberately indifferent. Such a fact dispute precludes Plaintiffs' motion. Thus, Plaintiffs' motion should be **DENIED**.

### B. Motion to Exclude and Notice of Violation of Local Rules, ECF Nos. 332 and 336

Defendant filed a Motion to Strike and Exclude Plaintiffs' Expert Witness Designations and Motion to Exclude Keith A. Howse. ECF No. 332. Plaintiffs request that the court strike the motion. ECF No. 336.

Ruling on Defendant's request to exclude Dr. Howse, except to the extent that Plaintiffs cite Dr. Howse's report in support of their excessive force claim, is not necessary to resolve the summary judgment motions. Thus, the motion, ECF No. 332, is **DENIED** without prejudice to refiling closer to trial. Accordingly, Plaintiffs' request, ECF No. 336, that the court strike Defendant's motion is **DENIED as MOOT**.

### C. Motion to Quash, Motion for Due Process, and Motion for Reconsideration, ECF Nos. 317, 324, and 325

The court turns first to Plaintiffs' Request for Leave to Take Depositions and Motion to Quash. ECF No. 317. To the extent that the motion seeks to take further depositions, it is **DENIED**. The parties had two years to complete discovery after remand from the Fifth Circuit.[9] At a hearing on July 24, 2025, the court ordered the parties to provide a full list of all depositions that up to that point still needed to be conducted in the case. ECF No. 293; *see also* ECF No. 315. The court ordered that:

---

[9] There have been many hearings, and the court has entered many orders. A full discussion of the convoluted discovery process is contained in the court's July 24, 2025 Order. ECF No. 293. The court will not repeat here the long history of the discovery disputes in this case.

> The parties shall meet and confer about what depositions are necessary.
>
> By the close of business on July 29, 2025, the parties shall provide a joint status report to the court stating all depositions they have agreed to conduct and all opposed depositions and why they are opposed.
>
> Depositions shall be completed by September 30, 2025.

*Id.* at 4. In their status report, Plaintiffs proposed to depose only four individuals (Oliphant, Irving, Salina, and Hayes) and the City of Houston. ECF No. 295. Defendant objected to the deposition of the City of Houston as being overbroad. *Id.* Defendant also objected to Irving's deposition but offered Officer Wesley Fikes in his place. *Id.* The court sustained Defendant's objections to the City of Houston. ECF No. 296. The court also allowed the substitution of Fikes, given that Plaintiffs did not object to it. *Id.*

As to the City of Houston's deposition, the court ordered the parties to confer about Plaintiffs' deposition topics and allowed Plaintiffs to file a new motion seeking a deposition of the City of Houston by August 15, 2025. ECF No. 296 at 2. Plaintiffs did not file such a motion. As the court noted in a September 16, 2025 Order, ECF No. 315, Plaintiffs had requested only a limited number of depositions and failed to file the motion related to the City of Houston's deposition. *Id.* The court explained that "[b]ecause the deadline to seek any further depositions ha[d] passed, only those depositions agreed to by the parties or ordered by the court shall go forward. All other depositions, subpoenas, and subpoenas duces tecum are **QUASHED**." *Id.* Plaintiffs did not object to that order and the time to do so has passed. The order stands.

Instead of objecting to the court's order, two days later Plaintiffs filed the instant request to take further depositions. ECF No. 317. The list of depositions sought in the motion far exceeds

(and generally does not overlap with) the list of depositions that Plaintiffs requested in their status report. *Id.* (seeking depositions of Salina, Morelli, Sneed, Hurban, Baker, Lopez, and Zimmerman). In the pending motion, Plaintiffs simply ignore the court's order disallowing further depositions and quashing all other depositions and subpoenas that were then outstanding. Plaintiffs' arguments center on orders that were, by then, months old and superseded by the most recent order. Plaintiffs do not explain why they did not seek the depositions earlier or explain how the court's order quashing all depositions was in error. Plaintiff's latest request to seek depositions is far too late, defies the text and spirit of the court's orders, and is **DENIED**.

As to the request to quash the deposition of Sherman Allen, Plaintiffs informed the court that Sherman Allen appeared for a remote deposition as ordered, and thus, "the issue is moot[.]" ECF No. 328. Plaintiffs' motion, ECF No. 317, is **DENIED**.

Plaintiffs also filed a "Motion to Reconsider Plaintiff's Quash Unilateral Notice of Deposition of Sherman Allen." ECF No. 325. The motion also relates to the deposition of Sherman Allen and is **DENIED as MOOT**.

Plaintiffs also filed a "Motion for Due Process." ECF No. 324. Plaintiffs argue that the court ruled on multiple pending motions without allowing Plaintiffs an opportunity to reply, or, in some instances, without allowing Plaintiffs an opportunity to respond. Defendant did not respond to the motion. In the Southern District of Texas, "[f]ailure to respond to a motion will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. The court also notes that it granted the relief Plaintiffs requested in the motion and ensured that each party had a full and fair opportunity to brief issues before the court. The court's rulings when it ruled before Plaintiffs filed a response were either ministerial (ECF No. 298, allowing an opposed motion for an extension of time to respond) or

reiterating prior rulings that had already been fully briefed or addressed at a hearing where all parties were present (ECF Nos. 298 and 315). In any event, Plaintiffs were not deprived of due process, and Plaintiffs' motion, ECF No. 324, is **DENIED as MOOT**.

### 6. Conclusion

The court recommends that Defendant's Motion for Summary Judgment, ECF No. 333, be **GRANTED in part and DENIED in part** and Plaintiffs' Motion for Summary Judgment, ECF No. 335, be **DENIED**. Plaintiffs' Motion for Leave to Take Depositions and Motion to Quash, ECF No. 317, is **DENIED**; Plaintiffs' Motion for Due Process, ECF No. 324, is **DENIED as MOOT**; Plaintiffs' Motion for Reconsideration, ECF No. 325, is **DENIED as MOOT**; Defendant's Motion to Strike, ECF No. 332, is **DENIED** without prejudice; and Plaintiffs' Motion to Strike, ECF No. 336, is **DENIED as MOOT**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on April 28, 2026.

_____

Peter Bray
United States Magistrate Judge

29